## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID MEYER;** | : | |
| | : | |
| **MITCHELL NALLEY;** | : | |
| | : | |
| **EVA DAVIS;** | : | |
| | : | |
| **SECOND AMENDMENT** | : | Civil Rights Complaint |
| **FOUNDATION;** | : | 42 U.S.C. § 1983 |
| | : | |
| **ILLINOIS STATE RIFLE** | : | |
| **ASSOCIATION; and** | : | |
| | : | |
| **FIREARMS POLICY** | : | |
| **COALITION, INC.;** | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. _____ |
| | : | |
| **v.** | : | |
| | : | |
| **KWAME RAOUL, in his** | : | |
| **individual capacity and in his** | : | |
| **official capacity as Attorney** | : | |
| **General of Illinois;** | : | |
| | : | |
| **BRENDAN F. KELLY, in his** | : | |
| **individual capacity and in his** | : | |
| **official capacity as Director** | : | |
| **of the Illinois State Police;** | : | |
| | : | |
| **JOSHUA C. MORRISON, in** | : | |
| **his individual capacity and in** | : | |
| **his official capacity as State's** | : | |
| **Attorney of Fayette County,** | : | |
| **Illinois;** | : | |
| | : | |
| **JAMES GOMRIC, in his** | : | |
| **individual capacity and in** | : | |
| **his official capacity as State's** | : | |

| | |
|---|---|
| **Attorney of St. Clair County, Illinois;** | : |
| | : |
| | : |
| **ERIC WEIS, in his individual capacity and in his official capacity as State's Attorney of Kendall County, Illinois;** | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| **CHRISTOPHER PALMER, in his individual capacity and in his official capacity as Sheriff of Fayette County, Illinois;** | : |
| | : |
| | : |
| | : |
| | : |
| **RICHARD WATSON, in his individual capacity and in his official capacity as Sheriff of St. Clair County, Illinois;** | : |
| | : |
| | : |
| | : |
| | : |
| **DWIGHT A. BAIRD, in his individual capacity and in his official capacity as Sheriff of Kendall County, Illinois;** | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

## COMPLAINT

COME NOW Plaintiffs David Meyer, Mitchell Nalley, Eva Davis, Second Amendment Foundation, Illinois State Rifle Association, and Firearms Policy Coalition, Inc., by and through their attorneys, and complain of Defendants Kwame Raoul, Brendan F. Kelly, Joshua C. Morrison, James Gomric, Eric Weis, Christopher Palmer, Richard Watson, and Dwight A. Baird as follows:

## INTRODUCTION

1.     This is an action to uphold Plaintiffs' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the

2

individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

2.      In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id*. at 584.

3.      In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

4.      "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

5.      The Supreme Court in *Heller* held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. This right is particularly important when it comes to handguns, as the *Heller* Court recognized that the handgun is "the quintessential self-defense weapon" in the United States, and it identified invalidated bans on carrying handguns as among the most "severe

restriction(s)" in our Nation's history. *See Heller*, 554 U.S. at 629 (citing, *e.g.*, *Nunn v. State*, 1 Ga. 243, 251 (1846)).

6.     Plaintiffs wish to exercise their fundamental, constitutionally guaranteed right to carry loaded, operable handguns on their person, outside their homes, while in public, for lawful purposes including immediate self-defense. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

7.     The State of Illinois prohibits a certain class of law-abiding, responsible citizens— namely, adults who have reached the age of eighteen but are not yet twenty-one—from fully exercising the right to keep and bear arms. At eighteen years of age, law-abiding citizens in this country are considered adults for almost all purposes and certainly for the purposes of the exercise of fundamental constitutional rights. Yet the State bans such persons from carrying a handgun outside the home or automobile, even though the State allows all other law-abiding adults to obtain a license to carry firearms in public.

8.     Illinois generally bars the carrying of handguns by ordinary citizens in public for self-defense unless they first acquire a license to carry. 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), (a)(10)(iv).

9.     Although 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv) and (a)(10)(iv) establish the possession of a license to carry as an exemption from the criminal penalties set forth therein—and by extension an avenue to the legal carriage of a handgun in public— Defendants have prevented a particular class of persons, including Plaintiffs Meyer, Nalley, and Davis, from obtaining a license to carry, and therefore categorically prevented

them from any means of lawfully carrying a handgun on their person in public, in direct violation of the Second and Fourteenth Amendments to the United States Constitution.

