## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID MEYER, MITCHELL NALLEY,       )
EVA DAVIS, SECOND AMENDMENT       )
FOUNDATION, ILLINOIS STATE       )
RIFLE ASSOCIATION, AND FIREARMS )
POLICY COALITION, INC.,       )
                                )
      Plaintiffs,       )
                                )
-vs-       )          21-cv-518-DWD
                                )
KWAME RAOUL, BRENDAN F. KELLY, )
JOSHUA C. MORRISON, JAMES       )
GOMRIC, ERIC WEIS, CHRISTOPHER       )
PALMER, RICHARD WATSON, and       )
DWIGHT A. BAIRD,       )
                                )
      Defendants.       )

## MOTION TO DIMISS OF ILLINOIS ATTORNEY GENERAL KWAME RAOUL AND ILLINOIS STATE POLICE DIRECTOR BRENDAN KELLY

While this *case* concerns the scope of the Second Amendment to the United States Constitution, this *motion* concerns three issues no less grave—the doctrine of qualified immunity, the proper balance between state and federal sovereignty, and the limited jurisdiction of federal courts. Plaintiffs, three organizations (bringing suit on their own behalf *and* on behalf of their members) and three individuals,[1] seek money damages and injunctive relief against the Attorney General in his individual capacity *and* his official capacity, and against the Director of the Illinois State Police in his individual capacity *and* his official capacity.

Plaintiffs' strategy is to throw ideas at the wall hoping some of them stick. Almost none of them do. *First*, Plaintiffs' claims against the Attorney General and the Director in their individual

---

[1] Plaintiffs are David Meyer, Mitchell Nalley, and Eva Davis (the "Individual Plaintiffs"); and the Second Amendment Foundation, Illinois State Rifle Association, and the Firearms Policy Coalition (the "Association Plaintiffs," and together with the Individual Plaintiffs, "Plaintiffs").

capacities are barred by the doctrine of qualified immunity, and because Plaintiffs do not (and cannot) allege any sufficient causal connection between either of them and Plaintiffs' alleged injuries. *Second*, Plaintiffs' claims against the Attorney General in his official capacity are barred by the Eleventh Amendment. *Third*, Plaintiffs' claims for monetary damages are also barred by the Eleventh Amendment. And *fourth*, the Association Plaintiffs lack standing to bring claims on their own behalf (as distinct from claims brought through associational standing on behalf of their members) because they do not plead that they have experienced any injuries at all. The State Defendants therefore respectfully request that the Court dismiss all claims brought against Attorney General Kwame Raoul in his official capacity and his individual capacity, and dismiss all claims brought against Illinois State Police Director Brendan Kelly in his individual capacity. The State Defendants further request that the Court dismiss all claims for money damages. Finally, the State Defendants request the Court dismiss the claims brought by the Association Plaintiffs on their own behalf.[2]

## BACKGROUND

**The Illinois Concealed Carry Permit System**

Unless a statutory exception applies, to carry a concealed firearm in Illinois a person must apply for and obtain a concealed carry license. 430 ILCS 66/10, 66/25, 66/40. An Illinois resident applying for a concealed carry license must meet certain statutory prerequisites, including a

---

[2] This Motion does not address the claims brought against Director Kelly in his official capacity by (a) the three Association Plaintiffs on behalf of their members and (b) the three Individual Plaintiffs. As a defendant exclusively in his official capacity, Director Kelly is not moving to dismiss those claims at this time, but contemporaneously with this motion is filing an answer to Plaintiffs' complaint addressing those claims. Director Kelly reserves all his rights under the law, however, to contest Plaintiffs' standing to bring these claims, and his rights to argue that these claims are not viable as a matter of law.

requirement that they be at least 21 years of age. 430 ILCS 66/25.[3] Licensees are permitted to "carry a loaded or unloaded concealed firearm, fully concealed or partially concealed, on or about his person" and to "keep or carry a loaded or unloaded concealed firearm on or about his or her person within a vehicle," so long as they are not in a prohibited area such as a school or a hospital. *Id.* 66/10(c), 66/65. Licenses are valid for five years, but may be revoked if, among other reasons, the licensee is found to be ineligible under the Concealed Carry Act or Firearm Owners Identification Card ("FOID") Act. *Id.* 66/10(c), 66/70(a). The Illinois Department of State Police administers the concealed carry permitting process. 430 ILCS 66/25(1). Persons found to be carrying a concealed firearm unlawfully may be subject to criminal prosecution. *See*, 720 ILCS 5/24-1.6(a)(3)(I).

