IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MEYER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 3:21-cv- |
| v. | ) 00518-DWD |
| | ) |
| KWAME RAOUL, et al., | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

<u>Introduction</u>

The Second Amendment "right to possess and carry weapons in case of confrontation" presumptively "belongs to all Americans," not "an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 581, 592 (2008). Plaintiffs David Meyer, Mitchell Nalley, and Eva Davis ("the Individual Plaintiffs") are adult Americans between the ages of 18 and 21. They may vote, enter contracts, and marry. They are eligible to serve in the military. And yet, under Illinois law, they are forbidden from acquiring a firearms carry license and carrying a handgun on their person in public places. This is so even though at the time the Second Amendment was adopted, 18-year-old men were universally understood to be members of the militia not just allowed but *required* to possess firearms.

Defendants nevertheless urge the Court to dismiss the Complaint and leave these Plaintiffs without legal recourse. Defendant Attorney General Kwame Raoul ("Attorney General") and Illinois State Police Director Brendan Kelly ("Director") (collectively, "State Defendants") argue that the Attorney General (but not the Director) is entitled to Eleventh Amendment immunity. But Illinois confers the power to prosecute violations of the laws at issue in this case on the Attorney General, so he is not entitled to immunity in his official capacity under the doctrine of *Ex Parte*

1

*Young*, 209 U.S. 123 (1908). The State Defendants do not seek to dismiss the claims against the Director. The Defendant States Attorneys and Sheriffs (collectively "County Defendants") argue that the Plaintiffs lack standing and their claims are not ripe because they do not own handguns. But Plaintiffs have alleged a firm and definite commitment to acquiring them if they were eligible to carry them in public and that is all that is necessary to make the purely legal issues in this case ripe for review. The States Attorneys argue that they are shielded by Eleventh Amendment immunity, but like the Attorney General they have independent power to enforce the laws at issue in this case and so are not entitled to immunity. The Sheriffs argue that they are arms of their counties and so Plaintiffs must state a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) in order to sue them for violating their constitutional rights, but when sheriffs enforce state law they act as arms of the state and may be liable without meeting the standards in *Monell*. For these reasons and others discussed in full below, the Court should deny Defendants' motions to dismiss.

## Background

Plaintiffs challenge the constitutionality of Illinois statutes that bar 18-to-20-year-olds from exercising their right to keep and bear arms for the lawful purpose of self-defense. In Illinois, it is illegal for ordinary citizens to carry a handgun in public for the purpose of self-defense unless they first acquire a carry license. 720 ILCS 5/24-1(a)(4)(iv), (a)(10)(iv). However, to qualify for a license, an applicant must be at least 21 years old. 430 ILCS 66/25(1). And even if an individual under 21 *could* get a license, carrying a handgun would still be criminalized under 720 ILCS 5/24-1.6(a)(3)(I).

These provisions (collectively, "the Carry Ban") are put into effect by the Defendants in this action. The Director is responsible for enforcing Illinois' laws, including the Carry Ban, and

administering certain regulatory programs, 20 ILCS 2610/2, including the issuance of carry licenses, 430 ILCS 66/25. The Attorney General is responsible for enforcing Illinois' laws, including the Carry Ban. The Attorney General possesses "all the powers associated with that office at common law," which "include the initiation and prosecution of litigation on behalf of the People," a power that "may be exercised concurrently with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions in his county as conferred by statute." *People v. Buffalo Confectionary*, 401 N.E.2d 546, 549 (Ill. 1980). The Attorney General also is required to consult with and advise State's Attorneys in the performance of their duties and has the authority to assist State's Attorneys in criminal prosecutions 15 ILCS 205/4. The County Defendants have independent authority to enforce the Carry Ban. The State's Attorneys have a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 55 ILCS 5/3-9005. The Sheriffs likewise have a "duty to prevent crime and keep the peace and order in [their] count[ies], and [have] the authority to arrest offenders and bring them to the proper court." *Gibbs v. Madison Cnty. Sheriff's Dep't*, 326 Ill. App. 3d 473, 478 (2001).

