**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DAVID MEYER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. 3:21-cv- |
| v. | ) | 00518-DWD |
| | ) | |
| KWAME RAOUL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**<u>Introduction</u>**

The Second Amendment "right to possess and carry weapons in case of confrontation" presumptively "belongs to all Americans," not "an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580, 581, 592 (2008). Plaintiffs David Meyer, Mitchell Nalley, and Eva Davis ("the Individual Plaintiffs") are 18-to-20-year-old adult Americans. They may vote, enter contracts, and marry. They are eligible to serve in the military. And yet, under Illinois law, they are forbidden from acquiring a firearms carry license and carrying a handgun on their person in public places.

That the Second Amendment protects the right to carry a handgun in public is beyond debate in this litigation. The Seventh Circuit has confirmed the Second Amendment protects the "right to carry a loaded gun outside the home," indeed that conclusion is "compel[led]" by the Supreme Court's decisions in *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Moore v. Madigan*, 702 F.3d 933, 936, 942 (7th Cir. 2012). The Seventh Circuit accordingly ordered the entry of final judgment in plaintiffs' favor and held unconstitutional Illinois's prior general ban on law-abiding adults carrying firearms in public. In response to *Moore*, Illinois enacted its current "shall-issue" carry regime, providing a pathway for citizens 21 or older to apply

1

for and receive a concealed carry license. *See* Greg McCune, *Illinois is last state to allow concealed carry of guns*, REUTERS (July 9, 2013), https://reut.rs/3loDjW9. This licensing regime is the only option currently open to Illinois residents who want to exercise their Second Amendment rights to carry firearms outside the home.

Yet the situation of 18-to-20-year-old citizens of Illinois is the same today as it was before *Moore*. This category of adults remains categorically prohibited from exercising the right to carry arms for self-defense outside the home, as Illinois has entirely barred 18-to-20-year-olds from this lone avenue for exercising their rights (through an interrelated set of laws discussed below as the "Carry Ban"). This is so even though at the time the Second Amendment was adopted, 18-year-old men were universally understood to be members of the militia not just allowed but *required* to possess firearms. And "the text and structure of the Second Amendment, along with its place within the Constitution as a whole, reveal that it protects 18- to 20-year-olds." *Hirschfeld v. BATFE*, 5 F.4th 407, 421 (4th Cir. 2021). Once it is determined that 18-to-20-year-olds have Second Amendment rights, under *Moore* it necessarily follows that the Carry Ban is unconstitutional. Indeed, the Seventh Circuit ordered entry of final judgment in *Moore* even though the case was on review of orders granting motions to dismiss because there was no set of facts that could possibly justify Illinois's ban either at summary judgment or at trial. *See* 702 F.3d at 942.

Plaintiffs desire to exercise their constitutional rights but would face prosecution if they did so. The "very existence" of the Carry Ban "stands as a fixed" and ongoing "harm" to the Second Amendment rights of every 18-to-20-year-old Illinoisan. *Ezell v. City of Chicago* ("*Ezell I*"), 651 F.3d 684, 698–99 (7th Cir. 2011). While all deprivations of a fundamental right call out for court intervention, the harm of the Carry Ban is especially stark with respect to Plaintiff Eva Davis, who as an 18-to-20-year-old woman poses far less of a threat of gun violence than many of

2

the men that Illinois allows to carry and has a demonstrably greater need for a firearm for self-defense than those men do.

Plaintiffs therefore respectfully request that the Court grant summary judgment to them on Count I of the Complaint and declare the Carry Ban facially unconstitutional and enjoin Defendants from enforcing it. In the alternative, Plaintiffs respectfully request that the Court grant summary judgment on Count II of the Complaint and declare the Carry Ban unconstitutional as applied to 18-to-20-year-old women such as Davis and enjoin its enforcement accordingly.

**Background**

Plaintiffs challenge the constitutionality of Illinois statutes that bar 18-to-20-year-olds from exercising their right to keep and bear arms for the lawful purpose of self-defense. In Illinois, it is illegal for ordinary citizens to carry a handgun in public for the purpose of self-defense unless they first acquire a carry license. 720 ILCS 5/24-1(a)(4)(iv), (a)(10)(iv). To qualify for a license, however, an applicant must be at least 21 years old. 430 ILCS 66/25(1). And even if an individual under 21 *could* get a license, carrying a handgun would still be criminalized under 720 ILCS 5/24-1.6.