10.      Further, 720 Ill. Comp. Stat. 5/24-1.6 provides no such exemption from criminal liability for individuals under twenty-one years of age who are properly licensed to carry a firearm under 430 Ill. Comp. Stat. 66/1, *et seq.* ("Firearms Concealed Carry Act" or "FCCA"). Accordingly, even if Plaintiffs Meyer, Nalley, Davis and those similarly situated, were to acquire the carry license contemplated in the FCCA, they would still be subject to arrest and criminal prosecution under 720 Ill. Comp. Stat. 5/24-1.6.

11.      The statutory provisions of 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv), 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), and 430 Ill. Comp. Stat. 66/25(1) are referred to collectively herein as the "18-to-20-Year-Old Carry Ban."

12.      Even though the U.S. Supreme Court in *Heller* declared that to "bear arms" includes the "carry [of a firearm] . . . in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person," 554 U.S. at 584, Plaintiffs are prohibited from carrying a handgun in public, pursuant to Illinois' 18-to-20-Year-Old Carry Ban.

13.      Throughout American history, arms carrying was a right available to all peaceable citizens. Sometimes, it was even a duty. *See e.g.*, David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495, 573–577, 587 (2019) (listing statutes requiring arms carrying by members of the general public to travel, work in the fields, work on roads and bridges, attend church, and attend court).

14.     Moreover, young adults between eighteen and twenty-one were fully protected by the Second Amendment at the time of its ratification. Hundreds of statutes from the colonial and founding eras required 18-to-20-year-olds to keep and bear arms. *See generally The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. at 573–577, 587.

15.     At the time of the Founding, peaceable individuals aged eighteen and above had the right to carry arms for self-defense and other lawful purposes. The tradition of disarming violent and dangerous persons was practiced from medieval England through mid-20th century America, but there is no tradition of disarming nonviolent people like Plaintiffs Meyer, Nalley, and Davis. *See generally* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249 (2020).

16.     A violation of 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv) or 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv) is a Class A Misdemeanor punishable by a fine of $2500 and confinement in jail for one year. 720 Ill. Comp. Stat. 5/24-1(b)(1); 730 Ill. Comp. Stat. 5/5-4.5-5.5.

17.     A first violation of 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I) is a Class 4 felony punishable by imprisonment of three years. 720 Ill. Comp. Stat. 5/24-1.6(d)(1). A second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment from three to seven years. *Id.*

18.     Because the 18-to-20-Year-Old Carry Ban prohibits the carriage on or about the person of a handgun in public, the 18-to-20-Year-Old Carry Ban currently restricts Plaintiffs from carrying handguns—even for purposes of self-defense—upon the public streets and public property, in direct violation of the Second and Fourteenth Amendments

to the United States Constitution, as held by the U.S. Supreme Court in *Heller* and *McDonald*.

19.     Indeed, Defendants' laws, regulations, policies, and enforcement practices prevent law-abiding adults such as Plaintiffs Meyer, Nalley, and Davis from exercising their fundamental, individual right to bear loaded, operable handguns outside the home.

20.     While the 18-to-20-Year-Old Carry Ban is unconstitutional on its face, it is particularly illegitimate as applied to young women such as Plaintiff Eva Davis. Females between the ages of 18 and 21 commit violent offenses at an exceptionally low rate, and there is absolutely no basis for broadly prohibiting them from carrying firearms in public.

## **PARTIES**

21.     Plaintiff David Meyer is a natural person, over the age of eighteen but under the age of twenty-one, and a citizen of Fayette County, Illinois, and the United States. Mr. Meyer has never been charged with nor convicted of any misdemeanor or felony offense. It is Mr. Meyer's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, without violating the law. As a result of Defendants' active enforcement of the 18-to-20-Year-Old Carry Ban, he is precluded from carrying a handgun for purposes of self-defense.

22.     Plaintiff Mitchell Nalley is a natural person, over the age of eighteen but under the age of twenty-one, and a citizen of St. Clair County, Illinois, and the United States. Mr. Nalley has never been charged with nor convicted of any misdemeanor or felony offense. It is Mr. Nalley's present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, without violating the law. As a result of Defendants'

7

active enforcement of the 18-to-20-Year-Old Carry Ban, he is precluded from carrying a handgun for purposes of self-defense.

23.    Plaintiff Eva Davis is a natural person, over the age of eighteen but under the age of twenty-one, and a citizen of Kendall County, Illinois, and the United States. Ms. Davis has never been charged with nor convicted of any misdemeanor or felony offense. It is Ms. Davis' present intention and desire to be able to lawfully carry a handgun, including for purposes of self-defense, without violating the law. As a result of Defendants' active enforcement of the 18-to-20-Year-Old Carry Ban, she is precluded from carrying a handgun for purposes of self-defense.