**Plaintiffs' Lawsuit**

On May 27, 2021, Plaintiffs filed suit challenging the constitutionality of 430 ILCS 66/25(1), 720 ILCS 5/24-1.6(a)(3)(I), 720 ILCS 5/24-1(a)(4)(iv), and 720 ILCS 5/24-1(a)(10)(iv) (collectively, the "Challenged Statutes"), which together place certain restrictions on the ability of persons under the age of 21 to be issued concealed carry licenses, and impose certain criminal penalties on persons unlawfully carrying a concealed firearm. Plaintiffs name two state officials and six county officials as defendants, all in their individual *and* official capacities: Illinois Attorney General Kwame Raoul and Illinois State Police ("ISP") Director Brendan Kelly

---

[3] In addition, applicants must possess a valid Firearm Owner's Identification Card, meet the requirements for the issuance of a Firearm Owner's Identification Card and not be prohibited under the Firearm Owners Identification Card Act or federal law from possessing or receiving a firearm; have completed certain required firearms trainings; and not have been convicted or found guilty of certain criminal offenses, be subject to a pending arrest warrant or qualifying prosecution or proceeding, been placed in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment within the 5 years immediately preceding the date of the license application. 430 ILCS 66/25.

(collectively the "State Defendants"); and Fayette County State's Attorney Joshua Morrison, St. Clair County State's Attorney James Gomric, Kendall County State's Attorney Eric Weis, Fayette County Sheriff Christopher Palmer, St. Clair County Sheriff Richard Watson, and Kendall County Sheriff Dwight Baird (collectively the "County Defendants").

Plaintiffs allege the age-based restrictions imposed by the Challenged Statutes (a) do not fall within the scope of what would have been viewed as acceptable regulations consistent with the Second Amendment as it was understood at the time of ratification, and (b) fail to meet the appropriate level of constitutional scrutiny. Compl. ¶¶ 84–90. Plaintiffs therefore claim the Challenged Statutes and "all related laws, regulations, policies, and procedures" are unconstitutional violations of the rights secured by the Second and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 111–114. Plaintiffs do not challenge any statute, provision, or policy relating to the regulation of firearms in Illinois other than the age-based restrictions codified in the Challenged Statutes. *Id.*

Plaintiffs bring two counts pursuant to 42 U.S.C. § 1983. In Count I, Plaintiffs say the Challenged Statutes violate the Second Amendment on their face and as applied under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and progeny. Compl. ¶¶ 91–102. And in Count II, brought solely on behalf of Plaintiff Eva Davis and the Association Plaintiffs, they say the challenged provisions are unconstitutional as applied to 18-to-20 year old women under intermediate scrutiny, because such women are allegedly highly unlikely to commit any violent acts at all. *Id.* ¶¶ 103–10. Plaintiffs pray that the Court enter an order declaring the Challenged Statutes and "all related laws, regulations, policies, and procedures" unconstitutional. Compl. ¶¶ 111–114. Plaintiffs also seek an injunction against enforcement of the Challenged Statutes,

nominal damages, attorney's fees and expenses pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems just.

## ARGUMENT

Attorney General Raoul moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims brought against him in his official and individual capacities. ISP Director Kelly moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims brought against him in his individual capacity, and has filed an answer to claims brought against him in his official capacity. The State Defendants further move to dismiss all claims for monetary damages. And finally, the State Defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the claims brought by the Association Plaintiffs on their own behalf (and not on behalf of their members).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Although we must accept as true the well-pleaded factual allegations in the complaint, we do not credit legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (internal citations, brackets, and quotation marks omitted). Courts may dismiss a claim with prejudice "if . . . amendment would be futile." *Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 868–69 (7th Cir. 2013).