The Individual Plaintiffs (Meyer, Nalley, and Davis) are all responsible, law-abiding citizens between 18 and 21 years old, residents of Illinois, who, if it were not for their age, would be free to exercise their Second Amendment right to carry a handgun in public under Illinois' licensing system. Compl. ¶¶ 45, 47, 55, 58, 60, 68, 71, 73, 81, Doc. 1 (May 27, 2021). Meyer works full time in construction, including electrical, plumbing and HVAC work, and frequently drives alone to and from job sites in a work truck filled with valuable tools and equipment. Compl. ¶¶ 46, 49. He has a valid FOID card and is acquainted with the proper and safe handling, use and storage of handguns. Compl. ¶ 50. If it were not for the Carry Ban, he would lawfully acquire a Smith and

3

Wesson Shield handgun through an interfamilial gift and carry it in public for self-defense and other lawful purposes. Compl. ¶¶ 51, 56. Nalley is a full-time student and member of an ROTC program. Compl. ¶ 59. He is concerned with the growing trend of church shootings and active shooter situations in areas where large numbers of people congregate. Compl. ¶ 62. He has a valid FOID card and is acquainted with the proper and safe handling, use and storage of handguns. Compl. ¶¶ 63. If it were not for the Carry Ban, he would lawfully acquire a Smith and Wesson M&P handgun through a private sale and carry it in public for self-defense and other lawful purposes. Compl. ¶¶ 64, 69. Davis is an accomplished competitive shooter who has twice been the top-ranked female trap and skeet shooter in Illinois. Compl. ¶ 72. Davis has been enrolled in local community college classes in the evenings that sometimes ended as late as 10 p.m. and required her to walk alone to her vehicle after dark. Compl. ¶ 75. She has applied for a FOID and is acquainted with the proper and safe handling, use, and storage of handguns. Compl. ¶ 76. Upon issuance of her FOID card, she will lawfully acquire a Beretta Pico handgun through interfamilial gift. Compl. ¶ 77. She would carry it in public for self-defense and other lawful purposes if it were not for the Carry Ban. Compl. ¶¶ 77, 82.

The Associational Plaintiffs (Second Amendment Foundation (SAF), Illinois State Rifle Association (ISRA), and Firearms Policy Coalition (FPC)) are all nonprofit organizations dedicated to promoting the right to keep and bear arms. Compl. ¶¶ 24–26. All have members between 18 and 21 years old, including the Individual Plaintiffs, and all bring this action on behalf of their 18-to-20-year-old members in Illinois who have been adversely and directly harmed by Defendants' enforcement of the Carry Ban. Compl. ¶¶ 24–26.

Plaintiffs initiated this action on May 27, 2021. *See* Compl. at 28. All Defendants moved to dismiss. *See* Kendall Cnty. and Fayette Cnty. Defs.' Mot. to Dismiss Pursuant to Rules 12(b)(1)

4

& 12(b)(6), Doc 47 (July 29, 2021) ("Kendall Br."); St. Clair Cnty. Defs.' Mot. to Dismiss Pursuant to Rules 12(b)(1) & 12(b)(6), Doc. 52 (Aug. 5, 2021) ("St. Clair Br."); Mot. to Dismiss of Ill. Att'y Gen. Kwame Raoul and Ill. State Police Dir. Brendan Kelly, Doc. 53 (Aug. 12, 2021) ("State Br."). Plaintiffs now respond in opposition to those motions.

## Argument

### I. Plaintiffs' Motions to Dismiss Should Be Denied as to Official Capacity Claims.[1]

In reviewing Defendants' motions to dismiss, the court must "accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Burger v. Cnty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019).

#### A. Plaintiffs' Have Standing and Their Claims Are Ripe.

The County Defendants argue that Plaintiffs do not have standing and that their claims have not ripened. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up). "In evaluating ripeness, [courts] consider 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The Seventh Circuit has noted that, especially in suits for declaratory relief, "the distinctions" between "ripeness, mootness, standing, and even abstention . . . are not always crisp." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 n.1 (7th Cir. 2019). Whether phrased as an argument that the asserted injury is not "imminent" (standing) or that it "rests upon contingent

---

[1] Plaintiffs agree to dismiss all individual capacity claims against Defendants and so only respond to arguments raised in opposition to the official capacity claims.

5

events" (ripeness), the County Defendants make essentially the same arguments for both ripeness and standing, so "the Article III standing and ripeness issues in this case boil down to the same question." *Susan B. Anthony List*, 573 U.S. at 157–58.