These provisions (collectively, "the Carry Ban") are carried out by the Defendants in this action. The Director is responsible for enforcing Illinois's laws, including the Carry Ban, and implementing certain regulatory programs, 20 ILCS 2610/2, including the issuance of carry licenses, 430 ILCS 66/25. The Attorney General is responsible for enforcing Illinois's laws, including the Carry Ban. The Attorney General possesses "all the powers associated with that office at common law," which "include the initiation and prosecution of litigation on behalf of the People," a power that "may be exercised concurrently with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions in his county as conferred by

statute." *People v. Buffalo Confectionary Co.*, 401 N.E.2d 546, 549 (Ill. 1980). The Attorney General also is required to consult with and advise State's Attorneys in the performance of their duties and has the authority to assist State's Attorneys in criminal prosecutions. 15 ILCS 205/4. The County Defendants have independent authority to enforce the Carry Ban. The State's Attorneys have a duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for the county, in which the people of the State or county may be concerned." 55 ILCS 5/3-9005(a)(1). The Sheriffs likewise have a "duty to prevent crime and keep the peace and order in [their] count[ies], and [have] the authority to arrest offenders and bring them to the proper court." *Gibbs v. Madison Cnty. Sheriff's Dep't*, 326 Ill. App. 3d 473, 478 (2001).

The Individual Plaintiffs (Meyer, Nalley, and Davis) are all responsible, law-abiding 18-to-20-year-old citizens, residents of Illinois, who, if it were not for their age, would be free to exercise their Second Amendment right to carry a handgun in public under Illinois's licensing system. Decl. of David Meyer ¶¶ 1, 4–5 (Sept. 10, 2021) ("Meyer Decl."); Decl. of Mitchell Nalley ¶¶ 1, 4–5 (Sept. 11, 2021) ("Nalley Decl."); Decl. of Eva Davis ¶¶ 1, 4–5 (Sept. 12, 2021) ("Davis Decl."). Meyer works full time in construction, including electrical, plumbing and HVAC work, and frequently drives alone to and from job sites in a work truck filled with valuable tools and equipment. Meyer Decl. ¶ 7. He has a valid FOID card and is acquainted with the proper and safe handling, use, and storage of handguns. Meyer Decl. ¶¶ 3, 5. If it were not for the Carry Ban, he would lawfully acquire a Smith and Wesson Shield handgun through an interfamilial gift and carry it in public for self-defense and other lawful purposes. Meyer Decl. ¶¶ 5–7. Nalley is a full-time student and member of an ROTC program. Nalley Decl. ¶ 7. He is concerned with the number of church shootings and active shooter situations in areas where large numbers of people congregate.

4

Nalley Decl. ¶ 8. He has a valid FOID card and is acquainted with the proper and safe handling, use, and storage of handguns. Nalley Decl. ¶¶ 3, 5. If it were not for the Carry Ban, he would lawfully acquire a Smith and Wesson M&P handgun through a private sale and carry it in public for self-defense and other lawful purposes. Nalley Decl. ¶¶ 6, 8. Davis is an accomplished competitive shooter who has been shooting firearms since she was 12 and has twice been the top-ranked female trap and skeet shooter in Illinois. Davis Decl. ¶ 7. Davis is a full-time student enrolled in local community college courses that, in recent semesters, have concluded as late as 10 p.m. and that require her to walk alone to her vehicle after dark. Davis Decl. ¶ 8. She applied for a FOID card on March 25, 2021 and is acquainted with the proper and safe handling, use, and storage of handguns. Davis Decl. ¶¶ 3, 5. Upon issuance of her FOID card, she will lawfully acquire a Beretta Pico handgun through interfamilial gift and she would carry it in public for self-defense and other lawful purposes if it were not for the Carry Ban. Davis Decl. ¶¶ 6, 8.

The Associational Plaintiffs (Second Amendment Foundation, Illinois State Rifle Association, and Firearms Policy Coalition) are all nonprofit organizations dedicated to promoting the right to keep and bear arms. Decl. of Brandon Combs Decl. ¶ 3 (Sept. 8, 2021) ("Combs Decl."); Decl. of Alan Gottlieb Decl. ¶ 3 (Sept. 8, 2021) ("Gottlieb Decl."); Decl. of Richard Pearson Decl. ¶ 3 (Sept. 9, 2021) ("Pearson Decl."). All have 18-to-20-year-old members, including the Individual Plaintiffs, and all bring this action on behalf of their 18-to-20-year-old members in Illinois who have been adversely and directly harmed by Defendants' enforcement of the Carry Ban. Combs Decl. ¶¶ 4–6; Gottlieb Decl. ¶¶ 4-6; Pearson Decl. ¶¶ 4–6.