24.    Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in Illinois. SAF brings this action on behalf of itself and its 18-20-year-old members in Illinois, including the named Plaintiffs herein.

25.    Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. The purposes of ISRA include securing the constitutional right to privately own, possess, and carry firearms in Illinois, through education, outreach, and litigation. ISRA has more than 26,000 members and supporters in Illinois, and many

members outside the State of Illinois. ISRA brings this action on behalf of itself and its 18-20-year-old members in Illinois, including the named Plaintiffs herein. These ISRA members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

26.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Illinois. FPC brings this action on behalf of itself and its 18-20-year-old members in Illinois, including the named Plaintiffs herein. These FPC members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

27.    Defendant Kwame Raoul is sued in his individual capacity and in his official capacity as the Attorney General of Illinois. As Attorney General, he is responsible for enforcing the State's laws, *see* 15 Ill. Comp. Stat. 205/4 (requiring that Attorney General "institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"), which include the State's general prohibition against 18-to-20-year-olds carrying loaded handguns in public and the State's carry-licensing regime.

28.    Defendant Brendan F. Kelly is sued in his individual capacity and in his official capacity as the Director of the Illinois Department of State Police. As Director, Kelly is responsible for enforcing the State's criminal laws and implementing and administering certain regulatory programs, *see, e.g.*, 20 Ill. Comp. Stat. 2610/1–2, including the State's general prohibition against 18-to-20-year-olds carrying loaded handguns in public and the State's carry-licensing regime. *See, e.g.*, 430 Ill. Comp. Stat. 66/25.

29.    Defendant Joshua C. Morrison is sued in his individual capacity and in his official capacity as State's Attorney for Fayette County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the 18-to-20-Year-Old Carry Ban. 55 Ill. Comp. Stat. 5/3-9005. Defendant Morrison's ongoing enforcement of the Ban against Fayette County residents places Plaintiff Meyer under imminent threat of arrest and prosecution should he violate the 18-to-20-Year-Old Carry Ban, preventing him from carrying a handgun in public.

30.    Defendant James Gomric is sued in his individual capacity and in his official capacity State's Attorney for St. Clair, County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the 18-to-20-Year-Old Carry Ban. 55 Ill. Comp. Stat. 5/3-9005. Defendant Gomric's ongoing enforcement of the Ban against St. Clair County residents places Plaintiff Nalley under imminent threat of arrest and prosecution

should he violate the 18-to-20-Year-Old Carry Ban, preventing him from carrying a handgun in public.

31.     Defendant Eric Weis is sued in his individual capacity and in his official capacity as State's Attorney for Kendall County, Illinois. As State's Attorney, he has a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned," including violations of the 18-to-20-Year-Old Carry Ban. 55 Ill. Comp. Stat. 5/3-9005. Defendant Weis's ongoing enforcement of the Ban against Kendall County residents places Plaintiff Davis under imminent threat of arrest and prosecution should she violate the 18-to-20-Year-Old Carry Ban, preventing her from carrying a handgun in public.

32.     Defendant Christopher Palmer is sued in his individual capacity and in his official capacity as Sheriff of Fayette County, Illinois. As sheriff, "he has the duty to prevent crime and keep the peace and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Gibbs v. Madison Cnty. Sheriff's Dep't*, 326 Ill. App. 3d 473, 478 (2001). Defendant Watson's ongoing enforcement of the Ban against Fayette County residents places Plaintiff Meyer under imminent threat of arrest should he violate the 18-to-20-Year-Old Carry Ban, preventing him from carrying a handgun in public.

33.     Defendant Richard Watson is sued in his individual capacity and in his official capacity as Sheriff of St. Clair County, Illinois. As sheriff, "he has the duty to prevent crime and keep the peace and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Gibbs*, 326 Ill. App. 3d 473 (2001).

Defendant Watson's ongoing enforcement of the Ban against St. Clair County residents places Plaintiff Nalley under imminent threat of arrest should he violate the 18-to-20-Year-Old Carry Ban, preventing him from carrying a handgun in public.