I.   **Plaintiffs' Claims Against The Attorney General And Director Kelly In Their Individual Capacities Must Be Dismissed.**

A.   The State Defendants Have Qualified Immunity From Individual Liability.

The Court should dismiss Plaintiffs' claims against the State Defendants in their individual capacities with prejudice under the doctrine of qualified immunity because Plaintiffs cannot show "sufficient consensus, based on all relevant case law, indicating that the official's [alleged] conduct

was unlawful." *Landstrom v. Illinois Dep't of Child. & Fam. Servs.*, 892 F.2d 670, 678 (7th Cir. 1990); *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

Through the doctrine of qualified immunity, a state official is protected from a § 1983 claim against that official in their individual capacity unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018); *see also Kemp v. Liebel*, 877 F.3d 346, 350–51 (7th Cir. 2017). "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Reed*, 906 F.3d at 547. "In order to avoid unnecessary litigation of constitutional issues and expending scarce judicial resources that ultimately do not impact the outcome of the case, courts may analyze the 'clearly established' prong without first considering whether the alleged constitutional right was violated." *Id.* "[Q]ualified immunity is the ability to be free from suit, not merely a defense from liability . . . therefore, the question of immunity should be decided at the earliest possible stage." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Under the "clearly established" prong, the burden is on Plaintiffs to demonstrate that the alleged violation of their constitutional rights was "clearly established" when the alleged violation occurred. *Reed*, 906 F.3d at 547; *see also Kemp*, 877 F.3d at 350–51. "To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right . . . ." *Reed*, 906 F.3d at 547. "Ordinarily, to show that the law was clearly established, plaintiffs must point to a closely analogous case finding the alleged violation unlawful." *Id.*; *see also Findlay v. Lendermon*,

722 F.3d 895, 899 (7th Cir. 2013). "They need not point to an identical case, but existing precedent must have placed the statutory or constitutional question beyond debate." *Reed*, 906 F.3d at 547; *see also Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) ("The law is 'clearly established' when 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'"). A court looks "first to controlling Supreme Court precedent and our own circuit decisions on the issue." *Reed*, 906 F.3d at 547. If no controlling precedent exists, a court must "broaden [its] survey to include all relevant caselaw in order to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.*

Plaintiffs have not carried (and cannot carry) their burden of pleading a violation of a constitutional right that is "clearly established." *Reed*, 906 F.3d at 547. Neither the Supreme Court nor the Seventh Circuit has ruled that the Second Amendment grants 18-to-20 year olds the right to carry concealed firearms. Indeed, the Seventh Circuit has come close to ruling that there is no such right. In *Horsley v. Trame*, the Seventh Circuit considered a Second Amendment challenge to an Illinois statute providing that 18-to-20 year olds could not be issued a FOID Card permitting them to acquire and own firearms absent the signature of a parent or guardian, or in the alternative without the approval of the Director of the Illinois State Police. 808 F.3d 1126, 1134 (7th Cir. 2015). Rejecting a legal theory similar to that advanced by Plaintiffs in this case, the Seventh Circuit ruled that it *is* constitutional to impose certain limits on the ability of 18-to-20 year olds to acquire and own firearms beyond those placed on persons over the age of 21. *Id.* at 1133–34. The decision in *Horsely* is binding on this Court, and eliminates any possibility that Plaintiffs can overcome the State Defendants' qualified immunity shield.

7

Moreover, the decision in *Horsley* is consistent with the overwhelming weight of authority from federal courts across the nation. *See, e.g.*, *Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (holding the Second Amendment does not confer any constitutional right to carry concealed firearms); *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013) (same); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 349 (5th Cir. 2013) (affirming constitutionality of Texas statute restricting the ability of 18-to-20 year olds to obtain concealed carry permits); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012) (same); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 388 n.18 (D. Mass. 2013) (rejecting argument that Second Amendment gives persons age 18-to-20 the constitutional right to carry a firearm in public) , *aff'd*, 783 F.3d 332 (1st Cir. 2015).[4] As one federal court observed just weeks before Plaintiffs filed suit, "the established consensus of federal appellate and district courts from around the country is that age-based restrictions limiting the rights of 18-to-20 year olds to keep and bear arms" are "longstanding" and "presumptively lawful." *Lara v. Evanchick*, No. 2:20-CV-1582, 2021 WL 1432802, at *13 (W.D. Pa. Apr. 16, 2021). Even if