For this pre-enforcement challenge to the Carry Ban, all that Plaintiffs must allege is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quotation marks omitted). That requirement is certainly met here. All three Individual Plaintiffs have alleged a present desire to carry handguns in public for lawful purposes. Meyer and Nalley have FOID cards and Davis has applied for one and is waiting for it to issue. All three have stated that they would promptly obtain handguns and apply for a carry license if the Carry Ban did not prevent them from obtaining one because of their age.

The County Defendants argue that this is not enough to show a "credible[] . . . threat of prosecution," because Plaintiffs have not "plead a history of enforcement" of the Carry Ban. Kendall Br. 13–14 (citing *ACLU v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012); *see also* St. Clair Br. 9. The Seventh Circuit has been clear that Plaintiffs do not need to show any special threat of prosecution to bring a pre-enforcement challenge, *see Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003), because "[t]he existence of a statute implies a threat to prosecute," *Alvarez*, 679 F.3d at 591 (quotation marks omitted). Plaintiffs have asserted a desire to "engage in a course of conduct" that they are entitled to engage in under the Second Amendment but that would run afoul of a statute. All three plaintiffs have abstained from carrying handguns in public out of fear of arrest and prosecution. Compl. ¶¶ 57, 70, 83. And the reason Plaintiffs do not own handgun is because they cannot carry them for self-defense as they wish without exposing themselves to prosecution.

Nothing more is required to establish a concrete injury for standing purposes and to make this case ripe for adjudication.

The County Defendants cite several cases to argue that these fears of arrest and prosecution are "contingent"[2] or merely reflect a possible future controversy, but the cases on which they rely demonstrate that Plaintiffs face concrete and imminent harms. In *Rogers v. Hacker*, No. 20-cv-1116, 2021 WL 2711745 (S.D. Ill. July 1, 2021), this court concluded that Rogers's claim for injunctive relief to prevent Hacker from taking too long to issue his Concealed Carry permit should be dismissed because he lacked standing and his claims were unripe, noting that although nothing legally prevented him from doing so, he

> ha[d] not yet applied for his Concealed Carry permit. While he allege[d] that he will apply at some time in the future, he may or may not follow through with that plan. And any delay in processing of his application, should he decide to apply, may or may not occur.

*Id.* at *3. But Plaintiffs have alleged that, if the Carry Ban were not in place (and in Davis's case, as soon as she gets her FOID card), they would acquire handguns and apply for a license and thereafter would carry handguns in public. Compl. ¶¶ 51, 64, 77 In the meantime, there is no "may or may not" about the fate of any application they might make or the legality of carrying a handgun before receiving a license—it is a legal certainty that an application would be denied and carriage would be clearly unlawful without a license.[3] *Construction and General Laborers' Union No. 330*

---

[2] There is nothing "contingent" about Plaintiffs suing the law enforcement officers and prosecutors in their respective counties. *See* St. Clair Br. 9. While a prosecution for illegal carriage could occur anywhere in Illinois as long as the Carry Ban is in effect, the Plaintiffs have alleged a desire to carry handguns for self-defense as they go about daily life, in the places where they live. It is not "speculative" to assert that, if Nalley, for instance, primarily intends to carry a handgun on him in his home county of St. Clair, he faces a risk of enforcement from St. Clair County officials.

[3] Furthermore, even if Plaintiffs had, somehow, acquired carry licenses, it is independently illegal for anyone under 21 to carry a handgun in public, *see* 720 ILCS 5/24-1.6(a)(3)(I). Thus, the County Defendants are wrong to suggest (and in fact contradict each other in suggesting) that

*v. Town of Grand Chute*, 915 F.3d 1120 (7th Cir. 2019) and *Brandt v. Village of Winnetka, Ill.*, 612 F.3d 647 (7th Cir. 2010), are even further afield from the present controversy. In both cases, whether the plaintiffs' rights had been or would be violated was contingent on facts that simply could not be known without the plaintiffs taking further actions to violate the complained-of Grand Chute 2015 Sign Ordinance and the Winnetka 2000 Special Events Ordinance, respectively. *Constr. & Gen. Laborers' Union*, 915 F.3d at 1127; *Brandt*, 612 F.3d at 650. Indeed, in *Construction and General Laborers' Union*, application of the challenged ordinance was "speculative," with the answers to key questions "elud[ing] [the court] entirely." 915 F.3d at 1127. And in *Brandt*, the case was simply "too abstract to warrant constitutional adjudication." 612 F.3d at 650. But here, if Plaintiffs violate the Carry Ban "enforcement [is] highly probable and the effects much easier to anticipate than those of Winnetka's ordinance" (or the Grand Chute ordinance, for that matter). *Id*.