Plaintiffs initiated this action on May 27, 2021. *See* Compl., Doc. 1. All Defendants moved to dismiss. *See* Kendall Cnty. and Fayette County Defs.' Mot. to Dismiss Pursuant to Rules 12(b)(1) & 12(b)(6), Doc 47 (July 29, 2021); St. Clair Cnty. Defs.' Mot. to Dismiss Pursuant to

Rules 12(b)(1) & 12(b)(6), Doc. 52 (Aug. 5, 2021); Mot. to Dismiss of Ill. Att'y Gen. Kwame Raoul and Ill. State Police Dir. Brendan Kelly, Doc. 53 (Aug. 12, 2021) ("State Br."). Plaintiffs opposed those motions on September 13, 2021. *See* Br. in Opp'n to Defs.' Mots. to Dismiss, Doc 55. Plaintiffs now move for summary judgment on all claims.

### Argument

### I.    Plaintiffs Are Entitled to Summary Judgment.

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Marnocha v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quotations omitted).

"[R]esolving Second Amendment cases usually entails two inquiries. The threshold question is whether the regulated activity falls within the scope of the Second Amendment. This is a textual and historical inquiry," and the government bears the burden of showing the activity is not protected. *Ezell v. City of Chicago* ("*Ezell II*"), 846 F.3d 888, 892 (7th Cir. 2017) (internal citation omitted). If a regulated activity is not categorically outside the scope of the Second Amendment, "then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights," and severe burdens on protected activities cannot survive without "a very strong public-interest justification and a close means-end fit." *Id.* Some burdens, such as a flat ban on carrying firearms outside the home by individuals possessing Second Amendment rights, are so substantial as to be categorically unconstitutional. *See Moore*, 702 F.3d at 941.

### A.  All Citizens Over Eighteen Have Full Second Amendment Rights.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "[O]n the basis of both text and history," the amendment confers "an individual right to

6

keep and bear arms," *Heller*, 554 U.S. at 595, that is "among those fundamental rights necessary to our system of ordered liberty." *McDonald*, 561 U.S. at 778.

The Seventh Circuit has held that the Second Amendment encompasses the "right to carry a loaded gun outside the home." *Moore*, 702 F.3d at 936. As a result, the only question regarding the "scope" of the Second Amendment that this court has to decide is whether it applies equally to individuals 18-to-20-years-old.[1] "This is a textual and historical inquiry," *Ezell II*, 846 F.3d at 892, and "the text and structure of the Second Amendment, along with its place within the Constitution as a whole, reveal that it protects 18-to-20-year-olds," *Hirschfeld*, 5 F.4th at 421.

Regarding the text, the Amendment describes a right of "the people" to bear arms and makes no mention of age. *See id.* (contrasting the Second Amendment with provisions of the Constitution that set age requirements). The phrase "the people" is used in two other amendments—the First and the Fourth, *see Heller*, 554 U.S. at 579—and both of those amendments also apply to all people regardless of age, *Hirschfeld*, 5 F.4th at 422 (collecting cases). And every other constitutional right—even those rights that do not apply equally regardless of age—applies at least to those 18 or older. *Id.* at 423 (discussing jury trial right and unenumerated

---

[1] The State Defendants cite several cases in support of their qualified immunity argument in their motion to dismiss for the proposition that "the overwhelming weight of authority from federal courts across the nation" supports denying Plaintiffs relief. State Br. 8. Several of these cases are cited for the proposition that the Second Amendment does not "confer any constitutional right to carry concealed firearms." *Id.* (citing *Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016); *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013); *Powell v. Tompkins*, 926 F. Supp. 2d 367, 388 n.18 (D. Mass. 2013)). But this is not a case about concealed carry—it is a case about the right to carry *at all*. The Seventh Circuit has concluded that the Second Amendment *at least* means that states must offer law abiding individuals *some* manner of carrying a loaded gun outside the home. *See Moore*, 702 F.3d at 938 ("[A] state may be able to require 'open carry'— that is, require persons who carry a gun in public to carry it in plain view rather than concealed."). In Illinois, the only lawful method is through a concealed carry licensing system enacted in response to *Moore*. *See* 720 ILCS 5/24-1.6(a)(3)(A-5) & (B-5). *Moore* forecloses any argument that the Second Amendment does not at least confer the right to participate in Illinois's carry licensing system.

rights of marriage and sex).