34.     Defendant Dwight A. Baird is sued in his individual capacity and in his official capacity as Sheriff of Kendall County, Illinois. As sheriff, "he has the duty to prevent crime and keep the peace and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Gibbs*, 326 Ill. App. 3d 473 (2001). Defendant Baird's ongoing enforcement of the Ban, including 720 Ill. Comp. Stat. 5/24-1.6, against Kendall County residents places Plaintiff Davis under imminent threat of arrest should he violate the 18-to-20-Year-Old Carry Ban, preventing her from carrying a handgun in public.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

36.     This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as nominal damages pursuant to 28 U.S.C. § 1983 and attorneys' fees pursuant to 42 U.S.C. § 1988.

37.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Southern District of Illinois.

## THE LAWS AT ISSUE

38.     Under 720 Ill. Comp. Stat. 5/24-1.6(a), Illinois law is violated when a person knowingly:

> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

> (2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

> (3) One of the following factors is present:

> > …

> > (I) the person possessing the weapon was under 21 years of age and in possession of a handgun, unless the person under 21 is engaged in lawful activities under the Wildlife Code or described in subsection 24-2(b)(1), (b)(3), or 24-2(f).

39.     Only lawful activities under the Wildlife Code, 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I); *id.* § 24-2(b)(3), and shooting at established target ranges, *id.* § 24-2(b)(1), (f), are exempt from this general criminal ban.

40.     Moreover, 720 Ill. Comp. Stat. 5/24-1(a)(4) and (a)(10) generally prohibit the knowing carry of a functioning, loaded, and immediately accessible pistol, revolver, stun gun or taser or other firearm, "in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the

land or in the legal dwelling of another person, as an invitee with that person's permission," *id.*, 5/24-1(a)(4),   or "upon any public street, alley, or other public lands within the corporate limits of a city, village, or incorporated town, except when an invitee thereon, or therein," *id.*, 5/24-1(a)(10).

41.     Only "a currently valid license under the Firearm Concealed Carry Act" exempts a person from this general criminal ban. *See id.*, 5/24-1(a)(4)(iv), (a)(10)(iv).

42.     But, under the Firearm Concealed Carry Act, no license shall be issued to anyone under twenty-one years of age. 430 Ill. Comp. Stat. 66/25(1).

43.     As a shall-issue state, "The Department shall issue a license to an applicant … if the person . . . is at least 21 years of age . . . ."[1] *Id.*

44.     Accordingly, even if Illinois allows law-abiding adults twenty-one years of age or older to exercise their rights to keep and bear arms outside the home, the State bans exercise of the right to carry a firearm by law-abiding adults who are 18-20 years of age.

## STATEMENT OF FACTS RELATING TO DAVID MEYER

45.     Plaintiff David Meyer is a 19-year-old resident of Fayette County, Illinois.

46.     Meyer works full-time in construction, including electrical, plumbing and HVAC.

47.     Meyer is a responsible citizen not disqualified from exercising his Second Amendment rights.

48.     Meyer is a member of Plaintiffs SAF, ISRA, and FPC.

---

[1] "Department" means the Department of State Police. 430 Ill. Comp. Stat. 66/5.

49.     Meyer desires to carry a handgun for self-defense and other lawful purposes. Meyer frequently drives his work truck to and from job sites alone, and in the possession of high-dollar tools and other equipment.

50.     Meyer has a valid Firearm Owners Identification Card (FOID).

51.     Meyer would acquire a Smith and Wesson Shield handgun if he were free to lawfully carry one. Meyer would lawfully acquire the handgun through an interfamilial gift.

52.     Defendants, however, by their active enforcement of the Illinois 18-to-20-Year-Old Carry Ban, are precluding Meyer from obtaining a license to carry and subjecting Meyer to the Ban's carry restrictions, which criminalize Meyer's desired conduct to lawfully carry a handgun for the purpose of self-defense.

53.     As a result of Defendants' current enforcement of the Illinois 18-to-20-Year-Old Carry Ban, if Meyer attempts to carry a handgun in public for all lawful purposes including self-defense, he will be subjected to arrest and criminal charges.

54.     Thus, although Meyer can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or potentially be drafted into the armed forces or called upon for federal and state militia service and even be held fully accountable before the law for criminal matters to the point of being executed (*see* 18 U.S.C. § 3591), Defendants' enforcement of the 18-to-20-Year-Old Carry Ban prevents him from carrying a handgun in public throughout this State.

55.     Meyer is a responsible, peaceable citizen who is not disqualified from exercising his Second Amendment rights and who has no history of violent behavior or other conduct that would suggest he poses any threat or danger.