---

[4] One appellate decision issued on July 13, 2021, weeks *after* the filing of this case, concluded that a federal statute restricting federally licensed firearm dealers from selling firearms to 18-20 year olds was unconstitutional. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 2021 WL 2934468, *1 (4th Cir. July 13, 2021), *as amended* (July 15, 2021). That decision, however, plainly cannot affect the qualified immunity analysis here for at least two reasons. First, *Hirschfeld* post-dated the filing of this lawsuit, and whether a right is clearly established hinges on the "objective legal reasonableness of the action, *assessed at the time it was taken*." *Pearson v. Callahan*, 555 U.S. 223, 224 (2009) (emphasis added) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Second, it is unlikely that one decision from one circuit court can clearly establish the law for purposes of qualified immunity in another circuit in the face of numerous decisions to the contrary, including Seventh Circuit precedent. The United States Supreme Court has suggested that the right at issue must be clearly established at the national level by either Supreme Court precedent, or possibly, by a "'robust consensus of persuasive authority' in the Courts of Appeals." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015). While the Seventh Circuit has held that Seventh Circuit precedent can clearly establish the law in this circuit, *Estate of Clark v. Walker*, 865 F.3d 544, 552 (7th Cir. 2017), it has not held that one circuit court opinion from outside this circuit can do the same.

*Horsley* did not prevent Plaintiffs from overcoming qualified immunity on its own (it does), the "established consensus" identified in *Lara v. Evanchick* and numerous other federal decisions would be sufficient to bar Plaintiffs' individual capacity claims.

Finally, Plaintiffs' individual capacity claims merit immediate dismissal at the pleading stage, and not at a later stage of litigation. "[Q]ualified immunity is the ability to be free from suit . . . therefore, the question of immunity should be decided at the earliest possible stage." *Jacobs*, 215 F.3d at 765 n.3. Dismissal at the pleading stage is appropriate if there is no "sufficient consensus, based on all relevant case law, indicating that the official's conduct was unlawful." *Landstrom*, 892 F.2d at 678; *see also Kernats*, 35 F.3d at 1177. Not only is there no "consensus" in favor of Plaintiffs, the overwhelming majority of courts to have considered cases similar to Plaintiffs'—*including the Seventh Circuit*—have rejected legal theories nearly identical to those brought by Plaintiffs here. *See* disc. *supra* at 7–8. The "consensus" required for an individual § 1983 claim to proceed does not exist, and additional discovery or factual development cannot rescue Plaintiffs from this result. The individual claims against the State Defendants must be dismissed with prejudice at the pleading stage.

B. Plaintiffs Fail To Plead Factual Predicates For Individual Capacity Suits Against The State Defendants.

Plaintiffs' claims against the State Defendants in their individual capacities must be dismissed because Plaintiffs have not pled a sufficient causal connection or affirmative link between the State Defendants and the alleged constitutional deprivations at issue.

The Seventh Circuit has held that an *individual* cannot be held liable in a § 1983 action "unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (internal citations and quotation marks omitted). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory

official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Id.*

Plaintiffs fail to meet the *Wolf-Lillie* pleading standard. Plaintiffs' only basis for suing the Attorney General in his individual capacity is a threadbare statement that "he is responsible for enforcing the State's laws . . . which include the State's general prohibition against 18-20 year olds carrying loaded handguns in public and the State's carry-licensing regime." Compl. ¶ 27. Likewise, Plaintiffs' only stated basis for suing Director Kelly in his individual capacity is that he is "responsible for enforcing the State's criminal laws and implementing and administering certain regulatory programs . . . including the State's general prohibition against 18-20 year olds carrying loaded handguns in public and the State's carry-licensing regime." *Id.* ¶ 28. In other words, Plaintiffs' only basis for individual constitutional claims is that the State Defendants happened to be in office at a time when the Challenged Statutes were in effect. Compl. ¶¶ 27–28. Plaintiffs do not (and cannot) plead "direct responsibility" or an individualized "causal connection, or an affirmative link, between the misconduct complained of and the official[s] sued." *Wolf-Lillie*, 699 F.2d at 869. Plaintiffs' allegations are plainly insufficient to state a claim for individual liability for an alleged constitutional deprivation, and their claims against the State Defendants in their individual capacities must be dismissed.