Well-established law demonstrates that Plaintiffs are not required, to ripen their claims or perfect their standing, to acquire a handgun or apply for a carry license when doing so would indisputably be futile and get them no closer to being able to legally carry in public, as they claim to be their Second Amendment right. *See Pime v. Loyola Univ. of Chi.*, 803 F.2d 351, (7th Cir. 1986) ("Even though appellant did not formally apply for a tenure track position no standing question arises. One does not have to apply for a job when it is obvious that it would be a futile act."); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977); *Leskovisek v. Ill. Dep't of Transp.*, 305 F. Supp. 3d 925, 932 (C.D. Ill. 2018) ("[A] person nonetheless has

---

Plaintiffs' claims against them rely on a chain of events that include them either failing to acquire or in fact acquiring a carry license, *see* Kendall Br. 12–13; St. Clair Br. 9–10. Plaintiffs would be subject to arrest and prosecution if just two things occurred: (1) they acquired handguns and (2) carried them.

standing if he can demonstrate that applying for or requesting [a] benefit would have been futile."); *Revelis v. Napolitano*, 844 F. Supp.2d 915, 923 (N.D. Ill. 2012). Defendants' insistence that Plaintiffs must carry a gun illegally or at least acquire a handgun and apply for a license to carry it before bringing suit "misapprehends the nature of the injury, which is the denial of equal access to [public carriage of handguns] not the expected denial of the [permit application]." *Revelis*, 844 F. Supp.2d at 922. That injury is not speculative or dependent on future actions—it is ongoing and fully ripe.

### B. The Sheriffs and States Attorneys Are Proper Parties Even Though They Do Not Grant Concealed Carry Permits

The County Defendants make the related argument that because the "gravamen" of Plaintiffs claims is that they cannot receive a carry license, and none of the County Defendants have authority to issue licenses, they are not proper parties. Kendall Br. 11; *see* St. Clair Br. 6–7. But this misstates Plaintiffs' claim. Plaintiffs want to carry firearms in public for lawful purposes, as they are entitled to do under the Second Amendment. Access to a carry license is a key part of that claim, but it is only part. Illinois law makes it illegal, independent of the requirement for a license, for anyone under 21 to carry a handgun in public. 720 ILCS 5/24-1.6(a)(3)(I). That is, if Plaintiffs were afforded relief against the Director and acquired carry licenses, they still could not lawfully carry a firearm in public under Illinois law. The Court must also separately declare 720 ILCS 5/24-1.6(a)(3)(I) unconstitutional and enjoin all Defendants from enforcing it. As such, the County Defendants are proper parties.

### C. The Associational Plaintiffs Also Have Standing.

The State Defendants do not challenge the standing of Individual Plaintiffs or even Associational Plaintiffs' standing to bring claims on behalf of their members. They do challenge the standing of Associational Plaintiffs in their own right, State Br. 15–16, but the court need not

9

address this argument, because "[w]here at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not." *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011).

### D. Plaintiffs' Official Capacity Claims Are Not Barred by the 11th Amendment.

The Attorney General and the Fayette and Kendall County State's Attorneys allege that claims against them are barred by the Eleventh Amendment. Kendall Br. 9; State Br. 10. The Eleventh Amendment generally bars suits against state officials in their official capacities, subject to a key exception: "The Supreme Court has authorized suits against state officials in their official capacities when plaintiffs seek to enjoin allegedly unconstitutional[] statutes," so long as the official has " 'some connection with the enforcement of the act.' " *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 644–45 (7th Cir. 2006) (quoting *Ex parte Young*, 209 U.S. at 157).

The Attorney General argues that this exception does not apply to him because he "has no *specific* statutory enforcement role relating to the issuance of concealed carry licenses to those under 21, or the initiation of prosecution for violation of the [Carry Ban]." State Br. 13. But the Seventh Circuit rejected essentially the same argument the Attorney General makes here in *Entertainment Software Ass'n*, reasoning that the concurrent authority the Attorney General possesses to enforce criminal statutes satisfies the requirements of *Ex parte Young*. 469 F.3d at 645. That holding mandates rejection of the Attorney General's Eleventh Amendment argument here.