History reinforces the text and proves 18-year-olds were included within the Second Amendment's protections. The prefatory clause—"A well regulated Militia, being necessary to the security of a free State"—"announces the purpose for which the right was codified: to prevent elimination of the militia." *Heller* 554 U.S. at 595, 599. Therefore, although the right is not coextensive with the duty to serve in the militia (it is unquestionably broader and includes, for example, women), "[l]ogic demands that there be a link between the stated purpose and the command." *Id.* at 577. The "militia" referenced in the prefatory clause was not an organized army but rather the collection of "all able-bodied men." *Id.* at 596. And "[n]ear the time of ratification, the federal government and every state required 18-year-old men to be part of the militia and bring their own arms." *Hirschfeld*, 5 F.4th at 424. The first federal act addressing the composition of the militia was enacted in 1792, just a year after the passage of the Second Amendment. That statute called for enrollment of "each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years and under the age of forty-five years," Act of May 8, 1792, ch. 33 § 1, 1 Stat. 271, 271. State militia laws followed suit. Pre-ratification most states began enlistment at 16, and after the federal law set the age at 18, "every state also set their militia age at 18." *Hirschfeld*, 5 F.4th at 428–29; *see also id.* at 453–57 (App'x 1). "Like the federal Militia Act, these state militia laws required enrolled citizens, including 18-year-olds, to bring their own firearms and ammunition either explicitly or as a general background principle." *Id.* at 429. In short, "the historical basis for those 18 and older having Second Amendment rights rests on firm ground." *Id.* at 440–41.

The State Defendants argued, in the portion of their motion to dismiss discussing qualified immunity, that "the Seventh Circuit has come close to ruling that" 18-to-20-year-olds do not have

full Second Amendment rights. State Br. 7. That is not so. The State Defendants rely on *Horsely v. Trame*, 808 F.3d 1126, 1131 (7th Cir. 2015), a case in which the Seventh Circuit specifically declined to determine whether 18-to-20-year-olds are covered by the Second Amendment. The Seventh Circuit could avoid the issue because, it said, the case did not involve a categorical ban on those under 21 acquiring firearms and so it skipped the first step in the analysis and proceeded to analyze whether the regulation satisfied the second, tiers-of-scrutiny step. *Id. Horsley* thus does not hold that 18-to-20-year-olds have diminished or non-existent Second Amendment rights.

The arguments against Second Amendment rights for 18-to-20-year-olds outlined in *Horsely*, which, it is important to reiterate, are only recitations—the Seventh Circuit relayed the arguments raised by the parties but did not endorse them—are more likely to lead this Court astray than to aid its analysis. The defendants in that case based their argument on the theory that, "[d]uring the founding era, persons under 21 were considered minors or 'infants.' *Id.* at 1130. This argument was also heavily discussed in *National Rifle Association v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204–05 (5th Cir. 2012), and its follow-on case *National Rifle Association v. McCraw*, 719 F.3d 338 (5th Cir. 2013), which also did not hold that 18-to-20-year-olds fell outside the Second Amendment's scope but reasoned in dicta that they "likely" did so. 719 F.3d at 348. *See* State Br. 8 (citing *BATFE* and *McCraw*). The argument runs that because for most of our country's history, until the 1970s, those under 21 were considered "minors," they were not entitled to Second Amendment rights. *Horsely*, 808 F.3d at 1130; *BATFE*, 700 F.3d at 202. But this argument lacks merit.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634–35 As the Seventh Circuit correctly noted in *Horsely*, "[t]he

Constitution does not set forth an age of majority," 808 F.3d at 1130, and the relevant question is not whether, at the Founding, Plaintiffs would have been minors for certain purposes, but whether they would have been considered to have Second Amendment rights. On that question, the text and history of the Second Amendment definitively establish the answer is yes. As Judge Jones noted in her dissent from denial of rehearing in *BATFE*,

> The panel opinion is correct in noting that, during the founding era, the common-law age of majority was twenty-one. . . . But the point remains that those minors were in the militia *and, as such*, they were required to own their own weapons. What is *inconceivable* is any argument that 18- to 20-year olds were not considered, at the time of the founding, to have full rights regarding firearms.