56.     Meyer desires to obtain a license to carry and to be able to carry a loaded handgun for his self-defense. Apart from the age restriction Plaintiff Meyer is not otherwise disqualified from eligibility for a carry permit, and if the 18-to-20-Year-Old Carry Ban is invalidated or repealed he will apply for a license to carry forthwith.

57.     Meyer has abstained from carrying a handgun in public for all lawful purposes including self-defense, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the 18-to-20-Year-Old Carry Ban, enforced by Defendants, should he carry a handgun in public for all lawful purposes including self-defense.

## STATEMENT OF FACTS RELATING TO MITCHELL NALLEY

58.     Plaintiff Mitchell Nalley is a 19-year-old resident of St. Clair County, Illinois.

59.     Nalley is a full-time student and member of the ROTC program. Nalley has received training on the safe operation of the M249 machinegun, M240 machinegun, and has been trained on, and qualified with the M4 rifle.

60.     Nalley is a responsible citizen not disqualified from exercising his Second Amendment rights.

61.     Nalley is a member of Plaintiffs SAF, ISRA, and FPC.

62.     For self-defense and other lawful purposes, Nalley desires to carry a handgun outside of the home. Nalley is concerned about the growing trend of church shootings and

active shooter situations at areas where large amounts of people congregate, such as Walmart and Target stores.

63.    Nalley has a current and valid Firearm Owners Identification Card.

64.    Nalley would acquire a Smith and Wesson M&P handgun if he were free to lawfully carry one. Nalley would lawfully acquire the handgun through a private sale.

65.    Defendants, however, by their active enforcement of the Illinois 18-to-20-Year-Old Carry Ban, are precluding Nalley from obtaining a license to carry and therefore subjecting Nalley to the carry restrictions found therein, which criminalize Nalley's desired conduct to lawfully carry a handgun for the purpose of self-defense.

66.    As a result of Defendants' current enforcement of the 18-to-20-Year-Old Carry Ban, if Nalley carries a handgun in public for all lawful purposes including self-defense, he will be subjected to arrest and criminal charges.

67.    Thus, although Nalley can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join or potentially be drafted into the armed forces or called upon for federal and state militia service and even be held fully accountable before the law for criminal matters to the point of being executed (*see* 18 U.S.C. § 3591), Defendants' enforcement of the 18-to-20-Year-Old Carry Ban prevents him carrying a handgun in public throughout this State.

68.    Nalley is a responsible, peaceable citizen who is not disqualified from exercising his Second Amendment rights and who has no history of violent behavior or other conduct that would suggest he poses any threat or danger.

69.     Nalley desires to obtain a license to carry and to be able to carry a loaded handgun for his self-defense. Apart from the age restriction Plaintiff Nalley is not otherwise disqualified from eligibility for a carry permit, and if the 18-to-20-Year-Old Carry Ban is invalidated or repealed he will apply for a license to carry forthwith.

70.     Nalley has abstained from carrying a handgun in public for all lawful purposes including self-defense, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the 18-to-20-Year-Old Carry Ban, enforced by Defendants, should he carry a handgun in public for all lawful purposes including self-defense.

## STATEMENT OF FACTS RELATING TO
## EVA DAVIS

71.     Plaintiff Eva Davis is an 18-year-old resident of Kendall County, Illinois.

72.     Davis is a full-time student. She has been shooting firearms since the age of 12 and participates in competitive trap and skeet shotgun shooting. For both 2019 and 2020, Davis was ranked the Top Overall Female Shooter in Illinois.

73.     Davis is a responsible citizen not disqualified from exercising her Second Amendment rights.

74.     Davis is a member of Plaintiffs SAF, ISRA, and FPC.

75.     For self-defense and other lawful purposes, Davis desires to carry a handgun outside of the home. Although still a high school senior, Davis takes college courses at a local community college in the afternoons and evenings. In recent semesters, her schedule has included classes that ended between 9 p.m. and 10 p.m. at night and required Davis to walk alone to her vehicle in the dark.

76.     Davis has submitted an application for a Firearm Owners Identification Card. Her application includes the required parental affidavit.

77.     Upon issuance of her FOID card, Davis would acquire a Beretta Pico handgun. Davis would lawfully acquire the handgun through an interfamilial gift.

78.     Defendants, however, by their active enforcement of the Illinois 18-to-20-Year-Old Carry Ban, are precluding Davis from obtaining a license to carry and therefore subjecting Davis to the carry restrictions found therein, which criminalize Davis's desired conduct to lawfully carry a handgun for the purpose of self-defense.