## II.    The Eleventh Amendment Bars Plaintiffs' Claims Against The Attorney General In His Official Capacity.

Attorney General Raoul moves to dismiss all the claims brought against him in his official capacity because they are barred by the Eleventh Amendment because he lacks the requisite connection with the enforcement of the Challenged Statutes, and Plaintiffs do not plead he has ever threatened to enforce the Challenged Statutes against Plaintiffs at all.

The Eleventh Amendment deprives federal courts of jurisdiction to consider most suits against state officials sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440–41 (7th Cir. 1992). The only exception to this rule that would apply here is if Plaintiffs "satisf[y] the requirements of *Ex parte Young*" by sufficiently alleging that the Attorney General "threatened [Plaintiffs] with prosecution" or has "authority to do so." *Sherman*, 980 F.2d at 440–41. Implicitly relying on *Ex parte Young,* 209 U.S. 123 (1908), Plaintiffs say the Attorney General is a proper defendant because 15 ILCS 205/4 allegedly requires "that [the] Attorney General []institute and prosecute all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer[], which include the State's general prohibition against 18-to-20-year-olds carrying loaded handguns in public and the State's carry-licensing regime." Compl. ¶ 27. Plaintiffs do not plead the Attorney General has threatened them with prosecution. *Id.*

Plaintiffs' theory is inconsistent with settled law going back more than a century. In *Ex parte Young* itself, the Supreme Court rejected Plaintiffs' theory, observing that a cause would not lie against a state attorney general that lacked "any special relation to the particular statute alleged to be unconstitutional" and was "not *expressly* directed to see to its enforcement." *Ex parte Young*, 209 U.S. 123, 157 (1908) (emphasis added). The Supreme Court reasoned:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently

with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Id.*

Applying *Ex parte Young*, in *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.* the Seventh Circuit dismissed the Illinois Attorney General from a case challenging the constitutionality of a state statute where the Attorney General lacked any specific enforcement responsibilities or authority beyond his generalized duties. *Sherman*, 980 F.2d at 441. Following *Sherman*, district courts have routinely dismissed state officials from constitutional challenges to state statutes where the only basis for their participation was their generalized responsibility to enforce the law. For example, in *Heabler v. Madigan*, a district court applied *Sherman* and dismissed claims against the Attorney General "because the state's Attorney General has no authority to enforce the penalty provisions of the [challenged statute]." No. 12 C 6193, 2013 WL 5405679, at *4 (N.D. Ill. Sept. 24, 2013); *see also*, *e.g.*, *Sierakowski v. Ryan*, No. 98 C 7088, 1999 WL 286290, at *2 (N.D. Ill. Apr. 27, 1999) ("The Seventh Circuit has held . . . that general broad powers to enforce or execute the laws of a state possessed by a state official, alone, are not sufficient to make the officer a proper party defendant.") *aff'd on other grounds*, 223 F.3d 440 (7th Cir. 2000); *Weinstein v. Edgar*, 826 F.Supp. 1165, 1166 (N.D. Ill. 1993) (dismissing Illinois Governor from challenge to Establishment Clause challenge because Governor lacked specific enforcement authority beyond his duty to implement the law).[5]

---

[5] In *Ent. Software Ass'n v. Blagojevich*, the Seventh Circuit found that the plaintiff did have standing to sue the Illinois Attorney General, but that case is plainly distinguishable. 469 F.3d 641, 645 (7th Cir. 2006). The basis for the decision in *Ent. Software Ass'n* was that "[t]he Attorney General concede[d] that she has the power to enforce the [challenged statute]." *Id.* Here, the Attorney General lacks the requisite role in enforcing any of the challenged statutes, and has never conceded that he has such a role for the purposes of *Ex parte Young*.

The reasoning in *Sherman* and *Haebler* applies with equal force here. Specific responsibility for enforcing the Challenged Statutes is expressly vested in the Illinois State Police and its Director, who enforce restrictions relating to 18-to-20 year olds when they review applications and issue concealed carry licenses. *See* 430 ILCS 66/10.[6] The Attorney General has no *specific* statutory enforcement role relating to the issuance of concealed carry licenses to those under 21, or the initiation of prosecution for violation of the Challenged Statutes, and Plaintiffs do not even attempt to plead that the Challenged Statutes grant him such a role. *See* Compl. ¶ 27.