To support this argument, the Attorney General relies primarily on *Sherman v. Community Consolidated School District 21 of Wheeling Township*, 980 F.2d 437 (7th Cir. 1992) and *Heabler v. Madigan*, No. 12 C 6193, 2013 WL 5405679 (N.D. Ill. Sept. 24, 2013), but both cases are distinguishable from *Entertainment Software Ass'n* in key respects. In *Sherman*, the Seventh Circuit concluded the Attorney General was not amenable to suit under *Ex parte Young* because

10

the challenged statute mandating recital of the Pledge of Allegiance failed entirely to "prescribe a penalty." *Sherman*, 980 F.2d at 441. Indeed, because there was no penalty *at all* for a violation of the statute, likely *no* prosecutor could be sued in his official capacity to challenge the statute. *Id.* The court in *Entertainment Software Ass'n* accordingly held that the Attorney General's reliance on *Sherman*—essentially the same reliance the Attorney General places on the case here—was "misplaced." 469 F.3d at 645. *Heabler*, likewise did not involve a statute whose violation could result in a criminal prosecution. The law at issue regulated private detectives, and violations were enforced through disciplinary actions, with enforcement authority "expressly vest[ed] . . . in the [Illinois Department of Financial and Professional Regulation] and the Secretary of Financial and Professional Regulation, not the Attorney General." 2013 WL 5405679, at *4. Citing *Entertainment Software Ass'n*, the court recognized that if the penalty "provisions implicated Attorney General Madigan's concurrent power to enforce Illinois law . . . there might be an argument that the *Ex parte Young* exception applies," but held that "*Sherman* governs here, because the state's Attorney General has no authority to enforce the penalty provisions of the" challenged statute. *Id.* at *4. Here, 720 ILCS 5/24-1.6(a)(3)(A-5), (C) & (I) prohibit carriage of a handgun by unlicensed individuals and any individuals under 21 years old. Unlike the statute in *Sherman*, violations of the statute may be prosecuted, *id.* at 5/24-1.6(e), and unlike the statute in *Heabler*, enforcement is not specifically delegated to someone other than the Attorney General. Therefore, the Attorney General is the "legal officer of the State," ILL. CONST. art. V, § 15, a role that carries with it the power to "initiat[e] and prosecut[e] . . . litigation on behalf of the People," *People v. Buffalo Confectionery Co.*, 401 N.E.2d 546, 549 (Ill. 1980); *see also People v. Robins*, 338 N.E.2d 222, 225–26 (Ill. App. Ct. 1975). Because the Attorney General has general enforcement authority, concurrent with the State's Attorneys, to prosecute violations of 720 ILCS

11

5/24-1.6(a)(3)(A-5), (C), & (I), which Plaintiffs would violate if they carried handguns as their constitutional rights empower them to do, that "satisfies the 'some connection' requirement of *Ex parte Young*." *Ent. Software Ass'n*, 469 F.3d at 645.[4]

The State's Attorneys do not contest that they have "some connection" to the enforcement of the Carry Ban, nor could they. Under 55 ILCS 5/3-6021, 9005(a)(1), all Illinois State's Attorneys have a "duty" to "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, . . . in which the people of the State or county may be concerned," and violations of 720 ILCS 5/24-1.6 certainly qualify. Rather, the State's Attorneys argue that claims against them are duplicative, since the official capacity claims against the Attorney General and the State's Attorneys are both claims against the state. Kendall Br. 9–10; St. Clair Br. 12. But the State's Attorneys are independently elected and have independent prosecution authority that exists alongside the Attorney General's. In fact, their authority is in some ways greater, given that "the Attorney General lacks the power to take exclusive charge of the prosecution of those cases over which the State's Attorney shares authority." *Buffalo Confectionery*, 401 N.E.2d at 549. And even if the claims were duplicative, the State's Attorneys cite no case and offer no reason why, if they have at least as much power to initiate a prosecution as the Attorney General, Plaintiffs should be forced to sue him instead of them. In any event, both parties are necessary to afford Plaintiffs complete relief. To fully protect their rights, Plaintiffs must enjoin not just the Attorney General, but also the State's Attorneys, from enforcing the Carry Ban against them.