*Nat'l Rifle Ass'n v. BATFE*, 714 F.3d 334, 342 (5th Cir. 2013) (Mem.) (Jones, J. dissental) (emphasis in original).

The State Defendants are wrong to suggest that "the overwhelming weight of authority" is consistent with denying 18-to-20-year-olds Second Amendment rights. The only circuit court case to squarely decide the issue held, after an exhaustive examination of the text and history of the Second Amendment, that the Second Amendment rights of "those 18 and older . . . rests on firm ground." *Hirschfeld*, 5 F.4th at 440. The dicta from Seventh and Fifth Circuit cases relied on by the State Defendants is not binding and is far less persuasive than *Hirschfeld*. This Court should follow that decision.

**B. The Outright Ban on the Exercise of Plaintiffs' Second Amendment Rights Cannot Survive Under Any Level of Scrutiny.**

**1.** Because the Carry Ban restricts Plaintiffs' exercise of their Second Amendment rights, this Court must "inquir[e] into the strength of the Government's justification for restricting or regulating the exercise of Second Amendment rights" by evaluating "the regulatory means the government has chosen and the public-benefits end it seeks to achieve." *Ezell II*, 846 F.3d at 892 (quotation marks omitted).

> The rigor of this means-end review depends on how close the law comes to the core[2] of the Second Amendment right and the severity of the law's burden on the right. Severe burdens on the core right of armed defense require a very strong public-interest justification and a close means-end fit; lesser burdens, and burdens on activity lying closer to the margins of the right, are more easily justified. In all cases the government bears the burden of justifying its law under a heightened standard of scrutiny; rational-basis review does not apply.

*Id.* (citations omitted). In this case, no level of scrutiny is appropriate, because binding precedent forecloses any justification for the law.

In *Moore*, the Seventh Circuit recognized that "[t]he Supreme Court has decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." at 702 F.3d at 942. That means "states must permit law-abiding and mentally healthy persons to carry loaded weapons in public." *Berron v. Ill. Concealed Carry Licensing Rev. Bd.*, 825 F.3d 843, 845 (7th Cir. 2016). That is, the Seventh Circuit has already decided that, as a rule, the Second Amendment protects the right to bear arms in public. And as the D.C. Circuit has explained, "if the Amendment is for law-abiding citizens *as a rule*, then it must secure gun access at least for each *typical* member of that class" measured as "those with common levels of competence and responsibility—and need." *Wrenn v. District of Columbia*, 864 F.3d 650, 665 (D.C. Cir. 2017).

The Carry Ban does not allow typical 18-to-20-year-olds to carry handguns. It acts as a "total ban[] on carrying . . . by ordinarily situated *individuals* covered by the Amendment" that must be subject to the same treatment as any other total ban under *Heller*—invalidation. *Id.* at 666. To put it all together concisely, it is "enough to sink this law under *Heller*" that while the Second

---

[2] Although *Heller* spoke of a "core lawful purpose" and "core protection" of the Second Amendment, *see* 554 U.S. at 630, 634, several courts have inappropriately used this language to narrow the Second Amendment by distinguishing between "core" Second Amendment rights and others that are entitled to less protection. Plaintiffs acknowledge that this Court is bound to apply Seventh Circuit precedent but raises the issue to preserve it for *en banc* or Supreme Court review.

Amendment generally protects "the right of responsible citizens to carry firearms for personal self-defense beyond the home," the Carry Ban "is necessarily a total ban on exercises of that constitutional right for most" 18-to-20-year-olds in Illinois. *Id.* at 667.

Indeed, this result flows directly from Seventh Circuit precedent that this Court is bound to follow. In *Ezell I*, the Seventh Circuit recognized that "broadly prohibitory laws restricting the core Second Amendment right . . . are categorically unconstitutional." 651 F.3d at 703. And it followed up that decision in *Moore* by declaring unconstitutional Illinois's prior carry ban "not based on degrees of scrutiny" but rather categorically. 702 F.3d at 941. It follows that the similarly "broadly prohibitory" ban on public carry by 18-to-20-year-olds likewise is categorically unconstitutional without resort to "degrees of scrutiny" analysis.