79.     As a result of Defendants' current enforcement of the 18-to-20-Year-Old Carry Ban, if Davis carries a handgun in public for all lawful purposes including self-defense, she will be subjected to misdemeanor or felony criminal charges.

80.     Thus, although Davis can vote, serve on a jury, hold public office, marry, sign legally binding contracts, join the armed forces, and even be held fully accountable before the law for criminal matters to the point of being executed (*see* 18 U.S.C. § 3591), Defendants' enforcement of the 18-to-20-Year-Old Carry Ban prevents her from carrying a handgun in public throughout this State.

81.     Davis is a responsible, peaceable citizen who is not disqualified from exercising her Second Amendment rights and who has no history of violent behavior or other conduct that would suggest she poses any threat or danger.

82.     Davis desires to obtain a license to carry to be able to carry a loaded handgun for her self-defense. Apart from the age restriction Plaintiff Davis is not otherwise disqualified

from eligibility for a carry permit, and if the 18-to-20-Year-Old Carry Ban is invalidated or repealed she will apply for a license to carry forthwith.

83.     Davis has abstained from carrying a handgun in public for all lawful purposes including self-defense, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to the 18-to-20-Year-Old Carry Ban, enforced by Defendants, should she carry a handgun in public for all lawful purposes including self-defense.

## HISTORY AND EFFECTS OF PUBLIC CARRY

84.     On May 8, 1792, mere months after ratification of the Second Amendment, Congress mandated that "every free able-bodied white male citizen . . . *who is or shall be of the age of eighteen years*, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia." 1 Stat. 271 ("Militia Act") (emphasis added).

85.     In the individual States, males aged 18 were enrolled.

86.     Individuals within Plaintiffs' 18-20-year-old age group pose a lesser risk of perpetrating violent crime compared to their older counterparts.  For example,18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared to 58,850 violent-crime arrests for 21-to-24-year-olds, Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020), https://bit.ly/3eOU8Gl.

87.     Only 320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019, compared to 338.9 out of every 100,000 21-to-24-year-olds. Off. of Juvenile

Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020), https://bit.ly/3gWR4KP.

88.     Female individuals within the 18-to-20 age group pose a minimal risk of perpetrating violent crime of any kind compared to their male counterparts.

89.     In 2019, 18-20-year-old women were arrested for fewer than one-twelfth as many murders and nonnegligent manslaughters as 21-24-year-old men. *Compare Estimated number of arrests by offense and age group, 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3reYudS (1,620 homicides or negligent manslaughters); *with id.*, *Gender: Females*, https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). Overall, 21-24-year-old men are roughly four times likelier than 18-20-year-old women to be arrested for a violent crime of any sort. *Compare Arrest rates by offense and age group: 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/31yvZ0h (0.51 percent of 21-24-year-old men arrested for violent crimes in 2019); *with Arrest rates by offense and age group: 2019, Gender: Females*, *id.*, https://bit.ly/3mbxA65 (0.13 percent of 18-20-year-old women arrested for violent crimes in 2019).

90.      In 2018, women perpetrated only 17.6 percent of violent incidents, whereas men perpetrated 86.3 percent,[2] and women were victims of 57.7 percent of violent incidents.

---

[2] Only female offenders committed 13.7 percent of violent incidents; only male offenders committed 82.4 percent; both male and female offenders committed 3.9 percent. *Criminal Victimization, 2018 – Supplemental Tables*, Bureau of Just. Stats., Off. of Just. Progs., U.S. Dep't of Just. 1 tbl. 12a. (July 2020), https://bit.ly/3lJ8ISA.

*Criminal Victimization, 2018 – Supplemental Tables*, Bureau of Just. Stats., Off. of Just.

Progs., U.S. Dep't of Just. 1 tbl. 12a. (July 2020), https://bit.ly/3lJ8ISA.

## COUNT I: ILLINOIS' 18-TO-20-YEAR-OLD CARRY BAN IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED PURSUANT TO THE SECOND AND FOURTEENTH AMENDMENTS
### (All Plaintiffs v. Defendants)

91.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

92.     The Second Amendment of the United States Constitution provides that "the right of the people to keep and bear arms shall not be infringed."

93.     The Supreme Court has held that the right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right. *Heller*, 554 U.S. at 581.

94.     In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

95.     In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *id.* at 806 (Thomas, J., concurring in the judgment).

96.     42 U.S.C. § 1983 prohibits state actors from depriving a person of a federal constitutional rights under color of state law.