Instead, Plaintiffs rely on the generalized role of the Illinois Attorney General as legal representative of Illinois and State officers under 15 ILCS 205/4 as their basis for naming him a defendant. Compl. ¶ 27. Their reliance is misplaced. 15 ILCS 205/4 codifies the Attorney General's constitutional and common law role as chief legal advisor to and representative of the State and State officers in court. *See generally Illinois Educ. Ass'n v. Illinois State Bd. of Educ.*, 204 Ill. 2d 456, 465 (Ill. 2003) ("[I]t is [the Attorney General's] duty to conduct the law business of the State."). But as discussed above, for more than a century it has been settled law that the mere possibility that an attorney general "might represent the state in litigation involving the enforcement of its statutes" is insufficient to name that attorney general a defendant under *Ex parte Young*. *Ex parte Young*, 209 U.S. at 157; *see also*, *e.g.*, *Sherman*, 980 F.2d at 44; *Sierakowski*, 1999 WL 286290 at *2. Plaintiffs' claims against the Attorney General in his official capacity are barred by the Eleventh Amendment, and must be dismissed with prejudice.

---

[6] By contrast, when Illinois law provides the Attorney General with a *specific* enforcement role relating to a statute, that enforcement authority is clear. *See*, *e.g.*, 815 ILCS 505/1 *et seq.* (Attorney General empowered to enforce Illinois Consumer Fraud Act through rulemaking and through litigation); 760 ILCS 55/1 (Attorney General empowered to enforce Charitable Trust Act through rulemaking and through litigation).

### III.     Sovereign Immunity Bars Plaintiffs' Claims For Nominal Damages.

Plaintiffs' claim for nominal damages (Compl. ¶ 113) against the State Defendants must be dismissed because Plaintiffs' only potentially viable claim is for prospective relief against Director Kelly in his official capacity, and recovery of money damages for such a claim is barred by the Eleventh Amendment.

Plaintiffs have not stated (and cannot state) a claim against the State Defendants in their individual capacities. *See* disc. *supra* at 5–10. To the extent Plaintiffs' can state a claim at all, it could only be against one of the State Defendants in their official capacity. But the Seventh Circuit has held that "the Eleventh Amendment, which precludes a citizen from suing a state for money damages in federal court without the state's consent, bars . . . claims . . . for money damages against state officials in their official capacities." *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *see also McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013); *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Plaintiffs' nominal damages claims are plainly a request for retroactive damages, and they identify no exception to the general rule under the Eleventh Amendment. Plaintiffs' damages claims are barred by sovereign immunity.

### IV.     The Associational Plaintiffs Allege No Injury To Themselves, And Therefore Lack Standing To Bring This Case On Their Own Behalf.

The Association Plaintiffs—Second Amendment Foundation, Illinois State Rifle Association, and the Firearms Policy Coalition—all purport to bring this action "on behalf of itself and its . . . members in Illinois, including the named [Individual] Plaintiffs herein." Compl. ¶¶ 24–26. But the Association Plaintiffs have failed to adequately allege injuries sufficient to give them

standing to bring this claim on behalf of themselves. To the extent they bring suit on their own behalf and in their own right, their claims must be dismissed.[7]

An organization bringing a suit "can do so either on behalf of itself or on behalf of its members." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013). "To bring suit in its own right, an organization must itself satisfy the requirements of standing." *Id.* An organization has standing if it: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[P]articularized" injury "must affect the plaintiff in a personal and individual way." *Id.* (internal citation omitted). For an injury to be "concrete," it must be "real" and "not abstract." *Id.*

The Association Plaintiffs have not even attempted to plead any injury to themselves. Rather, the Association Plaintiffs only assert injury to their members. *See* Compl. ¶¶ 45–83 (providing a "statement of facts" describing alleged injuries to each of the three Individual Plaintiffs, but no allegations relating to injuries to the Association Plaintiffs themselves). But it is well established in the Seventh Circuit that when a plaintiff "only alleges injuries to its members . . . such injuries are insufficient to establish standing on an organization's own behalf." *Milwaukee Police Ass'n*,