---

[4] The Attorney General also argues that, at least he must be immune from claims for nominal damages in his official capacity. Plaintiffs only sought nominal damages based on their individual capacity claims, which they have agreed to dismiss, so the Court need not address this argument.

### E. Plaintiffs Do Not Need to Plead the Elements of a *Monell* Claim Against the Kendall and Fayette County Sheriffs.

The Sheriffs (and the St. Clair State's Attorney) fault Plaintiffs for failing to state a claim under *Monell*. Kendall Br. 10–11; St. Clair Br. 13. *Monell* requires that any complaint bringing claims under 42 U.S.C. § 1983 against a municipality must plead "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). But "the issue is not whether the Sheriff[s are] subject to *Monell* liability; the issue is whether [a] Sheriff (although a county official) is acting as a state official when he performs his duties." *Hope v. Comm'r of Ind. Dep't of Corr.*, No. 1:16-cv-02865, 2018 WL 11252440, at *3 (S.D. Ind. June 5, 2018).

In Illinois, a Sheriff is a county officer. ILL. CONST. art. VII, § 4(c). The Seventh Circuit has nevertheless held that in some circumstances, like when "they act to enforce orders issued by state courts," these county officers "act as an arm of the state" and may be sued as agents of the state. *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992); *see also Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990).

In *Scott*, it was important to the court's conclusion that Illinois county sheriffs were state agents that the court orders they were enforcing were authorized by Illinois statute. *Id.*, 975 F.2d 366. This case is similar. A sheriff in Illinois is tasked with "prevent[ing] crime and keep[ing] the peace and order in his county, and he has the authority to arrest offenders and bring them to the proper court." *Gibbs v. Madison Cnty. Sheriff's Dep't*, 760 N.E.2d 1049, 1053 (Ill. App. 2001); *see* 55 ILCS 5/3-6021. Just like in *Scott*, the Sheriffs have a statutory duty to enforce the Carry Ban, which is itself based in Illinois statute, and to arrest offenders who carry firearms in spite of that Ban. *Scott*, 975 F.2d at 371. In enforcing these Illinois statutes, the Sheriffs are every bit as much state officials as they are when they "execut[e] Writs of Assistance and other state court

13

orders," *id.* at 371, or "when executing court orders for possession," *Alencastro v. Sheahan*, 698 N.E.2d 1095, 1099 (Ill. App. 1998). Indeed, while the Sheriffs argue that the laws being challenged here are not *county* policies, that fact *confirms* that they properly are being sued as State actors. "A county official pursues his duties as a state agent when he is enforcing state law or policy." *Echols*, 909 F.2d at 801. That is precisely what the Sheriffs are being sued for doing here. Therefore, they are subject to suit under § 1983 without adhering to the requirements of *Monell*.

The St. Clair State's Attorney is similarly a state official. The Illinois Supreme Court has held that "State's Attorneys are State officers under the language of the constitution," *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1271–72 (Ill. 1990), and that interpretation is binding on this court, *Houston v. Cook Cnty.*, 758 F. Supp. 1225, 1226 (N.D. Ill. 1990). The St. Clair State's attorney must be treated as a state official. *Manos v. Caira*, 162 F. Supp. 2d 979, 987 (N.D. Ill. 2001).

## Conclusion

For the foregoing reasons, the Court should deny Defendants' motions to dismiss as to all official capacity claims.

Dated: September 13, 2021

Christian D. Ambler
STONE & JOHNSON, CHTD.
111 West Washington Street
Suite 1800
Chicago, Illinois 60602
(312) 332-5656
cambler@stonejohnsonlaw.com

David Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, Illinois 60187
(630) 452-4547
disagle@sigalelaw.com

Respectfully Submitted,

s/David H. Thompson
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

14

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MEYER, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CIVIL ACTION NO. 3:21-cv-00518-DWD ) |
| KWAME RAOUL, et al., | ) ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2021, I caused the foregoing to be filed using the CM/ECF system, which will send notification of such filing to counsel of record, who are registered CM/ECF participants.

Christian D. Ambler
STONE & JOHNSON, CHTD.
111 West Washington Street
Suite 1800
Chicago, Illinois 60602
(312) 332-5656
cambler@stonejohnsonlaw.com

David Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, Illinois 60187
(630) 452-4547
disagle@sigalelaw.com

s/David H. Thompson
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*