**2.** If this Court elects to analyze the Carry Ban under some form of scrutiny, then the severe burden imposed by the ban "require[s] a very strong public-interest justification and a close means-end fit." *Ezell II*, 846 F.3d at 892 (quotation marks omitted). The Ban "is not merely regulatory; it *prohibits* the 'law-abiding, responsible citizens' " of Illinois from carrying handguns for self-defense until they are 21 years old; in other words, it imposes a substantial burden on Plaintiffs' Second Amendment rights. *See Ezell I*, 651 F.3d at 708; *see also Moore*, 702 F.3d at 940. What is more, "both Supreme Court and Seventh Circuit precedent indicate that carrying firearms for self-defense outside the home is a significant Second Amendment right." *Solomon v. Cook Cnty. Bd. of Comm'rs*, 2021 WL 4147167, at *18 (N.D. Ill. Sept. 13, 2021).

**3.** Ultimately the proper degree of heightened scrutiny need not be decided, however, because even under typical intermediate scrutiny, the Ban must still be invalidated.

> In this context intermediate scrutiny requires 'a fit between the legislature's ends and the means chosen to accomplish those ends, . . . a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'

*Ezell II*, 651 F.3d at 708. "The burden of justification is demanding and it rests entirely on the State." *United States v. Virginia*, 518 U.S. 515, 533 (1996). This necessarily involves marshalling significant evidence to justify the restriction. *See Moore*, 702 F.3d at 939–40 (discussing *United States v. Skoien*, 614 F.3d 638, 643–44 (7th Cir. 2010) (en banc)). "While the Constitution may not require a specific method of proof . . . some reference to legislative findings, academic studies, or other empirical data is necessary to support the categorical disarmament of citizens." *Tyler v. Hillsdale Cnty. Sheriff's Dept.*, 837 F.3d 678, 694 (6th Cir. 2016).

 None of the Defendants in this case have yet suggested a putative government interest that could be furthered by the Ban. However, one justification that is frequently asserted, including in several cases cited by the State Defendants, is the "immature[ity]" of individuals under 21. *See, e.g., McCraw*, 719 F.3d at 349; State Br. at 8.

 Assuming, for the sake of argument, that this same rationale (or a similar rationale) will be asserted here, the Ban is simply too broad for that rationale to satisfy intermediate scrutiny. In *Craig v. Boren*, 429 U.S. 190 (1976), applying intermediate scrutiny, the Supreme Court enjoined a law prohibiting the sale of low-alcohol beer to men under 21 (but allowing women 18 and older to buy it). *Id.* at 191. After reviewing statistics showing 18-to-20-year-old males were responsible for a disproportionate number of drunk driving incidents, the court accepted that 2% of males and just 0.18% of females had been arrested for drunk driving but held the law invalid under intermediate scrutiny. *Id.* at 200–02. The Court reasoned, "if maleness is to serve as a proxy for drinking and driving, a correlation of 2% must be considered an unduly tenuous 'fit.' " *Id.* at 201–02.

 The two percent fit in *Craig* is significantly better than what Defendants can offer here. Available data shows that 18-to-20-year-old adults commit *fewer* violent crimes than those who

are 21-to-24-years-old. *See* Off. of Juvenile Justice & Delinquency Programs, *Estimated number of arrests by offense and age group, 2019, Gender: All*, U.S. DEP'T OF JUST. (last visited Sept. 15, 2021) (showing that 18-to-20-year-olds were arrested for 41,250 violent crimes in 2019, compared with 58,850 violent-crime arrests for 21-to-24-year-ods), https://bit.ly/3eOU8Gl. That remains true when considering criminal violence on a per capita basis, with just 0.32% of 18-to-20-years-olds arrested for violent crimes in 2019, compared with 0.34% of individuals 21-to-24-year-old. Off. of Juvenile Justice & Delinquency Programs, *Arrest Rates by offense and age group, Gender: All*, U.S. DEP'T OF JUST. (last visited Sept. 15, 2021), https://bit.ly/3gWR4KP. "[A]n exceedingly small percentage, around 0.3% and definitely less than 1%, of the 13 million young adults [18-to-20-years-old] commit [violent] crimes." *Hirschfeld*, 5 F.4th at 445.[3] "*Craig* explains why such laws would fail when it declared that 'a correlation of 2% must be considered an unduly tenuous fit.' . . . The rights of more than 99% of a group cannot be restricted because a fraction of 1% commit a disproportionate amount of violent crime." *Id.* at 446 (quoting *Craig*, 429 U.S. at 201–02). As such, even if the court considers the Carry Ban under intermediate scrutiny and accepts the proffered government interest from *McCraw* as valid in this case, *Craig* forecloses finding the law is justified by that interest.