97.     Plaintiffs David Meyer, Mitchell Nalley, and Eva Davis, along with similarly situated members of SAF, ISRA, and FPC, are law-abiding, peaceable citizens of Illinois and the United States that lawfully own, possess, and utilize firearms, and who wish to be

22

able to carry handguns on public streets and public property throughout this State without being subjected to criminal prosecution simply because Defendants contend they are ineligible for any license to carry a handgun.

98.     Defendants have violated Plaintiffs' right to keep and bear arms by precluding them from being able to carry a handgun on the public streets and public property – even for purposes of self-defense – because Defendants enforce 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I)'s ban against Plaintiffs and because Defendants refuse to issue licenses to carry a handgun to Plaintiffs.

99.     Defendants' enforcement of 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv) and 430 Ill. Comp. Stat. 66/25(1), as well as 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), and the regulations, customs, practices, and policies related thereto, is an infringement and an impermissible burden on Plaintiffs' right to keep and bear arms pursuant to the Second and Fourteenth Amendments of the U.S. Constitution, especially in light of the fact that it prevents Plaintiffs from "wear[ing], bear[ing], or carry[ing a firearm] . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584.

100.    Even if the 18-to-20-Year-Old Carry Ban were subject to means-end scrutiny, prohibiting 18-to-20-year-old adults from carrying handguns does not substantially advance a government interest in public safety. That is because the available data show that 18-to-20-year-old adults commit *fewer* violent crimes than those who are 21-to-24-years-old. *See* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of*

*arrests by offense and age group, 2019, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020) (showing that 18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared to 58,850 violent-crime arrests for 21-to-24-year-olds), https://bit.ly/3eOU8Gl; Off. of Juvenile Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. Dep't of Just. (Nov. 16, 2020) (showing that 320.8 out of every 100,000 18-to-20-year-olds were arrested for violent crimes in 2019, compared to 338.9 out of every 100,000 21-to-24-year-olds). https://bit.ly/3gWR4KP. Because 18-to-20-year-old adults pose a lesser threat to public safety than individuals who are only marginally older than them, the 18-to-20-Year-Old Carry Ban's prohibition on 18-to-20-year-olds carrying handguns cannot withstand any potentially applicable level of constitutional scrutiny.

101.    Defendants' current enforcement of 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv) and 430 Ill. Comp. Stat. 66/25(1), as well as 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), and the regulations, customs, practices, and policies related thereto forces Plaintiffs to either comply with the unconstitutional mandate—thereby being prevented from defending themselves and their loved ones in public places—or be subjected to criminal prosecution.

102.    Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiffs' Second and Fourteenth Amendment rights, Plaintiffs have suffered—and continue to suffer—from an unlawful deprivation of their fundamental constitutional right to keep and bear arms.

**COUNT II: ILLINOIS' 18-TO-20-YEAR-OLD CARRY BAN IS
UNCONSTITUTIONAL AS APPLIED TO 18-TO-20-YEAR-OLD WOMEN
UNDER THE SECOND AND FOURTEENTH AMENDMENTS**
*(Plaintiff Eva Davis, SAF, ISRA, FPC v. Defendants)*

103.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

104.    As detailed above, 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv) and 430 Ill. Comp. Stat. 66/25(1), as well as 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), ban law-abiding adults between the ages of eighteen and twenty-one from carrying handguns in public.

105.    Even if constitutional on its face, this ban violates the Second Amendment rights of Plaintiff Davis and all other similarly situated female members of SAF, ISRA, and FPC in Illinois between the ages of eighteen and twenty-one.

106.    Female individuals within this age group pose a relatively minimal risk of perpetrating violent crime of any kind compared to their male counterparts. In 2019, 18-20-year-old women were arrested for *fewer than one-twelfth* as many murders and nonnegligent manslaughters as 21-24-year-old men. *Compare Estimated number of arrests by offense and age group, 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3reYudS (1,620 homicides or negligent manslaughters); *with id.*, *Gender: Females*, https://bit.ly/3fcZwoF (120 murders or nonnegligent manslaughters). Overall, 21-24-year-old men are roughly *four times likelier* than 18-20-year-old women to be arrested for a violent crime of any sort. *Compare Arrest rates by offense and age group: 2019, Gender: Males*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/31yvZ0h (0.51 percent of 21-24-year-old men arrested for violent crimes in 2019); *with Arrest rates*

by offense and age group: 2019, Gender: Females, id., https://bit.ly/3mbxA65 (0.13 percent of 18-20-year-old women arrested for violent crimes in 2019).