---

[7] The State Defendants do not, at this time, move to dismiss (a) the Individual Defendants for lack of standing, or (b) the Association Plaintiffs' claims brought on behalf of their members (as opposed to on their own behalf) for lack of standing. The State Defendants, however, do not concede that the Individual Plaintiffs have standing, or that the Association Plaintiffs have standing to seek relief on behalf of their members, and expressly reserve the right to seek to dismissal of such claims for lack of subject matter jurisdiction after further development of the factual record.

708 F.3d 921 at 927; *see also Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) ("Because the MPA does not plead that it suffered injury, it does not have standing on behalf of itself."); *Missouri Pet Breeders Ass'n v. Cty. of Cook*, 106 F. Supp. 3d 908, 914 (N.D. Ill. 2015) ("MPBA does not allege that it has suffered any injury itself; it only alleges injuries to its members. Thus, it has not met the minimum constitutional requirements for standing to sue on its own behalf."). The Association Plaintiffs' claims brought on their own behalf must be dismissed.

## CONCLUSION

For these reasons, Attorney General Raoul respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims brought against him in his official capacity, and to dismiss all claims brought against him in his individual capacity. ISP Director Kelly respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims brought against him in his individual capacity. The State Defendants further respectfully move to dismiss all claims for monetary damages. And finally, the State Defendants respectfully move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the claims brought by the Association Plaintiffs on their own behalf.

Dated: August 12, 2021

Laura K. Bautista #6289023
Deputy Bureau Chief, General Law-Springfield
500 South Second Street
Springfield, IL 62701
Phone: (217) 782-5819
Fax: (217) 524-5091
laura.bautista@ilag.gov

Aaron P. Wenzloff, #6329093
Assistant Attorney General
100 West Randolph Street, 11th Floor
Chicago, IL 60601
(312) 814-3000
aaron.wenzloff@ilag.gov

Respectfully submitted,

KWAME RAOUL, Attorney General of the
State of Illinois,

Attorney for Defendants Attorney General
Kwame Raoul and Director Brendan Kelly,

By:  /s/ Isaac Freilich Jones
     Isaac Freilich Jones, #6323915
     Assistant Attorney General
     Office of the Illinois Attorney General
     100 W. Randolph Street, 11th Floor
     Chicago, Illinois 60601
     (312) 814-3000
     isaac.freilichjones@ilag.gov

17

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID MEYER, MITCHELL NALLEY,    )
EVA DAVIS, SECOND AMENDMENT    )
FOUNDATION, ILLINOIS STATE    )
RIFLE ASSOCIATION, AND FIREARMS )
POLICY COALITION, INC.,    )
                                      )
      Plaintiffs,    )
                                        )
-vs-    )              21-cv-518-DWD
                                        )
KWAME RAOUL, BRENDAN F. KELLY, )
JOSHUA C. MORRISON, JAMES    )
GOMRIC, ERIC WEIS, CHRISTOPHER    )
PALMER, RICHARD WATSON, and    )
DWIGHT A. BAIRD,    )
                                        )
      Defendants.    )

## CERTIFICATE OF SERVICE

     I hereby certify that on August 12, 2021, I caused the foregoing to be filed using the CM/ECF system, which will send notification of such filing to counsel of record, who are registered CM/ECF participants.

                               By:  */s/ Isaac Freilich Jones*

Laura K. Bautista #6289023             Isaac Freilich Jones, #6323915
Deputy Bureau Chief, General Law-Springfield    Assistant Attorney General
500 South Second Street               Office of the Illinoi Attorney General
Springfield, IL 62701                 100 W. Randolph Street, 11th Floor
Phone: (217) 782-5819               Chicago, Illinois 60601
Fax: (217) 524-5091                 (312) 814-3000
laura.bautista@ilag.gov              isaac.freilichjones@ilag.gov

Aaron P. Wenzloff, #6329093
Assistant Attorney General
100 West Randolph Street, 11th Floor
Chicago, IL 60601
(312) 814-3000
aaron.wenzloff@ilag.gov