The Carry Ban also fails to satisfy intermediate scrutiny for the independent reason that, even if the Defendants could demonstrate that crime by 18-to-20-year-olds is a serious problem warranting government action, there is no evidence that a ban on issuing carry licenses to 18-to-20-year-olds is reasonably connected to that problem. "It is not enough to target guns generally and argue that less access to guns means less crime, as this would justify almost any restriction

---

[3] In fact, as the court in *Hirschfeld* goes on to note, 0.3% likely overstates it, given the statistics about how often violent crime is committed by repeat offenders. *Id.* at 445–46.

and eviscerate the Second Amendment." *Id.* at 447. "Official data from numerous states indicates that shall-issue permit holders are unusually law-abiding compared to the population as a whole and do not commit a significant proportion of violent crimes committed with guns." Michael P. O'Shea, *The Steepness of the Slippery Slope: Second Amendment Litigation in the Lower Federal Courts and What It Has to Do with Background Recordkeeping Legislation*, 46 CONN. L. REV. 1381, 1433 & n.259 (2014); *see also* Philip J. Cook et al., *Gun Control after Heller: Threats & Sideshows from a Social Welfare Perspective*, 56 U.C.L.A. L. REV. 1041, 1082 (2009) ("Based on available empirical data . . . we expect relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home, assuming that some sort of permit system for public carry is allowed to stand."). That should not come as a surprise, given that, as in Illinois, applicants for a permit typically must submit to fingerprinting and a background check before a license can issue. 430 ILCS 66/30(8) & 66/35. The Carry Ban thus only targets a subset of 18-to-20-year-olds likely to be particularly law-abiding—those who would apply for and obtain a carry license— further diminishing an already tenuous connection between age and violent crime that Defendants have proffered as justification for the restriction. *See Solomon*, 2021 WL 4147167, at *19 (faulting government for not "disaggregat[ing] CCL holders from non-CCL holders"). "[A] law that so under-inclusively addresses the government's interest by targeting one of the least problematic [groups responsible for gun violence] raises serious questions about whether the law actually furthers that interest." *Hirschfeld*, 5 F.4th at 450; *see also Craig*, 429 U.S. at 203.

The option of allowing licensed 18-to-20-year-olds to carry also undermines any justification Illinois may have for the Carry Ban because it is a substantially less-restrictive alternative that Illinois could have tried to address concerns over the maturity of 18-to-20-year-olds. Even under intermediate scrutiny, a State cannot justify a flat ban when it has not "seriously

undertook to address the problem with less intrusive tools readily available to it" or, at a minimum, rejected such alternatives for good reason. *See McCullen v. Coakley*, 573 U.S. 464, 494 (2014); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 367 (3d Cir. 2016). That is because in the absence of such tailoring a State impermissibly "burden[s] substantially more [protected conduct] than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486. Illinois cannot make such a showing here, and this is an additional reason why the Carry Ban fails heightened review.

Defendants may argue that *Horsley* supports their intermediate-scrutiny arguments, but it in fact undermines them. In that case, the Seventh Circuit held that Illinois's requirement that 18-to-20-year-old FOID applicants either get parent or guardian sign-off or appeal to the Director of State Police for approval satisfied intermediate scrutiny. After reviewing information about the maturity and behavior of 18-to-20-year-olds, the court concluded that the FOID application procedure "was reasonable" by providing for "an individualized assessment of the applicant's fitness for possession of a firearm"—first by a parent or guardian, "a person likely to be in the best position to make such an evaluation," and failing that by the Director of State Police. *Horsley*, 808 F.3d at 1134. There is no reason why Illinois could not replace the current flat ban on 18-to-20-year-olds carrying firearms with a similarly enhanced application process. While Plaintiffs do not (and need not) concede that such a process would be constitutional, *see Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014), it plainly would not impinge on 18-to-20-year-olds' rights nearly as much as the current flat ban, and there is no reason to think it would be substantially less protective of public safety. To satisfy intermediate scrutiny, a jurisdiction must show that "it seriously undertook to address the problem with less intrusive tools readily available to it," or, at a minimum, "that it considered different methods that other jurisdictions have found effective."

16

*McCullen*, 573 U.S. at 494. Here, Illinois cannot show that the method the State itself has chosen to address the alleged public safety risks of allowing 18-to-20-year-olds to possess firearms would not also address the alleged risks of allowing them to carry those firearms. The Carry Ban therefore necessarily fails even intermediate scrutiny.