107.    In 2018, women perpetrated only 17.6 percent of violent incidents, whereas men perpetrated 86.3 percent,[3] and women were victims of 57.7 percent of violent incidents. *Criminal Victimization, 2018*, *supra*, at 1 tbl. 12a.

108.    Only *0.13 percent* of 18-to-20-year-old women were arrested for *any violent crime* at all in 2019, *see Arrest rates by offense and age group, 2019, Gender: Females*, Law Enforcement & Juvenile Crime, *supra*, https://bit.ly/3173Kph. In 2018, the rate was 0.15 percent, *see Arrest rates by offense and age group, 2018, Gender: Females*, *id.*, https://bit.ly/2ORyCb9, and in 2017, it was 0.15 percent, *see Arrest rates by offense and age group, 2017, Gender: Females*, *id.*, https://bit.ly/3cdULsP. The near-total majority 18-to-20-year-old women pose no threat to public safety.

109.    The State has not provided and cannot provide any legitimate justification for denying law-abiding, 18-to-20-year-old women the right to lawfully exercise their fundamental right to carry handguns in public for self-defense and other lawful purposes.

110.    Without any legitimate justification, much less one of a "compelling" or "substantial" nature as required to survive heightened scrutiny, to the extent a scrutiny analysis applies, Illinois' 18-to-20-Year-Old Carry Ban is unconstitutional, void, and invalid as applied to women between the ages of 18 and 21. Defendants' active

---

[3] Only female offenders committed 13.7 percent of violent incidents; only male offenders committed 82.4 percent; both male and female offenders committed 3.9 percent. *Criminal Victimization, 2018*, *supra*, at 1 tbl. 12a.

enforcement of it constitutes an actionable violation of 42 U.S.C. § 1983 redressable through the relief Plaintiffs seek in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and against Defendants, as follows:

111.   Declare that the 18-to-20-Year-Old Carry Ban consisting of 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv), 430 Ill. Comp. Stat. 66/25(1), and all related laws, regulations, policies, and procedures, violates—facially, as applied to otherwise qualified 18-20-year-olds, or as applied to otherwise qualified 18-20-year-old women—the right of Plaintiffs and Plaintiffs' similarly situated members to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the United States Constitution;

112.   Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing, against Plaintiffs and Plaintiffs' similarly situated members, the 18-to-20-Year-Old Carry Ban consisting of 720 Ill. Comp. Stat. 5/24-1.6(a)(3)(I), 720 Ill. Comp. Stat. 5/24-1(a)(4)(iv), 720 Ill. Comp. Stat. 5/24-1(a)(10)(iv), 430 Ill. Comp. Stat. 66/25(1), and all related laws, regulations, policies, and procedures that would impede or criminalize Plaintiffs and Plaintiffs' similarly situated members' exercise of their right to keep and bear arms;

113.   Award Plaintiffs nominal damages for constitutional injuries caused by Defendants' enforcement of the 18-to-20-Year-Old Carry Ban and resulting deprivation of Plaintiffs' Second and Fourteenth Amendment rights;

114.   Pursuant to 42 U.S.C. § 1988, award costs and attorney fees and expenses to the

extent permitted; and

115.   Grant any and all other equitable and/or legal remedies this Court may see fit.


Dated: May 27, 2021                                  Respectfully Submitted,

                                                     Christian D. Ambler
                                                     STONE & JOHNSON, CHTD.
                                                     111 West Washington Street
                                                     Suite 1800
                                                     Chicago, Illinois 60602
                                                     (312) 332-5656
                                                     cambler@stonejohnsonlaw.com

                                                     David G. Sigale
                                                     LAW FIRM OF DAVID G. SIGALE, P.C.
                                                     430 West Roosevelt Road
                                                     Wheaton, IL 60187
                                                     (630) 452-4547
                                                     dsigale@sigalelaw.com

                                                     David H. Thompson*
                                                     Peter A. Patterson*
                                                     William V. Bergstrom*
                                                     COOPER & KIRK, PLLC
                                                     1523 New Hampshire Avenue, N.W.
                                                     Washington, D.C. 20036
                                                     (202) 220-9600
                                                     (202) 220-9601 (fax)
                                                     dthompson@cooperkirk.com
                                                     ppatterson@cooperkirk.com
                                                     wbergstrom@cooperkirk.com

                                                            *Pro hac vice application
                                                            forthcoming

                                                     Attorneys for Plaintiffs