### C. Plaintiffs Are Entitled to Summary Judgment on Their As-Applied Challenge Because the Ban Particularly Burdens the Second Amendment Rights of Women.

If the Court concludes the Carry Ban is not facially invalid, it should still conclude that it is invalid as applied to women like Plaintiff Davis. Plaintiffs' as-applied challenge should also lead to a finding of categorical invalidity or, at the very least, application of strict scrutiny. But even under intermediate scrutiny, the Carry Ban cannot be justified to stop 18-to-20-year-old women from carrying handguns because they are exceedingly unlikely to commit violent crime, both absolutely and when compared with men who are allowed to receive licenses. In 2019, for example, only **0.13%** of 18-to-20-year-old women were arrested for a violent crime of any type. *See* Off. Of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019, Gender: Females*, U.S. DEP'T OF JUST. (last visited Sept. 15, 2021), https://bit.ly/3zmorNV. Males 21-to-24, by contrast, were arrested for violent crimes at a rate approximately four times greater (0.51%), and *all* males 25 and over were arrested for violent crimes nearly twice as often (0.23%). *See* Off. Of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019, Gender: Males*, U.S. DEP'T OF JUST. (last visited Sept. 15, 2021), https://bit.ly/3gtPG0i. The distinction is even greater when it comes to homicide, with 18-to-20-year-old females being arrested for murder or nonnegligent homicides at a minuscule rate of **0.0019%**, while 21-to-24-year-old males were arrested for such offenses nearly ten times as often (.018%) and 25-and-over males nearly three times as often (.0053%). *See* Off. Of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019, Gender: Females*, U.S.

DEP'T OF JUST. (last visited Sept. 15, 2021), https://bit.ly/3zmorNV; Off. Of Juvenile Justice & Delinquency Programs, *Arrest rates by offense and age group, 2019, Gender: Males*, U.S. DEP'T OF JUST. (last visited Sept. 15, 2021), https://bit.ly/3gtPG0i.

The inequity of burdening a woman's right to "keep and bear arms for the purpose of self-defense," *McDonald*, 561 U.S. at 750, is all the more glaring given that women are disproportionately *victimized* by crime. In 2016, 68,009 18-to-20-year-old women were victims of violent crime,[4] compared to just 42,358 men in that group. Off. of Juvenile Justice & Delinquency Programs, *Easy Access to NIBRS Victims, 2016: Most serious offense against victim by Sex of victim for all reporting states, 18 to 20,* U.S. DEP'T OF JUST., https://bit.ly/387FeIs, Ex. A.

Assuming that curbing gun violence was Illinois's aim in passing the Carry Ban, it cannot advance that interest by stripping the right to carry a handgun for purposes of self-defense from women who as a group are exceedingly law-abiding and disproportionately likely to be victimized by criminals. Indeed, applying the Carry Ban to such a class, which actually *reduces* public safety, is absurd.

## Conclusion

For these reasons, Plaintiffs respectfully move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims against all Defendants in their official capacities.

Dated: September 17, 2021                    Respectfully Submitted,

                                             s/David H. Thompson
                                             David H. Thompson*
Christian D. Ambler                          Peter A. Patterson*
STONE & JOHNSON, CHTD.                        William V. Bergstrom*
111 West Washington Street                   COOPER & KIRK, PLLC
Suite 1800                                   1523 New Hampshire Avenue, N.W.
Chicago, Illinois 60602                       Washington, D.C. 20036
(312) 332-5656

---

[4] Defined to include murder/nonnegligent manslaughter, kidnapping, rape, sodomy, sexual assault with object, fondling, robbery, aggravated and simple assault, and intimidation.

cambler@stonejohnsonlaw.com

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, Illinois 60187
(630) 452-4547
dsigale@sigalelaw.com

(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAVID MEYER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 3:21-cv- |
| v. | ) 00518-DWD |
| | ) |
| KWAME RAOUL, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 17, 2021, I caused the foregoing to be filed using the CM/ECF system, which will send notification of such filing to counsel of record, who are registered CM/ECF participants.

Christian D. Ambler
STONE & JOHNSON, CHTD.
111 West Washington Street
Suite 1800
Chicago, Illinois 60602
(312) 332-5656
cambler@stonejohnsonlaw.com

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, Illinois 60187
(630) 452-4547
dsigale@sigalelaw.com

<u>s/David H. Thompson</u>
David H. Thompson*
Peter A. Patterson*
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

20