DEFENDANT'S EXHIBIT N

[No. 178.]          AN ACT

To regulate the license of pedlars in Chambers
county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in General
Assembly convened,* That article 16 of section
397 of the Code be altered and amended, so far as
the county of Chambers is concerned, so that for
each wagon peddling in said county, there shall be
paid a license of two hundred and fifty dollars;
for peddling on horseback, license of two hundred
dollars; on foot, one hundred and fifty dollars:
*Provided,* that nothing herein contained shall ap- Proviso.
ply to persons peddling on articles manufactured
or put up in this State; *and provided further,* That
the provisions of this act, shall not apply to per-
sons from other States peddling or trading on bacon,
lard, meal, flour, feathers, hides, fruits of all de-
scriptions, or eatables of any character.

SEC. 2. *Be it further enacted,* That all laws and
parts of laws contravening the provisions of this
act, be, and the same are hereby repealed, so far
as relates to the county of Chambers.

APPROVED, February 15, 1856.

————

[No. 179.]          AN ACT

To define and establish definitely the dividing line
between beats No. &, more generally known as
Alexandria, and' Colvin's Beats, in Benton
county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the
passage of this act, that portion of the beat line,
dividing beats No. &, more generally known as Al-
exandria and Colvin's beats in Benton county, be
hereby so defined and established as to run from
Atha Thomas' big spring to the Gilbert's Ferry
Road; thence with said road to Henry Petit's,

132 DEFENDANT'S EXHIBIT N

thence to Keiling's old Ford on Ohatchy creek, any law to the contrary notwithstanding.

APPROVED, February 15, 1856.

———

[No. 180.]                    AN ACT

To restrict the County Court Commissioners of Franklin county.

**Amount of per cent.**

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the County Court Commissioners, of Franklin county, must not levy a county tax for said county exceeding fifty per cent. upon the amount of the assessment of State taxes for said county, any law to the contrary notwithstanding.

APPROVED, February 15, 1856.

———

[No. 181.]                    AN ACT

To consolidate the offices of Judge of Probate and Clerk of the Circuit Court of Baldwin county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That from and after the passage of this act, the Judge of Probate of Baldwin county and his successors in office, be, and they are hereby made eligible to hold the office of Judge of Probate and Clerk of the Circuit Court of said county ; and that the bonds of the office so consolidated, shall be filed with the Register in Chancery of the district.

APPROVED, February 5, 1856.

133 DEFENDANT'S EXHIBIT    1855–'56.

[No. 182.]          AN ACT

T authorize the election of an additional Constable
in Beat No. Six, in the County of Coffee.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the
passage of this act, it shall be lawful for the quali-
fied voters in Beat No. Six, in the county of Coffee,
to elect an additional Constable under the same
laws, rules and regulations that govern other elec-
tions for constable. *

SEC. 2. *Be it further enacted,* That said consta-
ble so elected shall give bond in the same amount
and be subject to the same rules, regulations and
liabilities, as other constables are in this State, any
law to the contrary notwithstanding.

APPROVED, February 2, 1856.

*Additional Constable.*

———

[No. 183.]          AN ACT

Relating to Taxes in the City of Mobile.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That in addition to any tax
authorized or intended to be levied under or in pur-
suance of the provisions of an act entitled " an act
to enable the Corporate Authorities of the city of
Mobile to provide for the security and payment of
the debts of said city, and for other purposes," ap-
proved Feb. 11, 1854, or under or by virtue of any
other law now in force as to said city ; the Mayor,
Aldermen, and Common Council of the city of
Mobile are hereby authorized and empowered to
levy and collect annually, a tax on the real estate
in the city not to exceed one-fourth of one per cent.
per annum on the value of the same as shown by
the book of assessments returned yearly by the tax
assessor for said city—which tax shall be collected,
by the same manner, under the same pains, penal-

*Tax to be lev-
ied.*

Proviso.

ties and forfeitures, and by the same authority as he, the said tax collector, collects the present tax of said city ; *Provided,* That said tax shall not be levied or collected until a majority of the real estate owners residing in the city of Mobile shall, by a vote, determine in favor of said levy and collection, and the said corporate authorities are hereby authorized to hold an election in said city to determine the question whether they will be taxed according to the provisions of this act, giving at least thirty days notice of such election, such election to be conducted under the same regulations and restrictions as are now required by law for holding general elections, and at such election no person shall be allowed to vote except *bona fide* real estate owners.

How to be disbursed.

SEC. 2. *Be it further enacted,* That said additional tax, when collected by said tax collector, shall be paid into the treasury of said city, to be appointed and disbursed by the proper authority of said city, in liquidating present deficiencies, and for further current expenses of said corporation, and in such manner as the said Mayor, Aldermen and Common Council may deem proper.

APPROVED, February 15, 1856.

---

[No. 184.]            AN ACT.

To change the law in ralation to County Surveyors and Coroners in the County of Dale.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Sections 800, 801, 812, and 813 of the Code be, and the same are hereby repealed, so far as the same relate to the county of Dale.

Election to be held.

SEC. 2. *And be it further enacted,* That there shall be elected by the qualified voters of said county on the first Monday in August next, two County Surveyors and a Coroner for said county, who shall hold their respective offices for one year from

said election.    And at each  general  election  held
thereafter,  for  the  election  of  Representatives  to
the General Assembly.    There shall be elected two
County Surveyors  and a Coroner  for said  county,
whose term of office  shall be two years  from  said
election.

SEC. 3.  *And be it further enacted,* That said Sur- — Bond to be giv-
veyors and Coroner shall give bond, as now provi-   en.
ded by law, and  in  all other respects be governed
by the existing laws on the  subject of county  sur-
veyors and coroners.

SEC. 4.  *And be it further enacted,* That  all  laws
contravening the provisions of this act be, and the
same are hereby repealed.

APPROVED, January 31, 1856.

———

[No. 185.]                   AN ACT

To authorize C. W. Cottingham, of Lowndes County
   to make  out  and  substitute  a new  Docket and
   for other purposes.

SECTION  1.  *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That C. W. Cottingham, a New Docket.
Justice of the  Peace, for  the  county  of Lowndes
be, and he is hereby authorized  and empowered to
make  out a  new  Docket and  substitute all  such
causes, orders, entries, and judgments therein, as
can be established by satisfactory evidence to have
been contained in the  Docket heretofore destroyed
by fire and  belonging  to the  office  of C. W. Cot-
tingham, as Justice of the Pease aforesaid.

SEC. 2.  *And be it further enacted,* That the Dock-
et made out, and  the  causes, orders,  entries and
judgments substituted, as required in  the  first sec- Effect of Dock-
tion of this act, shall have the same force and effect et.
in respects, as the original docket would have had.

SEC. 3.  *And be it further enacted,* That for the
purpose of attaining  the  evidence required in the
first section of this act, the said Cottingham shall Power to issue
have power to issue subpœnas for witnesses to testify Subpœnas.

DEFENDANT'S EXHIBIT N

**1855-'56.**

in this behalf, directed to the constable of the beat.

Sec. 4. *And be it further enacted,* That if said constable shall fail to perform the duties herein required, or the witness or witnesses, fail or neglect to attend as herein required, they or either of them shall, for such failure or neglect, be subject to the pains and penalties now prescribed by law, as in other cases.

*Penalty.*

Approved, February 27, 1856.

[No. 186.]          AN ACT

To create an additional Company Beat, in Jackson County, and for other purposes.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That an additional Captain's company beat of the following bounding, viz: beginning at the foot the mountain in mud creek, near the residence of George V. Houston, and including it thence north to the top of the mountain near by coon creek, thence with the top of the mountain to Geer's old place, thence meandering the top of said mountain to the narrows, between Guess' creek and Box' cove, thence meandering said mountain eastwardly to the head of Manners' cove, so as to include Nathan P. Brandens, thence northwardly to the beginning; be established in the county of Jackson, on what is called the Cumberland Mountain, to be known as the Mountain Beat, and be attached to the first Regiment of Alabama Militia, whether there be within said bounds, the requisite number of privates or not.

*Additional beat.*

*To what regiment attached.*

Sec. 2. *And be it further enacted,* That on the first Monday in March next, there shall be held an election at the residence of John Sanders, in said beat, for two Justices of the Peace, a constable, a captain and the requisite subaltern officers, who shall hold their offices for the term now prescribed

13 DEFENDANT'S EXHIBIT 1855–'56.

by law, and a precinct for general elections, is established, at said John Sanders', until otherwise directed by the court of county commissioners.

APPROVED, February 15, 1856.

———

[No. 187.]                    AN ACT

To compensate Physicians for certain services therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, it shall be lawful for the Commissioners' Court of each county in this State, to allow Physicians reasonable fees, for attending insolvent prisoners in the county jail of their respective counties.

SEC. 2. *Be it further enacted,* That whenever any person confined in jail, shall require medical attention, it shall be the duty of the sheriff or jailor of such county, to procure such medical attention.

SEC. 3. *Be it further enacted,* That no Physicians account shall be allowed unless the same be properly attested by the sheriff or jailor of such county.

APPROVED, February 14, 1856.

———

[No. 188.]                    AN ACT

To amend the Road Laws in Cherokee County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, the acting justices of the peace and their successors in office, in the county of Cherokee be, and they are hereby constituted and appointed apportioners, and supervisors, of the public roads in their respective precincts, and it shall

Duty of Supervisors and Apportioners.

18

be the duty of the apportioners and supervisors of each and every election precinct in the county of Cherokee to assemble at the place of holding justices courts on the first Saturday in March next, or as soon thereafter as practicable, and on the first Saturday in March, every two years thereafter, and appoint all overseers they may deem necessary to keep the roads of their precincts in good repair.

SEC. 2. *And be it further enacted*, That apportioners and supervisors shall have power, and it shall be their duty to fill all vacancies that may occur in their respective precincts by death, removal or otherwise, at any time within ten days after they have been notified of such vacancy, and any apportioner or supervisor failing to discharge the duties imposed by this act, shall be dealt with according to the laws now in force for failing to apportion hands, and it shall be the duty of such apportioners and supervisors within five days from the apportionment of any overseer to furnish such overseer with a list of all hands apportioned to his road.

*Fill vacancies.*

SEC. 3. *And be it further enacted*, That the constable in each of the precincts in said county, shall serve the overseers as provided for in this act, with a copy of written notice issued by the said apportioners, of their apportionment as overseers of said roads, and return the same to the Judge of Probate of said county within thirty days from the time of their appointment as said overseer, and should any overseer so appointed fail to serve without a lawful excuse as provided now by law, he shall be subject to the same penalties as is now prescribed by the law for such failure.

*Notice to be given.*

SEC. 4. *Be it further enacted*, That the Judge of Probate of said county, shall keep a record of the overseers of roads returned by the constable as provided for by this act, which record shall be evidence of their appointment as overseers of the roads in said county in any suit at law, or indictment as such.

*Record to be kept.*

SEC. 5. *Be it further enacted*, That all overseers thus appointed, shall warn all hands, to them apportioned, at least two days previous to the day of

*Hands to receive notice.*

DEFENDANT'S EXHIBIT N

working, to appear at a stated time and place with such tools as the overseer may think proper for the use of such road.

SEC. 6. *Be it further enacted,* That the constable in each precinct, for serving said notice shall be entitled to twenty-five cents each, and the further sum of five cents per mile for going and returning from the court house for the purpose of making returns of said notices, and that the distance shall be recorded from the place of said returning officer's residence.

*Receive pay.*

SEC. 7. *Be it further enacted,* That the county Treasurer shall pay the same out of any funds that may be in the treasury not otherwise appropriated, on the presentation of the certificate of the person authorized to receive such returns, that the service has been performed, and that all laws and parts of laws which conflict with the provisions of this act be, and the same are hereby repealed; *Provided,* That the Commissioners' Court of said county shall not allow the sheriff of said county any compensation for ex officio services in serving notices on apportioners and overseers of public roads as now allowed by law.

*Paid out of Treasury.*

APPROVED, Feb. 2, 1856.

———

[No. 189.]         AN ACT

In relation to the Court of County Commissioners in Shelby County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That on application or petition of the owners or superintendents of manufacturing and mining establishments in the county of Shelby, the court of county commissioners for said county shall have power to assign to them for a term of not more than five years a road precinct or a part thereof not more than six miles from said manufacturing or mining establishment.

SEC. 2. *Be it further enacted,* That the person

Penalties.

to whom the road precinct or part thereof may be assigned, shall be charged with all the duties, and liable to all the penalties that overseers of roads now are.

Road duty.

SEC. 3. *And be it further enacted,* That all the persons connected with said mining or manufacturing establishments, liable to do road duty, can be called out to work by said persons to whom a road precinct or part thereof may be assigned, and are liable to all duties and penalties that persons are subject to work now are.

APPROVED, January 25, 1856.

———

[No. 190.]          AN ACT

To authorize the Administrator of R. A. M. Powell, deceased, of the County of Fayette, to sell the real estate on a longer time than one year.

To sell real estate.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the administrator of the estate of Rueben A. M. Powell, deceased, of the county of Fayette be, and he is hereby authorized to sell the real estate of said deceased upon such credit as he may think most advisable, not to exceed three years, subject to the same regulations as are now provided for such sales, any law to the contrary notwithstanding.

APPROVED, Feb. 5, 1856.

———

[No. 191.]          AN ACT

To change the time of holding the Winter Term of the Chancery Court for Cherokee County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That hereafter the Winter

1855–'56.

Term of the Chancery Court for Cherokee County shall be held on the first Monday in January of each year, instead of the time now provided by law, and may continue six days.

APPROVED, February 2, 1856.

***Chancery Court.***

---

[No. 192.]                 AN ACT

To authorize Thomas Thorn and Sons of Franklin County, to erect a certain dam therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Thomas Thorn and Sons of the county of Franklin be, and they are hereby authorized to erect a dam across Big Bear Creek, in Section number twenty-nine, of township number seven, in Range fourteen in said county, for the purpose of enabling them to use the water of said creek in propelling a grist and saw mill, or other machinery which they propose to erect on said creek ; *Provided,* That the provisions of this act shall not be construed so as to allow the said Thorn or Sons to construct said dam of greater height than five feet above low water mark.

APPROVED, Feb. 1, 1856.

***To erect a mill dam.***

---

[No. 193.]                 AN ACT

To cause the County Treasurer and County Surveyor of Franklin County to be elected by the people.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the County Treasurer and County Surveyor of the county of Franklin shall be elected by the qualified voters of said county on the first Monday in August, 1856, and enter upon the duties of said offices immediately after

***To elect Surveyor and Treasurer,***

**1855— 56.**

the expiration of the official terms of the present incumbents.

Term of office.

SEC. 2. *Be it further enacted,* That said County Treasurer and County Surveyor shall be elected for the term of two years, counting from the time that the terms of said incumbents shall expire, and every two years thereafter.

Vacancy.

SEC. 3. *Be it further enacted,* That if a vacancy shall occur in either of said offices, after the elections of 1856, as aforesaid, it shall be the duty of the Judge of Probate to convene the court of county commissioners at the earliest day practicable, which court shall, without delay, fill said vacancy or vacancies, and the person or persons, so elected, shall hold for the unexpired term or terms of said appointments.

SEC. 4. *And be it further enacted,* That all laws and parts of laws, contravening the provisions of this act be, and the same are hereby repealed.

APPROVED, January 21, 1856.

———

[No. 194.]    AN ACT

To change the time of holding the Chancery Court in Wilcox County.

SECTION 1. *Be it enacted by the Senate and House of Representatives in the State of Alabama in General Assembly convened,* That the Spring Term of

Term to commence.

the Chancery Court at Camden, in the county of Wilcox, shall commence on Wednesday next, after the second Monday in June.

SEC. 2. That all statutes in conflict with this be repealed.

APPROVED, February 2, 1856.

[No. 195.]           AN ACT

To regulate the Summoning of Jurors in the Counties of DeKalb and Covington.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, the General and Petit Jurors for the county of DeKalb, shall be summoned to attend on the first day of the term of the courts of said county.

*To summon jurors.*

SEC. 2. *Be it further enacted,* That all laws and parts of laws conflicting with the provisions of this act be, and the same are hereby repealed.

SEC. 3. *Be it further enacted,* That the provisions of this bill be, and the same are hereby extended to the county of Covington.

APPROVED, January 31, 1856.

———

[No. 196.]           AN ACT

To authorize the completion of the final Records of the Circuit Court of the county of Madison.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Clerk of the Circuit Court, of the county of Madison, be, and he is hereby required, and it is made part of his official duties. to complete the final Records of said Court, left unfinished by his predecessors in office, for which he shall be entitled to such compensation as the Court of Commissioners of said county may allow, not to exceed the fees now allowed by law, for making final Records, to be paid out of any moneys in the county Treasury, not otherwise appropriated.

*Required to complete record.*

APPROVED, Jan. 31, 1856.

DEFENDANT'S EXHIBIT N

[No. 197.]                    AN ACT

To amend an act, to repeal in part the Patrol Law
    in the counties of Marshall, Cherokee, DeKalb
    and others.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the provisions of an
act, entitled an act, to repeal in part the Patrol
Law, in the counties of Marshall, Cherokee, De-
Kalb and others, approved January 19, 1854, be
and are hereby extended to so much of the county
of Perry, as lies on the West side of the Cahaba
River.

APPROVED, Feb. 1, 1856.

———

[No. 198.]                    AN ACT

To authorize Charles Dear, to erect Gates across a
    Road therein named.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-*
To erect gates. *ral Assembly convened,* That Charles Dear be au-
thorized to erect Gates across a public road, in the
county of Wilcox, leading from the Blacks Bluff
road Eastwardly, up the South side of Dunns'
Creek, and known as the Choctaw corner road; the
said Gates to be erected by the said Dear, at any
points he may select, on the lands now owned by
him.

APPROVED, Jan. 31, 1856.

———

[No. 199.]                    AN ACT

To change the time of holding the Chancery Courts
    for the counties of Lawrence and Lauderdale.

SECTION 1. *Be it enacted by the Senate and House*

of Representatives of the State of Alabama in General Assembly convened, That the Chancery Court for the twenty-seventh Chancery District, of the Northern Division, shall be held on the second Monday in May, and may continue six Judicial days, and the Chancery Court for the twenty-sixth Chancery District, shall be held on the third Monday in May, and may continue six Judicial days.

*Time of holding court.*

APPROVED, Feb. 5, 1856.

---

[No. 200.]   AN ACT

To repeal in part an act, to regulate the pay of Grand and Petit Jurors, for the county of Covington and for other purposes.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the first Section of an act entitled an act, to regulate the pay of Grand and Petit Jurors of Covington county, and for other purposes, approved December 12, 1853, be and the same is hereby repealed.

APPROVED, Feb. 15, 1856.

---

[No. 201.]   AN ACT

Amendatory to an act establishing Commissioners Districts in the county of Walker, Approved Jauary 6, 1852.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That hereafter in all elections for Commissioners of roads and revenue, in the county of Walker, it shall be the duty of the Sheriff of said county, to hold an election in each of said Commissioners Districts, for the purpose of electing one Commissioner for said county, in each of said Districts, and that the said four Commis-

*To hold election.*

19

DEFENDANT'S EXHIBIT N

1855-'56.

sioners, thus elected, with the Judge of Probate, shall compose the Court of county Commissioners for the said county of Walker.

*Voters.* Sec. 2. *Be it further enacted,* That in neither of the elections above specified, shall any person be entitled to vote out the District in which he resides.

*Term of office.* Sec. 3. *Be it further enacted,* That the said Commissioners, shall hold their term of office as now prescribed by law, and shall have power to fill vacancies occasioned by death, resignation or otherwise, from the District in which the retiring Commissioner resided, when he resigned.

*Compensation.* Sec. 4. *Be it further enacted,* That the Commissioners elected aforesaid, and the Judge of Probate, for said county of Walker, shall not be allowed to receive more than one dollar and fifty cents per day, for attending the Commissioners Court, of said county, and four cents per mile, travelling to and from Court.

Sec. 5. *Be it further enacted,* That all laws and parts of laws contravening the provisions of this act, be, and the same are hereby repealed.

Approved, February 2, 1856.

---

[No. 202.]          AN ACT

To change the time of holding the Circuit Courts, of the counties of Bibb and Autauga.

*Time of holding court.* Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, the Circuit Courts of the county of Bibb, shall commence and be holden on the first Monday after the second Monday in March and September, and may continue two weeks; and of the county of Autauga, shall commence and be holden on the first Monday after the fourth Monday in March and September, and may continue two weeks.

*All papers returnable.* Sec. 2. *Be it further enacted,* That all executions, writs, subpœnas and process of every kind

147   DEFENDANT'S EXHIBIT No. 56.

made returnable to either of said Courts, at the time now provided by law, shall be, and the same are hereby made returnable to said Courts, at the times prescribed by this act.

SEC. 3. *And be it further enacted,* That all laws and parts of laws, contravening the provisions of this act, be, and the same are hereby repealed.

APPROVED, Jan. 18, 1856.

---

[No. 203.]   AN ACT

In relation to hunting Wild Hogs in Marengo and other counties therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That from and after the passage of this act, it shall not be lawful for any person or persons to hunt with dog and gun, or either, or to trap wild hogs in the counties of Marengo, Marion, Wilcox, Fayette, Perry, St. Clair, Pike, Randolph, Blount, Cherokee, Limestone, Pickens, Lowndes, Marshall and Coosa, without first giving notice to three house-holders living nearest the field, woods or swamp in which the hunt is to be made. *Notice to be given.*

SEC. 2. *Be it further enacted,* That any person violating the provisions of this act, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than twenty or more than fifty dollars. *Penalty.*

APPROVED, February 13, 1856.

---

[No. 204.]   *AN ACT

To amend Section 939 of the Code of Alabama.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Section 939, of the

1855–'56.

148

Proviso.

Code is so amended as to allow foreign corporations, invested with the privilege of banking when such privileges is exercised in this State by agents, to use the bills of foreign banks established by law ; *Provided*, That the provisions of this act shall apply to the county of Barbour only ; and be it further provided, that this act shall cease to be a law whenever a bank shall be chartered by the General Assembly of this State and located at any point in said county of Barbour ; *Provided*, said privilege shall not extend longer than two years.

\* This bill was vetoed by the Governor, and then passed by the constitutional majority, February 14, 1856.

[No. 205.]          AN ACT

Suplimentary of an act entitled an act to regulate the system of Public Schools in Mobile county, approved 16th January, 1854.

Appropriation of taxes.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the entire amount of taxes now required by the law to be collected by the Judge of Probate of Mobile county for the State, on licenses authorizing the retalling of spirituous liquors, the use of a nine or ten pin alley, or any alley table or board of that description, or authorizing the use of any billiard, pool, bagatelle table or board, on which games are played, in the county of Mobile, shall, on and after the passage of this act, be appropriated to the public school fund of said county.

Power of Commissioners to levy tax.

SEC. 2. *Be it further enacted*, That the board of Mobile School Commissioners be, and they are hereby authorized and empowered, whenever in their judgment, the success and propriety of the public school system, in force in said county, demand it, to lay a tax, not exceeding one-twentieth of one per cent. upon the real and personal property of said county, as found by the latest appraisment roll of the State and county assessor, for the

benefit of said schools. The tax so levied shall be certified to the collector of State and county taxes for said county, who shall proceed to collect it in the same manner and for the same fees as is now prescribed by law for the collector of State and county taxes for said county, and said collector shall deposite the same in such bank in the city of Mobile as shall be selected by the board of Mobile school commissioners, and the act approved January 16th, 1854, authorizing the levy of a tax on all subjects of taxation embraced in the revenue laws of the State, except licenses, an amount equal to one-fourth of the amount levied by the commissioners of revenue of Mobile county for the county tax of the county; and all prior acts authorizing a levy on the county tax of Mobile county, for school purposes, be, and the same are hereby repealed.

*Tax to be collected.*

APPROVED, February 15, 1855.

----

[No. 206.]          AN ACT

Fixing the time for holding certain Courts therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That hereafter the Circuit Court of Barbour county may continue its session three weeks, and that hereafter the Circuit Court of Montgomery county shall commence its Spring Term on the first Tuesday succeeding the seventh Monday after the fourth Monday in March, and may continue its session four weeks, and shall commence its Fall Term on the first Tuesday succeeding the sixth Monday after the fourth Monday in September and continue in session until the business is disposed of.

*Barbour.*

SEC. 2. *Be it further enacted,* That hereafter the Spring Term of the Circuit Court of Pike county shall commence on the third Monday in March each year, and may continue in session two weeks.

SEC. 3. *And be it further enacted,* That all

DEFENDANT'S EXHIBIT N

1855—56.

process made returnable to said Courts of Pike and Montgomery counties at the time heretofore prescribed by law shall be returnable to said courts as prescribed by this act.

APPROVED, Feb. 14, 1855.

---

[No. 207.]             AN ACT

For the relief of the School Commissioners of Marshall county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Comptroller of Public Accounts is hereby authorized and required to issue his duplicate warrant to the State Treasurer, in favor of D. L. Larkin and M. Gilbreath, School Commissioners of Marshall county, for twenty-one hundred and forty-four 32-100 dollars, in lieu of a former warrant in favor of the same parties for the same amount, which has been lost or mislaid.

APPROVED, February 14, 1854.

---

[No. 208.]             AN ACT

For the relief of James M. Petty, of Fayette county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of one hundred and fifty dollars be appropriated out of the Treasury of the State of Alabama, and paid to James M. Petty to reimburse him, being the amount paid by him to Dow Blair, of Monroe county, Mississippi, for apprehending Wiley H. Jordan, charged with murdering A. J. Petty, late of Fayette county, Alabama.

APPROVED, February 11, 1856.

DEFENDANT'S EXHIBIT N

[No. 209.]       AN ACT

To provide for the relief of Census Takers.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the comptroller of public accounts shall issue his warrant upon the State Treasurer, in favor of all census takers of the State who have failed to return their books in the time prescribed by law, and who shall make their returns on or before the 10th day of December, 1855, and have not received their pay for the amount due them, according to the provisions of the act approved, 17th February, 1854, entitled, "An Act to provide for taking the census for the year 1855."

APPROVED, December 10, 1855.

---

[No. 210.]       AN ACT

For the relief of certain persons therein named, citizens of Madison county.

WHEREAS, Davis Moore, John H. Hamer, Adderson Humer, William M. Hornbuckle and Joel C. Childress, citizens of the county of Madison and State of Alabama, in the year 1849, became purchasers of a 16th Section, in Township 6, Range 2 East in said county, at a public sale, directed and held by the Commissioners of said township, under the authority of an act of the Legislature of said State.

*And whereas,* It appears that the said 16th Section was embraced and contained in a reservation of 12 miles square in said county of Madison, ceded to the Cherokee nation as a school fund, by a treaty made by the Government of the United States with the Cherokee nation, on the 27th February, 1819.

*And whereas,* Afterwards, to wit: some time in the month of April, 1855, in pursuance of instruc-

DEFENDANT'S EXHIBIT N

tions from the Commissioners of the General Land Office, the same lands were sold by the Register of of the Land Office, at Huntsville, in said State, and the above named purchasers dispossessed, therefore,

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Comptroller of Public Accounts be, and he is hereby authorized and required to draw his warrant upon the Treasurer of the State, in favor of the following named persons, citizens of the county of Madison in this State, to-wit: Davis Moore, for the sum of fifty-seven dollars and fifty cents ; also in favor of John H. Hamar, for the sum of one hundred and nineteen dollars and nineteen cents ; also in favor of Anderson Hamar, for the sum of six hundred and twenty-one dollars and twenty-one cents ; also in favor of the administrator of the estate of William L. Hornbuckle, deceased, for the sum of two hundred and forty-four dollars and seventy-nine cents, and also in favor of Joel C. Childress, for the sum of eleven hundred and forty-seven dollars and seventeen cents, for the sums they have respectively paid into the State Treasury as purchasers of parts of a 16th Section, in Township 6, Range 2 East in the county of Madison, which was improperly sold by the Commissioners of said townships, it being embraced in the twelve miles square reserved by treaty to the Cherokee nation.

SEC. 2. *Be it further enacted*, That if patents have been issued by the State to any of the parties hereinbefore mentioned for said lands, they shall before the receipt of their respective amounts hereby directed to be refunded, surrender the same to the State.

APPROVED, Feb. 14. 1856.

*Comptroller required to draw warrant.*

*Patents to be surrendered.*

DEFENDANT'S EXHIBIT N

[No. 211.]    AN ACT

For the relief of Hozea Lecroy, of Coosa county.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the sum of one hundred dollars be, and the same is hereby appropriated out of the Treasury of the State of Alabama, for Hozea Lecroy, of Coosa county, on account of expenses incurred in arresting and prosecuting to conviction one Varden Golding upon a charge of felony.

Sec. 2. *Be it further enacted*, That the Comptroller of Public Accounts be, and he is hereby authorized and required to draw his warrant upon the Treasurer, in favor of said Hozea Lecroy, for the said sum of one hundred dollars, to be paid out of any money not otherwise appropriated.

*Comptroller to draw warrant.*

Approved, February 2, 1856.

———

[No. 212.]    AN ACT

To Samuel F. Rice and others for servant hire.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Comptroller of Public Accounts be, and he is hereby authorized to draw his warrant on the Treasury, in favor of Samuel F. Rice, for an amount equal to the hire of two hands, at the rate of thirty dollars each a month, commencing on the fifth day of November, 1855, and ending on the day of the final adjournment of the General Assembly; moreover in favor of W. C. Allen, for the hire of one servant for an amount equal to thirty dollars per month, from the fifth day of November, 1855, and to end on the day of the final adjournment of the General Assembly; also in favor of John Camp for the hire of a servant at the rate of thirty dollars per month, commencing on the first day of Jan-

*Money ordered paid for certain purposes named.*

uary, 1856, and ending on the final adjournment of the General Assembly. The said servants to be paid out of any money in the Treasury not otherwise appropriated.

APPROVED, Feb. 15, 1856.

---

[No. 213.]        AN ACT

For the relief of James W. Jeter, of Coosa county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Governor of the State be, and he is hereby authorized and required to issue a patent to James W. Jeter, of Coosa county, for the North-west quarter (N. W. 1-4.) section sixteen, (16.) township nineteen, (19.) range twenty, (20.) in the Tallapoosa land district, upon satisfactory proof that said land has been paid for.

APPROVED, Feb. 15, 1856.

*Governor authorized to issue patent.*

---

[No. 214.]        AN ACT

For the relief of the Executors of the last will and testament of James Blackman, deceased.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Homer Blackman and Richard H. Powel, executors of the last will and testament of James Blackman, late of the county of Macon, deceased, be, and the same are hereby exonerated and relieved from making any returns to the Probate Court, on the estate of the said James Blackman, deceased, as the same is in accordance with the request of the testator in his will employed; *Provided,* nothing herein contained shall prevent the Probate Court from requiring and compelling the said Homer Blackman and

*Exhonerated from making returns to Probate C't.*

Richard H. Powell from making annual returns, where any person interested in said estate shall make it appear to the satisfaction of the Probate Court that the same is likely to be injured by th failure of the said executors to make returns to th Probate Court.

APPROVED, January 24, 1856.

———

[No. 215.]          AN ACT

For the relief of the Administrator of Thomas S. Mays and others.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the administrator of the estate of Thomas S. Mays, late Clerk of the Supreme Court of the State, and also his securities on his official bond, be hereby discharged from paying into the Treasury all the taxes upon suits which occurred from the time he entered on his duties as Clerk of the said Supreme Court to the period of his death.

Discharged from paying money to the State.

SEC. 2. *Be it further enacted*, That all laws and parts of laws contravening the provisions of this act, be, and the same are hereby repealed.

APPROVED, February 9, 1856.

———

[No. 216.]          AN ACT

To authorize the Court of County Commissioners, of Franklin county, to make appropriations for the relief of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Court of County Commissioners of the county of Franklin, be, and they are hereby authorized to appropriate out of the County Treasury, if they deem it advisable,

Appropriation

1856—56.

the same amount that is now allowed for the support of paupers in said county, for Amy Gill, Michael Tacket and Luther Hovater, without requiring them to be kept in the Poor House of said county.

APPROVED, Feb. 7, 1856

------

[No. 217.]            AN ACT

For the benefit of L. H. Dickerson.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the sum of one hundred and twenty-five dollars be, and the same is hereby appropriated to pay L. H. Dickerson for repairing the furniture in the State Capital, and other work.

**For repairing furniture.**

SEC. 2. *And be it further enacted*, That the Comptroller of Public Accounts be, and the same is hereby authorized to draw his warrant on the State Treasurer in favor of the said L. H. Dickerson for the amount specified in section first.

APPROVED, February 5, 1856.

------

[No. 218.]            AN ACT

For the relief of Jennette C. Todd of the County of Clarke.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Comptroller be, and he is hereby authorized and required to draw his warrant in favor of Jennette C. Todd, her agent or attorney, upon the State Treasurer for the sum of six hundred and twenty-five dollars to be paid out of the special fund provided to pay for negroes executed under the sentence of the law.

**Amount to be paid.**

APPROVED, February 6, 1856.

157   DEFENDANT'S EXHIBIT No. 56.

[No. 219.]          AN ACT

For the relief of William C. Thomas of Marshall
County.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the sum of fifty dollars  Am'tappropri-
be, and the same is hereby appropriated to William    ated.
C. Thomas of the county of Marshall.

SEC. 2. *Be it further enacted,* That the Comp-
troller of Public Accounts be, and he is hereby
authorized and required to draw his warrant upon
the Treasurer in favor of said William C. Thomas
for the said sum of fifty dollars to be paid out of
any money not otherwise appropriated.

APPROVED, January 25, 1856.

———

[No. 220.]          AN ACT

For the relief of Registers in Chancery.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the
passage of this act, the Court of County Commis-
sioners must allow to the Registers in Chancery, Am't allowed.
the amounts properly expended by them for books
and stationery for the use of their offices.

SEC. 2. *Be it further enacted,* That when there
are more counties than one forming a chancery dis-
trict, the expenses as herein provided for, shall be
borne equally by the respective counties forming
said district; and it shall be the duty of the Chan-
cellor, once a year during the sitting of court to
ascertain the pro rata share each county in said
district is liable to contribute under this act, and
certify the same to the respective courts of county Chancellor to
commissioners forming said district, whose duty it  certify.
shall be to provide for the payment of the same as
per certificate of the Chancellor.

APPROVED, Jan. 15, 1855.

DEFENDANT'S EXHIBIT N

1855–'56.                                              156

[No. 221.]                AN ACT

For the relief of Elisha J. Greer, of the County of
Tallapoosa.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the pas-
sage of this act, the Comptroller of Public Ac-
counts be authorized and required to draw his war-
rant on the State Treasurer, and in favor of Elisha
*Amount to be* J. Greer, for the sum of two hundred and forty-
*paid.* eight 62-100 dollars, and that the said Treasurer
be, and he is hereby authorized and required to
pay the amount of said warrant to the said Elisha
J. Greer out of any moneys in the public Treasury
*Proviso.* not otherwise appropriated; *Provided,* The Comp-
troller is satisfied that said sum is due to the said
Elisha J. Greer, on account of his having over paid
that sum into the State Treasury as tax collector of
Tallapoosa County.

APPROVED, Feb. 1, 1855.

[No. 222.]                AN ACT

For the relief of William T. DeWitt, of Barbour
County.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene
ral Assembly convened,* That the Comptroller of
Public Accounts is hereby authorized to draw his
warrant on the Treasurer of the State, in favor of
William T. DeWitt, for the sum of forty-three dol-
lars and seventeen cents, for that amount of excess
of taxes paid by him for the years 1853–'54; *Pro-
*Proviso.* vided,* The Comptroller shall be satisfied that the
amount was wrongfully assessed.

APPROVED, February 13, 1856.

DEFENDANT'S EXHIBIT 1855 - '56.

[No. 223.]           AN ACT

For the benefit of John M. Weston.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That John M. Weston of the county of Sumter, and State of Alabama, is hereby authorized to establish good and sufficient gates across the public road leading by the cut-off mills, and intersecting the road leading from Warsaw in said county to Macon, Mississippi, near a quarter of a mile west of Providence Church in said county.

*Gate to be erected.*

APPROVED, Feb. 14, 1856.

———

[No. 224.]           AN ACT

To pay a certain claim against the State.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of thirty-three dollars be, and the same is hereby appropriated out of any money in the treasury not otherwise appropriated, to pay James Critcher for guarding Colbert Blankenship, convicted of an attempt to kill, &c., from Marshall county, and delivering him to the Keeper of the Penitentiary for confinement, and that the Comptroller is hereby authorised to draw his warrant in favor of James Critcher upon the Treasurer for the amount.

*Pay James Critcher.*

APPROVED, February 15, 1856.

———

[No. 225.]           AN ACT

For the benefit of Frederick Perquer.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in Gene-*

**1855-'56.**

ral *Assembly convened*, That Frederick Perquer, surviving partner of the late firm of F. Perquer & Sons, and an alien be, and he is hereby authorized

**Right to ho'd lands.** to have and hold as his own property and right, all lands in the State of Alabama, that he may have heretofore purchased and paid for bona fide and in good faith, or which may have been purchased and paid for by any of his relations, and which he now holds by dissent or otherwise under them, in the same manner, and as fully and completely as he might have held or inherited the same. had he and his said relations not been aliens but native born citizens.

APPROVED, February 15, 1856.

---

[No. 226.]        AN ACT

To authorize the Probate Court of Chambers to grant Letters of Administration on the estate of W. H. Atkins, deceased, late of the county of Tallapoosa.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convene'l.* That the Court of Probate, for the county of Chambers, have authority to grant

**Grant letters of administration.** letters of administration on the estate of William H. Atkins, deceased, late of the county of Tallapoosa, and to do and perform all things necessary to settle and distribute the estate of the said Wm. H. Atkins, deceased, in accordance with the laws of the State of Alabama, as fully and effectually as if the said deceased had died a citizen of the county of Chambers.

APPROVED, December 21, 1855.

---

[No. 227.]        AN ACT

For the relief of M. B. Breedlove.

SECTION 1. *Be it enacted by the Senate and House*

of Representatives of the State of Alabama in General Assembly convened, That the Governor of the State of Alabama be, and he is hereby authorised and required to issue a patent to Madison B. Breedlove for the South-east quarter of section sixteen, township fifteen, range seventy-five, it being made to appear that the original purchase money has been paid, and that the said Madison B. Breedlove is now the owner of said land.

APPROVED, February 5, 1856

———

[No. 228.]          AN ACT

For the relief of Austin Murphree, Jailor of Blount County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of one hundred and thirteen dollars and seventy cents be appropriated out of the treasury of the State of Alabama and paid to Austin Murphree, Jailor of Blount County, for feeding certain prisoners in the years 1854 and 1855, who were broken out of said jail by malicious persons from without.

APPROVED, Feb. 11, 1856.

———

[No. 229.]          AN ACT

For the relief of A. Moore, Tax Collector for Lowndes County:

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Comptroller of Public Accounts be authorised to daaw his warrant on the State Treasurer in favor of A. Moore, tax collector of Lowndes county, for the sum of one hundred and sixty-four 25-100 dollars ; *Provided,* That the said Comptroller, on the proof, to be ur-

e 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 32 of 130   Page ID #1

DEFENDANT'S EXHIBIT N

nished him by the said A. Moore, finds the said amount to be due, and that the said Treasurer be, and he is hereby required to pay the amount of said warrant, to the said A. B. Moore out of any money in the treasury not otherwise appropriated.

APPROVED, Feb. 1, 1856.

[No. 230.]          AN ACT

For the relief of John A. Stow and Isaac Stow of Tallapoosa County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened.* That from and after the passage of this act, John A. Stow and Isaac Stow, of the County of Tallapoosa county be. and they are hereby authorised to practice medicine within the limits of said county of Tallapoosa, under the Botanical system, and they are hereby invested with the right and power to sue for and collect by law reasonable fees for all services they or either of them may render in their said practice as Botanical Physicians.

SEC. 2. *Be it further enacted,* That so far as chapter 2, title 13, of the Code of Alabama conflicts with the provisions of this act, the same is hereby repealed.

APPROVED, January 25, 1856.

No. 231.]          AN ACT

For the relief of Robert M. Brooks, Tax Collector of Cherokee county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Robert M. Brooks, Tax Collector, of Cherokee county, be allowed Time allowed :until the first day of June next, to settle his ac-

counts as such collector; *Provided*, That before this act takes effect, the sureties on the official bond of said Brooks, shall file in the office of the Comptroller, their consent in writing to such extension.

APPROVED, Feb. 15, 1856.

---

[No. 232.]          AN  ACT

For the relief of Henry M. Elmore and others.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That Henry M. Elmore, upon the payment of three thousand dollars of his bank indebtedness by the first day of February, 1856, shall be allowed to extend the time of the payment of the balance of his own indebtedness to the Bank of the State of Alabama, at Montgomery, so as to make the same payable in two equal payments, on the first of February, 1857, and on the first of February, 1858; *Provided*, his securities shall file their written assent to the extension of said debt with the Bank Commissioners of the State of Alabama, or such officer as may be entrusted with the management of the affairs of the said Bank; *and provided also*, that the said Commissioner or other officer is satisfied with the security of the debt.

---

\* This bill was vetoed by the Governor, and then passed by the constitutional majority, January 12, 1856.

---

[No. 233.]          AN  ACT

F r the relief of John C. Hawkins, the heirs of Allen K. Curry, A. Downing, and W. I. Ingram and Aaron Green.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the contracts hereto-

DEFENDANT'S EXHIBIT N

fore entered into between the Trustees of township eighteen and range three, in Tallapoosa county, and John C. Hawkins, Allen K. Curry and their securities be, and they are hereby required, and the Superintendent of Education, is hereby required to cancel the notes or deliver them to John C. Hawkins, and the heirs of Allen R. Curry.

SEC. 2. *Be it further enacted*, That the contracts between the Trustees of Township Fifteen, and range six in Benton county, and A. Downing, W. I. Ingram and their securities are hereby rescinded and the Superintendent of Education is hereby required to cancel the notes or deliver them to the payees.

APPROVED, Feb. 13, 1856.

———

[No 234.]                 AN ACT

To pay Brittan and Blue for Printing.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the sum of twenty-six 50-100 dollars be allowed to Messrs. Brittan & Blue for printing proposals, &c. : that the Comptroller of Public Accounts be authorised to draw his warrant on the Treasurer for that amount in their favor.

APPROVED, Feb. 14, 1856.

———

[No. 235.]                 AN ACT

For the relief of James Foshees, of Conecuh county

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Governor of the State of Alabama, be, and he is hereby authorized **To issue patent** to cause a patent to be issued to James Foshees, of Conecuh county, for the Sixteenth Section, of Township 5, Range 13, in the District of lands subject to sale at Elba, Alabama, upon satisfactory evidence of payment having been for the same.

APPROVED, February 15, 1856.

DEFENDANT'S EXHIBIT N

[No. 236.]            AN ACT

For the relief of Horatio Fergusson and Jeremiah
Lafarlett, of Marshall county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in General Assembly convened,* That the sum of fifty dollars be appropriated and paid out of the Treasury of the State to Horatio Fergusson and Jeremiah Lafarlett, of Marshall county, for retaking Colbert Blankenship, convicted of an assault, with an intent to murder, and conveying him to the custody of the Sheriff of said county of Marshall.

APPROVED, February 15, 1856.

————

[No. 237.]            AN ACT

For the relief of Samuel B. Marks.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Administrator of the estate of Mrs. Ann P. Marks, deceased, late of Montgomery county, be authorized to pay over to Samuel B. Mathews, that portion of the estate of Mrs. Ann P. Marks, to which Mrs. Ann Watkins, if living, would be entitled.

SEC. 2. *Be it further enacted,* That any receipt executed by the said Samuel B. Mathews, to said Administrator, for any portion of said estate, shall be received as a voucher by the Judge of Probate, of Montgomery county, and have the same effect as if the same had been received by a legal representative of the said Mrs. Ann Watkins, deceased.

SEC. 3. *Be it further enacted,* That all notices necessary to be given in the Administration of the estate of Mrs. Ann P. Marks, shall be executed on Samuel B. Mathews and Rebecca Mathews, his wife, and shall have the same effect as if served on a legal representative of Mrs Ann Watkins; *Provided,* that the passage of this act shall not effect

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 36 of 130   Page ID #1379

DEFENDANT'S EXHIBIT N

the rights of any creditor of the estate of Mrs. Ann Watkins.

APPROVED, Feb. 15, 1856.

———

[No. 238.]            AN ACT

To pay Philip D. Roddy, a certain sum of money.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Comptroller of Public accounts, be, and he is hereby authorized to

To pay Philip D. Roddy. draw his warrant on the Treasury, in favor of Philip D. Roddy, for the sum of eighty-nine 61-100 dollars, for levying certain Executions in favor of the Bank of the State of Alabama, at Tuskaloosa, against Rodgers Evetts and others, and afterwards dismissed at the instance of the Bank Commissioners; the said sum to be paid out of the Treasury not otherwise appropriated.

APPROVED, Feb. 15, 1856.

———

[No. 239.]            AN ACT

For the relief of John Lawrence, of Cherokee county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That John Lawrence, of the

To erect a mill dam. county of Cherokee, be allowed to erect a Mill Dam across the Chatooga river, at any place he may select on his own premises; *Provided,* he does not obstruct the navigation of said river.

APPROVED, February 15, 1856.

[No. 240.]        AN ACT

To compensate John R. Robertson and George W. Cariker, of Barbour county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of two hundred and seven 56-100 dollars, be, and the same is hereby appropriated to John R. Robertson and George W. Cariker, of Barbour county.

SEC. 2. *Be it further enacted,* That the Comptroller of Public accounts; be, and he is hereby authorized to draw his warrant upon the Treasurer in favor of John R. Robertson and George W. Cariker, for the sum of two hundred and seven **Appropriation** 56-100 dollars, to be paid out of any money not otherwise appropriated.

APPROVED, Feb. 9, 1856.

———

[No. 241.]        AN ACT

For the relief of Obediah Milner, of Tallapoosa County.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Governor of this State be required to cause a patent to be issued to **To issue patent** Obediah Milner to the west half of the north-east quarter of section sixteen, township twenty of range twenty-four, in Tallapoosa county, whenever he shall be convinced by proof, or otherwise, that the purchase money has been properly paid into the State Treasury.

APPROVED, February 2, 1856.

———

[No. 242.]        AN ACT

For the relief of William Norton.

SECTION 1. *Be it enacted by the Senate and House*

ase 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 38 of 130   Page ID #138

DEFENDANT'S EXHIBIT N

*of Representatives of the State of Alabama in General Assembly convened,* That William Norton, of Mobile, be, and he is hereby made capable in law **Inherit estate.** of succeeding to and of inheriting the estate of any relative of his who may have died in this State, in the same manner and to the same extent, as though the said William Norton, and the person to whose estate he proposes to succeed or inherit, were native born citizens.

APPROVED, February 13, 1856.

————

[No. 243.]          AN ACT

To pay Golsberry Ray a certain sum of money for provisions and forage furnished United States mounted troops during the war with the Creek Indians in 1837.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Comptroller of **To pay G. Ray** the Public accounts of this State is requested to draw his warrant on the State Treasurer in favor of Golsberry Ray of the county of Pike, for the sum of one hundred dollars in payment for provisions and forage furnished United States troops during the war with the Creek Indians in 1837 ; and the same must be paid out of any money not otherwise appropriated.

APPROVED, Feb. 15, 1855.

————

[No. 244.]          AN ACT*

For the relief of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That hereafter, when it becomes necessary for Charles P. Robinson, William Boyles, or John Smith, of Mobile, Oscar M. Wat-

69                    DEFENDANT'S EXHIBIT N.
                                              1855-56.

kins, of Talladega county, Edward C. Bullock, Jefferson Buford, Thomas K. Appling, Henry C. Hart, John H. Dent, A. M. Sandford and William L. Ballard, of Barbour county, Henry Maury, of Mobile, James T. Brock and Mark A. Hill, of Chambers county, M. S. Kenan of Dallas county, Richebourg Gaillard of Wilcox county, and George W. Stone, of Lowndes county, to take the oath against duelling required by section 110 of the Code, the said oath shall be confined in point of time to the first day of November, 1855.

*Recame a law wit out the Executive approval, the five days having elapsed before action was had upon it by the Executive.

[No. 245 .]            AN ACT

For the relief of the purchasers and heirs of the estate of Authur Fant, deceased.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That all claims which the State of Alabama may or might have had in or to the real estate of Arthur Fant, decesed, late an alien resident of Wilcox county, is hereby relinquished to the purchasers of said estate at the administrator's sale thereof heretofore made, upon their filing in the Probate Court of said county, their assent, in writing, to the provisions of this act, and that the estate of the said Arthur Fant shall descend and be administered in all respects as if the said Fant had been a native born citizen of the United States.

APPROVED, Feb. 1, 1856.

[No. 246.]            AN ACT

To compensate Stephen M. Swain of Mobile county.

SECTION 1. *Be it enacted by the Senate and House*
22

*of Representatives of the State of Alabama in General Assembly convened,* That the sum of thirty dollars and twenty-seven and a half cents be, and the same is hereby appropriated to Stephen M. Swain, on account of expenses incurred by him in arresting and bringing one Joseph Bolles upon a charge of murder, from the State of Mississippi to the city of Mobile.

Sec. 2. *And be it further enacted,* That the Comptroller be, and he is hereby authorized and required to draw his warrant upon the Treasurer in favor of Stephen M. Swain for the said sum of thirty dollars and twenty-seven and a half cents, to be paid out of any money not otherwise appropriated.

Approved, February 2, 1856.

———

[No. 247.]        AN ACT

For the benefit of the Administrator of the estate of Caroline Key, late of Russell county.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Americus C. Mitchell, of Barbour county, administrator of the estate of Caroline Key, late of Russell county, shall be authorized to remove the administration of said estate from the Probate Court of Russell to the Probate Court of Barbour county; and the Probate Court of Russell county shall make out a complete transcript of all the transactions of said administrator in said Court respecting said estate, and shall, together with the original papers relating to the same, transmit the same to the Judge of Probate Court of Barbour, and the administrator shall proceed in Barbour county as if it had been originally commenced therein.

Approved, Dec. 21, 1855.

[No. 248.]      AN ACT

For the relief of Robert A. Johnston, Administrator, &c.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Robert A. Johnston, administrator of the estate of Marion B. Breedlove, deceased, be allowed and authorized to compromise the bad and doubtful debts belonging to said estate, upon satisfactory evidence, by competent proof, to the Judge of the Probate Court for the county of Macon, that it would be to the interest of said estate to make such compromises.

APPROVED, Dec. 17, 1855.

---

[No. 249.]      AN ACT

For the relief of William H. Mayner.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the administrator of the estate of Daniel McDougald, in Russell county, be, and he is hereby authorized and empowered to pay William H. Mayner, out of the assetts belonging to said estate, any money which the said Mayner has been forced to pay by judgment and execution, by reason of his acting as the agent of the administrator of the estate, in the State of Georgia, after the death of said McDougald : *Provided,* the said Mayner shall prove to the satisfaction of the Judge of Probate of Russell county, that he has paid the amount claimed by him to the said administrator, and that the judgments were obtained against him by reason of his acting as agent of said parties in Georgia : *And be it further provided,* that the receipt of said Mayner to the administrator shall be a sufficient voucher for him in his settlement of said estate with the Probate Court.

*Money to be returned.*

APPROVED, February 15, 1856.

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 42 of 130   Page ID #13

DEFENDANT'S EXHIBIT N

No. 250.]          AN ACT

To refund money to the " True Blues."

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of twelve **A'n't refunded** hundred dollars, be, and the same is hereby refunded to the Montgomery " True Blues," out of any monies in the State Treasury, not otherwise appropriated: the same being the amount with interest expended by said Company, for the purchase of tents and camp equipage to which they were entitled from the State.

APPROVED, Feb. 1, 1856.

[No. 251.]          AN ACT

Making appropriations to certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That H. Capers Moore, be **H. C. Moore.** allowed the sum of one hundred and ninety dollars for services rendered to the Committee on State Apportionment, as Clerk during the present Session of the General Assembly, and the further sum **J. P Stow.** of thirty-four 50-100 dollars, to J. P. Stow, for work done on the State House, and that the Comptroller of Public Accounts, be, and he is hereby authorized to draw his warrant on the Treasury, in favor of the said H. Capers Moore and J. P. Stow, for the amounts hereby appropriated, to be paid out of any money in the Treasury unappropriated.

APPROVED, February 15, 1856.

DEFENDANT'S EXHIBIT NO - 56.

[No. 252.]          AN ACT

For the relief of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of three hundred and eighty-nine 75-100 dollars, be paid to William B. Bell, for articles furnished the two Houses of the General Assembly and the different State officers at the Capitol.   **Wm. Bell.**

SEC. 2. *Be it further enacted,* That the sum of fifty-five dollars be paid to Brittain & Blue, for printing two hundred and fifty copies of the report of the Inspectors of the Penitentiary, and the Comptroller is hereby required to draw his warrant on the Treasurer in favor of said persons, for said sums.   **Brittan & Blue**

APPROVED, Feb. 15, 1856.

———

[No. 253 ]          AN ACT

For the relief of Williams Chancellor, of Coosa county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Treasurer of the county of Coosa, be, and he is hereby authorized and required to pay out of the funds that may come into his hands, by reason of fines and forfeitures in said county, the sum of one hundred and fifty dollars to Williams Chancellor ; *Provided,* **Proviso.** That this act shall not be so construed as to prevent the said Treasurer, from paying any claims that may have been presented at the date of this act, against said county, in the order in which they have been presented as required by Section 791 of the Code.

APPROVED, Feb. 15, 1856.

DEFENDANT'S EXHIBIT N
174

1855–'56.

[No. 254.]              AN ACT

To compensate Thomas S. Locke, of Barbour
county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the sum of one hun-
**Amount.** dred and fifty dollars, be, and the same is hereby
appropriated to Thomas S. Locke.

SEC. 2. *Be it further enacted,* That the Comp-
troller of Public Accounts, be, and he is hereby
**Warrant to be** authorized and required to draw his warrant upon
**drawn.** the Treasurer in favor of Thomas S. Locke, for the
sum of one hundred and fifty dollars, to be paid
out of any money not otherwise appropriated.

APPROVED, February 14, 1856.

————

[No. 255.]              AN ACT

For the relief of M. W. Creagh, Guardian of the
minor heirs of S. W. Creagh, deceased.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the Judge of the Pro-
**To take charge** bate Court of Wilcox county, be hereby authorized
**of estate.** to take protection of the estate of the minor heirs
of S. W. Creagh, late of Clarke county, and that
M. W. Creagh, Guardian of said minor heirs,
make his settlement as said Guardian, with the
said Judge of the Probate Court, of the said county
of Wilcox.

SEC. 2. *Be it further enacted,* That the Judge
of Probate of the said county of Clarke, be hereby
**Copy to be** required to transmit to the Probate Court of Wil-
**transmitted.** cox county, a certified copy of all the settlements
and other proceedings, of the said M. W. Creagh,
as Guardian of the said Minor heirs of the said
G. W. Creagh, deceased, as may be on file or on
record in his office.

APPROVED, Feb. 15, 1856.

DEFENDANT'S EXHIBIT N_____

[No. 256.]                    AN ACT

For the relief of John Wilson and Charles P.
Samuel.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That hereafter the town
lots of John Wilson and Charles P. Samuel, shall
be exempt from the corporation taxes, of the town     **Exempt from
of Talladega, while public schools are held and       tax.**
carried on, on said lots.

APPROVED, Dec. 17, 1855.

———

[No. 257.]                    AN ACT

For the relief of Spencer Moore and Manimia
Kirsey.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That Spencer Moore and
Manimia Kinsey, of the county of Macon, are       **Exempt from
exempt from the operations of Sections 3231 and   operations of
3232 of the Code of Alabama.                       Code.**

———

\* This bill was vetoed by the Governor, and then passed by the con-
stitutional majority, Jar. 26, 1856.

———

[No. 258.]                    AN ACT

For the relief of the Central Plank Road Com-
pany.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the tax collector of   **Requirement
Coosa county, be authorized and required to collect  of tax collec-
the State and county tax against the Central Plank   tor.**
Road Company, for the fiscal year ending first of

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 46 of 130   Page ID #1389

DEFENDANT'S EXHIBIT N

January, 1855, for the Capital Stock of said Road, as is assessed at the value of forty thousand dollars, and at the rate of twenty-five cents for each hundred dollars of said value, instead of the tax as assessed and returned by the Assessor of said county, for said fiscal year.

APPROVED, February 7, 1856.

---

[No. 259.]            AN ACT

For the relief of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That James Steel, J. H. Steel, and B. L. Dufreese be, and they are hereby respectively released and absolved from the payment of all the interest that has heretofore accrued since the 7th day of August, 1852, upon the amount of a promissory note executed by them the 7th day of August, 1848, and due and payable the 7th day of August, 1852, to Reuben Chapman, Governor of this State, and his successors in office, with interest from date, for one hundred and ninety-five 40-100 dollars, the consideration of said note being the amount of purchase money due for portion of sixteenth section land, in township 23, of range 9, east in Bibb county ; *Provided,* That the principal of said note and the interest thereon to 7th August, 1852, is paid in or before the first day of March next, after the passage of this act.

APPROVED, Jan. 25, 1856.

*(margin note: Released from paying int. rest.)*

---

[No. 260.]            AN ACT

For the relief of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Martin Peter, B. L.

Defreese, and Edward H. Bernhard be, and they are hereby respectively absolved and released from *Released from the payment of all the interest that has heretofore the payment of interest.* accrued since the 7th day of August, 1852, upon the amount of a promissory note executed by them the 7th day of August, 1848, and due and payable the 7th day of August, 1852, to Reuben Chapman, Governor of the State, and his successors in office, with interest from date for three hundred and forty-four 95-100 dollars. The consideration of said note being the amount of purchase money due for a portion of the senteenth Section in township 23 of range 9, east in Bibb county.

*Provided,* That the principal of said note and *Proviso.* the interest thereon to the 7th August, 1852, is paid on or before the 1st day of March, after the passage of this act.

APPROVED, Jan. 25, 1856.

———

[No. 261.]              AN ACT

To enable Brittan & Blue, late State Printers, to have a certain claim against the State adjudicated.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in Gen e ral Assembly convened,* That the firm of Brittan & Blue, late State printers of this State, shall be em- *Empowered to* powered to bring a suit and proceed to the trial *bring suit.* thereof, for a certain claim alledged by them to be due to them by the State of Alabama, for a portion of the pay for the printing of the Report of the Comptroller of Public Accounts, made to the General Assembly on the 14th day of November, 1853, and that no agreement to arbitrate the said claim, or submission of the same to arbitration, or any award on such, or any arbitration, shall in any way be set us or pleaded by the defendant, against said claim; but that the same shall be tried and adjudicated as if there had never been any such agreement, arbitration or award; *Provided,* however, That it shall be competent for the defendant

23

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 48 of 130   Page ID #1391
DEFENDANT'S EXHIBIT N

in said suit to introduce proof on such trial, to show that the said Brittan & Blue have been over paid on said printing ; and upon the establishment of that fact before the jury, the defendant shall be entitled to verdict and judgment for the amount of such over payment, with interest from the date thereof.

Sec. 2. *Be it further enacted,* That the said Brittan & Blue, their survivor or assigns, shall have six months from the passage of this act, within which to commence the suit aforesaid ; and that if so commenced, it shall not be lawful for the defendant to plead the statute of limitations against the said Brittan & Blue, their survivor or assigns, but the said suit shall be tried on its merits only.

*Time suit to be commenced.*

Sec. 3. *Be it further enacted,* That the Governor shall appoint, at a reasonable fee, an attorney at law to appear and defend for the State, and the fee shall be paid out of any money in the treasury not otherwise appropriated in the warrant of the proper officer.

Approved, Feb. 15, 1856.

---

[No. 262.]     AN ACT

For the relief of William T. Webb.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Commissioner for the Branch of the Bank of the State of Alabama at Mobile be authorized and required to surrender to William T. Webb his note in said bank for eight hundred dollars, together with the two principle notes to which said note is collateral, which notes were given to said branch bank in part for a tract of land known as the Barnet Tract, in Mobile county ; *Provided,* That said William T. Webb shall execute to said branch bank a new note under good and approved security for said sum of eight hundred dollars and all interest due and payable

*otes to te surrendered.*

on the first day of January, one thousand eight hundred and forty-eight.

Approved, February 15, 1856.

---

[No. 263.]          AN ACT

To compensate J. W. Faith, the Sheriff of Washington County.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the sum of three hundred and thirty-eight 75-100 dollars is hereby appropriated to pay J. W. Faith, Sheriff of Washington county for so much money by him paid for the conveyance and guarding B. F. Barton, a convict to the Penitentiary, from Washington county, and the Comptroller is required to draw his warrant on the Treasurer in favor of the said Faith for the said sum of three hundred and thirty-eight 75-100 dollars.

Approved, Feb. 14, 1856.

Amount to be paid.

---

[No. 264.]          AN ACT

For the relief of David B. Driskell and others of Benton County.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That from and after the passage of this act, that David B. Driskell, Mark Driskell, Washington Driskell, David Driskell, James Driskell, William Driskell, and Thomas Durham of Benton county be, and they are hereby attached to precinct No. 1, in said county, and have all the rights and privileges of voting and rendering public services and holding office in the said precincts as citizens of the same.

Approved, January 17, 1856.

Attach to certain precinct

Case 3:21-cv-00518-MY    Document 108-1    Filed 01/09/23    Page 50 of 130    Page ID #1393

DEFENDANT'S EXHIBIT N

[No. 265.]  AN ACT

Making an appropriation to pay Edmund Reeves, Jailor of Jackson county, for victualing a prisoner, confined in the Jail of said county.

Comptroller to draw warrant

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the Comptroller of Public Accounts, be and he is hereby authorized to draw his warrant on the State Treasury, in favor of Edmund Reeves, Jailor of Jackson county, for the sum of three hundred and forty-four 40-100 dollars, the amount of his fees, for keeping and feeding George Walker, a State prisoner, charged with murder; *Provided*, That the said Edmund Reeves, shall give bond with two good securities, payable to the Governor of the State of Alabama, and his successors in office, which shall be approved by the Governor, and filed in the office of the Comptroller, in the sums of three hundred and forty-four 40-100 dollars, conditioned that if said George Walker, should hereafter be tried and convicted and the amount of the Jail fees, is made of his property or effects or paid by him in any way; then the said Edmund Reeves, is to refund to the Treasurer of the State of Alabama, the amount appropriated by this act.

Preriso.

APPROVED, Jan. 18, 1856.

———

[No. 266.]  AN ACT

For the relief of William Connaway, Tax Collector, of Coosa county.

Time for payment extended.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the time for the payment of said twenty-one hundred and fifty-four dollars be extended, and made payable in three equal annual instalments; *Provided*, That said William Connaway, shall make three notes for

each of said instalments, payable to the Comptroller of Public Accounts, for the State of Alabama, together with Ebenezer Pond, Williams Chancellor, Albert Crumpler, David Lawson, Noah Whetstone and Walter Knight, who are his securities on his official bond, with six other good and sufficient securities, and due on the first day of February, A. D. 1857, 1858 and 1859, and, *Provided further*, That said sureties on the official bond of said Connaway, may have the option, each or any portion of them, to give their several notes, for their pro rata liability on account of said loss, due and payable as above, secured by not less than two sufficient sureties each, or by deed of trust upon real or personal estate; in each case, said notes or the sufficiency of such deed of trust or mortgage to be approved of by the Judge of the Probate Court, of said county of Coosa; and *Provided further*, That nothing in this act, shall be so construed as to impair the ultimate liability of any one of the sureties on the official bond of said William Connaway, tax collector as aforesaid.

*Proviso.*

*Privilege of sureties.*

*Proviso.*

APPROVED, February 15, 1856.

————

[No. 267.]      AN ACT

For the benefit of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the following sums of money, be, and the same is hereby appropriated for the benefit of the following persons, to wit:

*Appropriation*

The sum of fifty-one 45-100 dollars, to Alfred Robertson, Clerk of the Circuit Court, of Tuskaloosa county, for his fees in the case of Henry W. Collier, Governor of the State of Alabama, against Samuel G. Frierson and others.

*Robertson.*

The sum of twenty-two 90-100 dollars, to John B. Bruce, Sheriff of Marengo county, for victualing and clothing of prisoners, confined in the jail of

*Bruce.*

1855-'56.

DEFENDANT'S EXHIBIT N

said county, and other purposes, for the years 1850 and 1851.

**Skipper.** The sum of ninety-four 30-100 dollars, to Arther M. Skipper, Sheriff of Henry county, for victualing one Moses Livingston, a States prisoner and other services.

**Galloway.** The sum of twenty-four dollars, to M. C. Galloway, for advertising the proclamation of Governor Collier, as to voting for a Convention, by order of William Garrett, Secretary of State.

**& D C Webb.** The sum of one hundred and eighty dollars, to Ira Webb and David C. Webb, Agents appointed by the Governor of the State of Alabama, to arrest one Bramlet, charged with murder, and who made his escape to the State of South Carolina.

**Wenneday.** The sum of twenty-five dollars, to Thomas Wennady, for services rendered in guarding one John Conner, of Conecuh county.

**Faith.** The sum of one hundred and fifty dollars, to J. W. Faith, Sheriff of Washington county, for arresting one John M. Wilkerson, a fugitive from justice, and returning him to Dale county.

**Burton.** The sum of six dollars, to Martin Burton, for repairing desks and chairs of the State Capitol.

SEC. 2. *Be it further enacted,* That the Comptroller of Public Accounts, be, and he is hereby **Comptroller to** authorized and required to draw his warrant on **draw war-** the Treasurer in favor of each person named in the **rant.** first Section of this act, for the respective amounts therein allowed to be paid out of any money in the Treasury, not otherwise appropriated.

SEC. 3. *Be it further enacted,* That the sum of two hundred dollars, be, and the same is hereby appropriated out of any money in the Treasury not otherwise appropriated, to pay Jesse Burges, former Sheriff of DeKalb county, for services rendered in victualing and guarding one Mercer and John Nicholson, States prisoners; and also, one Westley Ware and Edward Stiff, States prisoners, and other services, and that the Comptroller of Public Accounts, be, and he is hereby authorized to draw his warrant on the Treasury, for the amount herein named, in favor of the said Burges.

APPROVED, Feb. 15, 1856.

DEFENDANT'S EXHIBIT N_____

**[No. 268.]**                    **AN ACT**

For the benefit of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the sum of one hundred and four dollars be appropriated to the payment of George W. Thagard, for services rendered, **Thagard.** in recapturing one Charles L. Camp, who broke jail in Butler county, and was afterwards tried and convicted of larceny; for services rendered in going to Florida, and recapturing one Herndon Smith, who fled from justice in this State and was brought back.

That the sum of one hundred and three 30-100 dollars, be appropriated to the payment of H. W. **Burge.** Burge, Agent in behalf of the State of Alabama, in going to the State of Mississippi, and bringing one Ely Myrick, to this State, by virtue of a proclamation of the Executive of this State. Said Myrick, arrested under a charge of felony; and moreover, that the sum of two dollars, be appropriated to the payment of the said H. W. Burge, for amount paid V. M. Benham, Secretary of State, for demand on the Governor of Mississippi, of the said Myrick.

That the sum of one hundred dollars, be appropriated to pay J. C. Henderson, for services rendered, in going to the State of Georgia, to arrest **Henderson.** one J. W. Pitman, and returning the said Pitman to this State for trial, charged with horse stealing; and also, the contingent expenses connected with the same.

That the sum of forty-two 30-100 dollars, be appropriated to pay William D. Walker, jailor of **Walker.** Marshall county, for victualing George W. Thompson, seventy-two days, imprisoned for the crime of bigamy; for victualing Mercer Nicholson, a prisoner, twenty days; for victualing Wm. Dempy, a prisoner, thirty days; for victualing John D. Lurrett, a prisoner, twelve days; for feeding Colbert Blankenship, seven days.

That the sum of eighty-four 10-100 dollars, be

DEFENDANT'S EXHIBIT N

**1855–'56.**

Stroup.

appropriated to pay Joseph Stroup, Sheriff of Morgan county, for services rendered, in keeping one William Campbell, a prisoner, sixty-six days; for keeping Jonathan Orr, a prisoner, sixty-six days; for keeping Thomas J. Morris, a prisoner, sixty-six days; for keeping Bailey Turner, a prisoner, sixty-six days; for keeping Andrew McCombs, a prisoner, nineteen days.

Eubanks.

That the sum of twenty-seven 27-100 dollars, be appropriated to pay William Eubanks, late tax collector, of Lawrence county, for an amount over paid by said Eubanks, in a settlement with the Comptroller of Public Accounts, for the year 1853; *Provided*, the Comptroller is satisfied that said Eubanks, over paid said sum as tax collector.

Comptroller required to draw warrant.

Sec. 2. *Be it further enacted*, That the Comptroller of Public Accounts, be, and he is hereby authorized to draw his warrant on the State Treasurer, in favor of each person named in the first Section of this act, for the respective amounts therein allowed, to be paid out of any moneys not otherwise appropriated.

Approved, February 15, 1856.

———

[No. 269.]          AN ACT*

For the relief of Jane Cothrane, of the county of Perry

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That from and after the passage of this act, Jane Cothrane, of the county of Perry, and State of Alabama, be, and she is hereby authorized to make contracts, and collect by law all such sum or sums as may be agreed upon between her and any party or parties with whom she may contract, for the cure of cancers, scrofula, and all chronic diseases.

*This bill was vetoed by the Governor, and then passed by the constitutional majority, Jan. 21, 1856.

[No. 270.]      AN ACT

To pay certain claims against the State.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the following sums of money be, and the same are hereby appropriated to the payment of the following persons: To Edmund Reeves, for feeding prisoners confined in the jail of Jackson county, in the year 1855, seventy-three dollars and eighty cents.    Reeves.

To Greene T. Horton, for feeding Robert W. Leveat, in the jail of Fayette county, and carrying him to Houston, in Hancock county in the year 1855, seventy-nine dollars and fifty-three cents.    Horton.

To Martin Barton, for making thirty-seven frames to illuminate the capital on the 18th January, 1856.    Barton.

To W. B. Padgett, for the hire of two servants on the 8th January, 1856.    Padgett.

To Seaborn H. Jones, for arresting William Hanf, in Tennessee, on a requisition of the Governor of Alabama, and delivering him to the jailor in Jackson county, seventy dollars and forty cents.    Jones.

To W. B. and A. R. Bell, for stationery and other articles furnished for the use of the General Assembly and the different officers at the capitol, nine hundred and fourteen dollars and fifty-six cents.    W. B. & A. R. Bell.

SEC. 2. *Be it further enacted,* That the Comptroller of Public Accounts, be, and he is hereby authorized and required to draw his warrant on the Treasurer in favor of each person named in the first section of this act, for the respective amounts therein allowed to be paid out of any money in the Treasury not otherwise appropriated.

APPROVED, February 11, 1856.

24

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 56 of 130   Page ID #1399

DEFENDANT'S EXHIBIT N

[No. 271.]      AN ACT

For the relief of James J. Sublett and David Lankston.

**Money ordered paid for certain purposes named.** SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assmbly convnd,* That the sum of two hundred dollars, an equal amount to each, be, and the same is hereby appropriated to pay James J. Sublett and David Lankston, for services and expenses in arresting and prosecuting to conviction three men upon a charge of murder; and that the Comptroller draw his warrant for the sum of one hundred dollars in favor of said Sublett, and one hundred dollars for said Lankston, to be paid out of any money in the Treasury not otherwise appropriated.

APPROVED, February 14, 1856.

———

[No. 272.]      AN ACT

For the benefit of certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the following sums of money, be, and the same is hereby appropriated for the benefit of the following persons, to wit:

**Robertson.** The sum of thirty-seven 75-100 dollars, to Alfred Robertson, Clerk of the Circuit Court, of Tuskaloosa county, for fees in case of the State of Alabama, *vs.* Jefferson C. Vandyke, Comptroller of Public Accounts.

**Cowan & Martin.** The sum of thirty-six dollars, to Cowan & Martin, for printing revised rules of the practice in Chancery, &c., contracted for by the Judges of the Supreme Court, with the said Cowan & Martin.

**Raney.** The sum of fifty-seven 60-100 dollars, to D. H. Raney, jailor of Choctaw county, for victualing and keeping one William Hays, one hundred and sixty-one days, 30 cts. per day; and also, Nancy,

an (Indian,) twenty-six days, 30 cts. per day, with turnkey.

APPROVED, February 14, 1856.

———

[No. 273.]        AN ACT

To compensate Samuel K. Raburn, of Marshall county, for certain services therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Commissioners of Free Public Schools, for the county of Marshall, be, and they are hereby authorized and required to draw their warrant on the Superintendent of Education, for the sum of one hundred and forty- one dollars, in favor of Samuel K. Raburn, Clerk of the Circuit Court of Marshall county, for costs in- curred by the State of Alabama, in sundry suits had in said Court, on Sixteenth Section notes wherein the State failed in the prosecution, and was taxed with the costs. *Amount to be paid.*

SEC. 2. *And be it further enacted,* That the amount herein appropriated in the first section of this act, shall be paid out of the interest arising out of the 16th Section fund belonging to township 9, range 2 East in the county of Marshall.

APPROVED, February 14, 1856.

———

[No. 274.]        ACT ACT

For the relief of William Head, of Barbour county.

SECTION. 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That William Head, by virtue of his letters of administration, from the Probate Court of Barbour county, on the estate of John M. Head, is as fully authorized to administer upon said estate as if his letters had been granted by the Probate Court of Montgomery county. *Authori administ*

APPROVED, February 5, 1856.

[No. 275.]                    AN ACT

For the relief of John Neblett.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That so much of an act entitled an act "to divorce certain persons therein named," approved February 17, 1854, and which divorces S. Neblett from his wife Narcissee Neblett, be so amended as to read that John Neblett shall be divorced from his wife Narcissee Neblett.

APPROVED, February 1, 1856.

———

[No. 276.]                    AN ACT

To divorce Caroline Grubbs from her husband Morgan Grubbs.

Grubbs.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That Caroline Grubbs be, and she is hereby divorced from her husband Morgan Grubbs, in pursuance to a decree of the Chancery Court of the 12th Chancery District, Southern Division, made at the November term thereof, 1855.

APPROVED, February 15, 1856.

———

[No. 277.]                    AN ACT

To divorce Elijah Harris from his wife Martha Harris, and to divorce other persons therein named.

Harris.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That Elijah Harris be, and he is hereby divorced from his wife Martha Harris, pursuant to a decree of the Chancery Court of the 12th District, Southern Division, made at the November term of 1855.

Sec. 2. *Be it further enacted,* That James McGibony be, and he is hereby divorced from his wife Sarah Jane McGibony, pursuant to a decree of the Chancery Court of the 12th District, Southern Chancery Division of the State of Alabama, made at the November term of 1855.    McGibony.

Sec. 3. *Be it further enacted,* That Nancy J. Murray be, and she is hereby divorced from her husband Lovic P. Murray, pursuant to a decree of the Chancery Court of the 13th District, Middle Division, made at the May term thereof, 1855.    Murray.

Sec. 4. *Be it further enacted,* That Riley F. Perdue, be, and he is hereby divorced from his wife Priscella Perdue, pursuant to a decree of the Chancery Court of the 13th District, Middle Chancery Division, made at the November term, 1855.    Perdue.

Sec. 5. *Be it further enacted,* That William J. Hughs be, and he is hereby divorced from his wife Margaret Hughs, pursuant to a decree of the Chancery Court of the 25th District, Northern Division, made at the May term thereof, 1855.    Hughs.

Sec. 6. *Be it further enacted,* That Thomas H. Wiley be, and he is hereby divorced from his wife Ruthey Wiley, pursuant to a decree of the Chancery Court of the 17th District, Middle Division, made at the December term, 1855.    Wiley.

Sec. 7. *Be it further enacted,* That Mary C. Hutchison be, and she is hereby divorced from her husband Peter Hutchison, pursuant to a decree of the Chancery Court of the first District, Southern Division, made at the January term of 1856.    Hutchison.

Sec. 8. *Be it further enacted,* That Christine Maxwell be, and she is hereby divorced from her husband John Maxwell, pursuant to a decree of the Chancery Court of the first District, Southern Division, made at the January term thereof, 1856.    Maxwell.

Sec. 9. *Be it further enacted,* That Margaret King be, and she is hereby divorced from her husband William King, pursuant to a decree of the Chancery Court of the 13th District, Middle Division, made at the November term, 1854.    King.

Sec. 10. *Be it further enacted,* That John A. Dedge be, and he is hereby divorced from his wife    Dedge.

DEFENDANT'S EXHIBIT N

1855–'56.                                                    190

Mary E. Dedge, pursuant to a decree of the Chancery Court of the first District, Southern Division, made at the January term thereof, 1856.

APPROVED, Feb. 14, 1856.

---

[No. 278.]              AN ACT

To divorce Daniel Cannon from his wife Jane Cannon.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the bonds of matrimony heretofore subsisting between Daniel Cannon and his wife Jane Cannon be, and the same are hereby dissolved, and that the said Daniel be, and he is hereby divorced from his said wife and freed from all the obligations of his said marriage with the said Jane, pursuant to a decree of the Chancery Court of the 25th District of the Northern Division of the State of Alabama.

APPROVED, February 1, 1856.

---

No. 279.]              AN ACT

To divorce Hulda Johnson from her husband Spencer Johnson, and other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That in pursuance to decrees of the several courts of Chancery hereinafter mentioned, the bonds of matrimony heretofore subsisting and herein after mentioned severally between the following named persons, and are hereby dissolved and annulled, viz:

1. That Hulda Johnson be, and she is hereby divorced from her husband Spencer Johnson, pursuant to a decree of the Chancery Court of the 23d District, Middle Division, made at the July term thereof, 1854.

DEFENDANT'S EXHIBIT N

2. That Levina Price be, and she is hereby di- Price. vorced from her husband Christopher Price, pursuant to a decree of the Chancery Court of the 26th District, Northern Division, made at the May term thereof, 1855.

3. That Harrison F. Bizzell be, and he is hereby Bizzell. divorced from his wife Emily O. Bizzell, pursuant to a decree of the Chancery Court of the 12th District of the Southern Division, made at the May term thereof, 1855.

4. That Richard Wright be, and he is hereby Wright. divorced from his wife Artemisea Wright, pursuant to a decree of the Chancery Court of the 1st District, Southern Division, made at the January term, 1855.

5. John C. Reese be, and he is hereby divorced Reese. from his wife Sarah Reese, pursuant to a decree of the Chancery Court of the 29th District of the Northern Division, made at the April term thereof, 1854.

6. That Mary Williams be, and she is hereby Williams. divorced from her husband Moses Williams, pursuant to a decree of the Chancery Court of the 10th District, Southern Chancery Division, made at the November term thereof, 1855.

7. That Nelson Cumings be, and he is hereby Cumings. divorced from his wife Nancy Cumings, pursuant to a decree of the Chancery Court of the 12th District of the Southern Chancery Division, made at the November term thereof, 1855.

8. That Ransom Ray be, and he is hereby di- Ray. vorced from his wife Rosey Elizabeth Ray, pursuant to a decree of the Chancery Court of the of the 14th District of the Middle Chancery Division, made at the November term thereof, 1855.

9. That Zackens Dowling be, and he is hereby Dowling. divorced from his wife Eliza Dowling, pursuant to a decree of the Chancery Court of the 10th District of the Southern Division of the State of Alabama, made at the November term thereof, 1855.

APPROVED, Feb 1, 1856.

as 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 62 of 130   Page ID #140

[No. 280.]    AN ACT

To divorce Thos. D. Broadway from his wife R. Minty Broadway.

**Broadway.**

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the bonds of matrimony heretofore subsisting between Thomas D. Broadway and his wife R. Minty Broadway be, and the same are hereby dissolved, and that the said Thomas D. be, and he is hereby divorced from his said wife and freed from all obligations arising from his said marriage with the said R. Minty, pursuant to a decree of the Chancery Court of the Seventh District, Middle Chancery Division of the State of Alabama.

APPROVED, February 5, 1856.

——

[No. 281.]    AN ACT

To divorce Mary E. Green, from her husband Rufus Green, and other persons therein named.

**Green.**

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly cnoveued,* That the bonds of Matrimony, heretofore subsisting between Mary E. Green and her husband Rufus Green, be, and the same are hereby dissolved, and that said Mary E. Green, and she is hereby divorced from her said husband, pursuant to a decree of the Chancery Court, of the fifteenth District, middle division of the State of Alabama.

**Blalock.**

SEC. 2. *Be it further enacted,* That William M. Blalock, be, and he is hereby divorced from his wife Elizabeth Blalock, and that the bonds of matrimony heretofore existing between them, be, and the same are hereby dissolved, so far as the said William M. Blalock is concerned, pursuant to a decree of the Chancery Court, of the eleventh District, Southern division.

SEC. 3. *Be it further enacted*, That the bonds of matrimony, heretofore existing between William B. Hamilton and Mary L. Hamilton, his wife, be, Hamilton. and the same are hereby dissolved, and that the said William B. Hamilton, be, and he is hereby divorced from his said wife, Mary L. Hamilton, pursuant to a decree of the Chancery Court, of the fourteen District of the Middle Chancery division of the State of Alabama.

APPROVED, Feb. 1, 1856.

----

[No. 282.]                  AN ACT

To divorce Nancy J. Sanderson from her husband Alexander J. Sanderson.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the bonds of matrimony heretofore subsisting between Nancy J. San- Sanderson. derson and her husband Alexander J. Sanderson, be, and the same are hereby dissolved, and that the said Nancy J. Sanderson, be, and she is hereby divorced from her said husband, and freed from all the obligations of her said marriage with him, pursuant to a decree of the Chancery Court, of the sixth District, Southern Chancery division, of the State of Alabama.

APPROVED, Jan. 14, 1856.

----

[No. 283.]                  AN ACT

To divorce Samuel M. Doolittle from his wife Sarah O. Doolittle.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That in pursuance to a decree of the Chancery Court, of the sixteenth District, of the Middle Chancery division, the bonds of matrimony heretofore subsisting between

25

Doolittle.

Samuel M. Doolittle and his wife Sarah O. Doolittle, be, and the same are hereby dissolved and held for naught, so far as said Samuel M. Doolittle is concerned.

APPROVED, December 4, 1855.

———

[No. 284.]    AN ACT

To divorce Susannah Caple from her husband Samuel Caple, and other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the bonds of matrimony heretofore existing between Susannah Caple and her husband Samuel Caple, be, and the same are hereby dissolved, and that the said Susannah Caple, be, and she is hereby divorced from her husband Samuel Caple, and freed from all obligations of her said marraige, pursuant to a decree of the Chancery Court, of the twenty-first District, Middle division of the State of Alabama.

Caple.

SEC. 2. *Be it further enacted,* That the bonds of matrimony heretofore existing between Wilson Kirkland and his wife Lucy A. Kirkland, be, and the same are hereby divorced, and that the said Wilson Kirkland, be, and he is hereby divorced from his said wife, Lucy A. Kirkland, and freed from all the obligations arising from his said marriage with the said Lucy A. Kirkland, pursuant to a decree of the Chancery Court, of the eleventh District, Southern division.

Kirkland.

SEC. 3. *And be it further enacted,* That the bonds of matrimony, heretofore subsisting between Isaiah Irvine and his wife Mary F. Irvine, be, and the same are hereby dissolved, and that the said Isaiah Irvine, be, and he is hereby divorced from his said wife, Mary F. Irvine, and freed from all the obligations of his said marriage, pursuant to a decree of the Chancery Court, of the eleventh District, of the Southern Chancery division of the State of Alabama.

Irvine.

APPROVED, February 2, 1856.

DEFENDANT'S EXHIBIT N

[No. 285.]          AN ACT

To divorce John Sullivan from his wife Sarah Sullivan.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the bonds of matrimony, heretofore subsisting between John Sullivan and his wife Sarah Sullivan, be, and the same are hereby dissolved, and that the said John Sullivan, be, and he is hereby divorced from his said wife Sarah Sullivan, pursuant to a decree of the Chancery Court, of the twenty-second District, Middle division of the State of Alabama.

Sullivan.

APPROVED, Jan. 14, 1856.

———

[No. 286.]          AN ACT

To divorce Gabriel Lovvom from his wife Mary Lovvom.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That the bonds of matrimony, heretofore subsisting between Gabriel Lovvom and his wife Mary Lovvom, be, and they are hereby dissolved, so far as the said Gabriel Lovvom is concerned, pursuant to a decree of the Chancery Court, of the thirty-ninth District, of the Northern Division of the State of Alabama, at the August term thereof, 1855.

Lovvom.

APPROVED, Dec. 17, 1855.

———

[No. 287.]          AN ACT

To divorce certain persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in Gene-*

**1855–'56.**

DEFENDANT'S EXHIBIT N

*ral Assembly convened,* That in pursuance of decrees of different Chancery Courts of this State, hereinafter refered to the bonds of matrimony, heretofore solemnized and subsisting between the following named persons, be, and the same is hereby dissolved and held for naught, viz:

**Burgess.**

1. That Samuel L. Burgess be divorced from his wife Mary Burgess, in pursuance to a decree of the Chancery Court, of the thirty-seventh District of the Northern Division.

**Martin.**

2. That Nancy Martin be divorced from her husband William G. Martin, in pursuance to a decree of the Chancery Court of the twenty-first Chancery District, Middle Division.

**Box.**

3. That John G. Box be divorced from his wife Rebecca J. Box, in pursuance to a decree of the Chancery Court of the twenty-fifth District, Northern Division.

**Eiland.**

4. That Elizabeth Eiland be divorced from her husband Absalom Eiland, in pursuance to a decree of the Chancery Court of the eleventh District of the Middle Division.

APPROVED, Dec. 17, 1855.

[No. 288.]          AN ACT

To divorce Mary E. Gilder from her husband Thadews W. Gilder, and to divorce other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Mary E. Gilder, be, and she is hereby divorced from her husband Thadews W. Gilder, pursuant to a decree of the Chancery Court of the fourth District, Southern Division, made at the March term thereof, 1855.

**Gilder.**

SEC. 2. *Be it further enacted,* That Elizabeth Benson, be, and she is hereby divorced from her husband Nathaniel W. Benson, pursuant to a decree of the Chancery Court, of the thirtieth District, Northern Division, at the June term thereof, 1855.

**Benson.**

DEFENDANT'S EXHIBIT N

197                                    **1855–'56.**

SEC. 3. *And be it further enacted*, That **Mary M. Kilpatrick**, be, and she is hereby divorced from her husband Isaac Kilpatrick, pursuant to a decree of the Chancery Court, of the twelfth District, Southern Division, made at the November term thereof, 1855.

**Kilpatrick.**

SEC. 4. *And be it further enacted*, That **Medleton Dubose**, be, and he is hereby divorced from his wife Susan Dubose, pursuant to a decree of the Chancery Court, of the fourth District, Southern Division, made at the January term, 1855.

**Dubose.**

APPROVED, February 15, 1856.

————

[No. 289.]            AN  ACT

To divorce Jesse Kinsey from his wife Monemia Kinsey, and other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That in pursuance of decrees of the General Chancery Courts hereinafter mentioned and referred to the bonds of matrimony heretofore solemnized and subsisting between the following named persons, be, and the same are dissolved and held for naught, viz:

1. That Jesse Kinsey be, and he is hereby divorced from his wife Monemia Kinsey, pursuant to a decree of the Chancery Court of the Thirteenth District, Middle Division of the State of Alabama, made at the November term thereof, 1855.

**Kinsey.**

2. That Mary E. Crawford be, and she is hereby divorced from her husband Thomas G. Crawford, pursuant to a decree of the Chancery Court, of the Seventh District, Southern Chancery Division of the State of Alabama, made at the July term thereof, 1854.

**Crawford.**

3. That Eliza Betner be, and she is hereby divorced from her husband Charles A. Betner, pursuant to a decree of the Chancery Court of the First District, Southern Division, made at the April term thereof, 1855.

**Betner.**

DEFENDANT'S EXHIBIT N
105

Hodgins.

4. That Sarah A. Hodgins be, and she is hereby divorced from her husband James Hodgins, pursuant to a decree of the Chancery Court of the Thirteenth District, of the Middle Division of the State of Alabama, made at the November term thereof, 1855.

Freeman.

5. That Holman Freeman be, and he is hereby divorced from his wife Eliza Freeman, pursuant to a decree of the Chancery Court of the Thirteenth District of the Middle Chancery Division of the State of Alabama, made at the November term thereof, 1854.

Winters.

6. That John Winters be, and he is hereby divorced from his wife Angenita Winters, pursuant to a decree of the Chancery Court of the Twelfth District, Southern Division, made at the November term thereof, 1855.

Cameron.

7. That George A. Cameron be, and he is hereby divorced from his wife Milly Ann Cameron, pursuant to a decree of the Chancery Court of the 12th District of the Southern Division of the State of Alabama, made at the November term thereof, 1855.

Allen.

8. Sarah Ann D. Allen be, and she is hereby divorced from her husband Edwin W. Allen, pursuant to a decree of the Chancery Court of the 12th District, Southern Division of the State of Alabama, made at the November term thereof, 1855.

Eley.

9. That John W. Eley be, and he is hereby divorced from his wife Elizabeth Eley, pursuant to a decree of the Chancery Court of the 12th District, Southern Division of the State of Alabama, made at the May term thereof, 1855.

Baber.

10. That Sarah E. Baber be, and she is hereby divorced from her husband James W. Baber, pursuant to a decree of the Chancery Court of 12th District, Southern Division, made at the May term thereof, 1854.

Lowman.

11. That Julia K. Lowman be, and she is hereby divorced from her husband George W. Lowman, pursuant to a decree of the Chancery Court of the 12th District, Southern Division of the State of Alabama, made at the November term thereof, 1855.

APPROVED, Jan. 25, 1856.

DEFENDANT'S EXHIBIT N

199                                    1855-'56.

[No. 290.]          AN ACT

To divorce Cornelia Brenan from her husband John
    E. Brenan, and other persons therein named.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That in pursuance of de-
crees of the several Courts of Chancery hereinafter
mentioned, the bonds of matrimony heretofore sol-
emnized and subsisting severally between the fol-
lowing named persons be, and the same are hereby
dissolved and held for naught, viz:

1. That Cornelia Brenan be divorced from her
husband John E. Brenan, pursuant to a decree of [margin: B enan.]
the Chancery Court of the Twentieth District of
the Middle Division of the State of Alabama, made
at the February term of said Court, 1855.

2. That Andrew J. Smith be, and he is hereby [margin: Smith.]
divorced from his wife Catharine Smith, pursuant
to a decree of the Chancery Court of the Thirtieth
District of the Northern Chancery Division of the
State of Alabama, made at the May term of said
Court, 1854.

3. That William Gilbert be, and he is hereby [margin: Gilbert.]
divorced from his wife Nancy Gilbert, pursuant to
a decree of the Chancery Court of the Sixth Dis-
trict of the Southern Division of the State of Ala-
bama, made at the April term of said Court, 1855.

4. That Joanna H. Smith be, and she is hereby [margin: Smith.]
divorced from her husband Robert P. Smith, pur-
suant to a decree of the Chancery Court of the
Fourteenth District, Middle Division, made at the
May term of said Court, 1855.

5. That Mary J. Scott be, and she is hereby di- [margin: Scott.]
vorced from her husband John A. J. Scott, pursu-
ant to a decree of the Chancery Court of the Sixth
District, Southern Division, made at the April
term of said Court, 1854.

6. That Rachel Horton be, and she is hereby di- [margin: Horton.]
vorced from her husband James H. Horton, pur-
suant to a decree of the Chancery Court of the
20th District of the Middle Division, made at the
July term of said Court, 1854.

DEFENDANT'S EXHIBIT N

**Cone.**

7. That Sarah Cone be, and she is hereby divorced from her husband Joseph H. Cone, pursuant to a decree of the Chancery Court of the 16th District of the Middle Chancery Division, rendered at the June term of said Court, 1855.

**Gurnett.**

8. That Henry L. Gurnett be, and he is hereby divorced from his wife Sarah Gurnett. pursuant to a decree of the Chancery Court of the 10th District, Southern Division of the State of Alabama, made at the November term thereof, 1855.

**Wilson.**

9. That John F. Wilson be, and he is hereby divorced from his wife Martha Wilson, pursuant to a decree of the Chancery Court of the 10th District, Southern Division of the State of Alabama, made at the November term thereof, 1855.

**Bancroft.**

10. That Mary L. Bancroft be, and she is hereby divorced from her husband Charles Bancroft, in pursuance of a decree of the Chancery Court of the First District, Southern Chancery Division, made at the April term thereof, 1855.

**Stickney.**

11. That Isabella Stickney be and she is hereby divorced from her husband Daniel H. Stickney, pursuant to a decree of the Chancery Court of the First District of the Southern Division, made at the April term thereof, 1854.

**Burk.**

12. That Willis A. Burk be, and he is hereby divorced from his wife Elizabeth Burk, pursuant to a decree of the Chancery Court of the 14th District, Middle Division, made at the May term thereof, 1855.

APPROVED, Jan. 7, 1856.

---

[No. 291.]      AN ACT

To divorce Thomas Carroll from his wife Rebecca Carroll, and to divorce other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That Thomas Carroll be, and he is hereby divorced from his wife Rebecca

201    DEFENDANT'S EXHIBIT N 56.

1855–56.

Carroll, pursuant to a decree of the Chancery Court of the 10th District, Southern Division, made at the November term of 1855.

SEC. 2. *Be it further enacted,* That Mary E. Starr be, and she is hereby divorced from her husband Richard T. Starr, pursuant to a decree of the Chancery Court of the 1st District, Southern Division, made at the January term thereof, 1856.    **Starr.**

SEC. 3 *Be it further enacted,* That Caroline A. Maffitt be, and she is hereby divorced from her husband Frederick A. Maffitt, pursuant to a decree of the Chancery Court of the 1st District, Southern Division, made at the January term thereof, 1856.    **Maffitt.**

SEC. 4. *Be it further enacted,* That James R. Grigsby be, and he is hereby divorced from his wife Mary C. Grigsby, pursuant to a decree of the Chancery Court of the 15th District, Middle Division, made at the June term thereof, 1855.    **Grigsby.**

SEC. 5. *Be it further enacted,* That Antonio Barcelonio be, and he is hereby divorced from his wife Ellen Barcelonio, pursuant to a decree of the Chancery Court of the 1st District, Southern Division, made at the January term, 1856.    **Barcelonio.**

SEC. 6. *Be it further enacted,* That Parmelia Blackman be, and she is hereby divorced from her husband Henry Blackman, pursuant to a decree of the Chancery Court of the 7th District, Southern Division, made at the July term thereof, 1855.    **Blackman.**

APPROVED, February 15, 1856.

---

[No. 292.]    AN ACT

To divorce Gerge W. Watson from his wife Maranda Watson, and divorce other persons therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Alsa B. McCarty be, and he is hereby divorced from his wife Isabella McCarty, pursuant to a decree of the Chancery Court of the 11th District, Southern Division, made at the May term of 1855.

26

1855—36                                    DEFENDANT'S EXHIBIT N

Blanset.

SEC. 2. *Be it further enacted,* That Elizabeth Blanset be, and she is hereby divorced from her husband James P. Blanset, pursuant to a decree of the Chancery Court of the 34th District, Northern Division, made at the June term of 1855.

Nixon.

SEC. 3. *Be it further enacted,* That Sarah F. Nixon be, and she is hereby divorced from her husband Edward P. Nixon, pursuant to a decree of the Chancery Court of the 35th District, Northern Division, made at the June term therof, 1855.

Sanderson.

SEC. 4. *Be it further enacted,* That Mary Ann Sanderson be, and she is hereby divorced from her husband Thomas Sanderson, pursuant to a decree of the Chancery Court of the 12th District, Southern Division, made at the November term thereof, 1855.

Watson.

SEC. 5. *Be it further enacted,* That George W. Watson be, and he is hereby divorced from his wife Maranda Watson, pursuant to a decree of the Chancery Court of the 15th District, Middle Division, made at the November term of 1855.

Myers.

SEC. 6. *Be it further enacted,* That John J. Myers be, and he is hereby divorced from his wife Sarah E. Myers, pursuant to a decree of the Chancery Court of the 11th District, Southern Division, made at the July term thereof, 1850.

Johnson.

SEC. 7. *Be it further enacted,* That Rachael Johnson be, and she is hereby divorced from her husband William Johnson, pursuant to a decree of the Chancery Court of the 28th District, Northern Division, made at the April term thereof, 1855.

Tell.

SEC. 8. *Be it further enacted,* That Jordon Tell be, and he is hereby divorced from his wife Mary Tell, pursuant to a decree of the Chancery Court of the 38th District, Northern Division, made at the August term thereof, 1855.

Miller.

SEC 9. *Be it further enacted,* That Caroline Miller be, and she is hereby divorced from her husband Thomas Miller, pursuant to a decree of the Chancery Court of the 7th District, Southern Division, made at the December term thereof, 1855.

Hardin.

SEC. 10. *Be it further enacted,* That William Hardin be, and he is hereby divorced from his wife Elizabeth Hardin, pursuant to a decree of the

DEFENDANT'S EXHIBIT N

203                                    1855–'56.

Chancery Court of the 19th District Middle Division, made at the May term thereof, 1854.

SEC. 11. *Be it further enacted,* That Ann Nathan be, and she is hereby divorced from her husband Hiram Nathan, pursuant to a decree of the Chancery Court of the 1st District, Southern Division, made at the January term thereof, 1855. — Nathan.

SEC. 12. *Be it further enacted,* That Ann M. Banks be, and she is hereby divorced from her husband William Banks, pursuant to a decree of the Chancery Court of the 2d District, Southern Division, made at the December term thereof, 1855. — Banks.

SEC. 13. *Be it further enacted.* That Frederica J. Conner be, and she is hereby divorced from her husband James J. Conner, pursuant to a decree of the Chancery Court of the 12th District, Southern Division, made at the November term thereof, 1855. — Conner.

SEC. 14. *Be it further enacted,* That John Sloan be, and he is hereby divorced from his wife Minerva Sloan, pursuant to a decree of the Chancery Court of the 12th District, Southern Division, made at the November term thereof, 1855. — Sloan.

SEC. 15. *Be it further enacted.* That Sylvester F. Davis be, and he is hereby divorced from his wife Mary Ann Davis, pursuant to a decree of the Chancery Court of the 28th District, Northern Division, made at the May term thereof, 1855. — Davis.

SEC. 16. *Be it further enacted,* That Mary Barnard be, and she is hereby divorced from her husband Job Barnard, pursuant to a decree of the Chancery Court of the 32d District, Northern Division, made at the June term thereof, 1855. — Barnard.

SEC. 17. *Be it further enacted,* That Margaret E. Mann be, and she is hereby divorced from her husband Lawrence L. Mann, pursuant to a decree of the Chancery Court of the 2d District, Southern Division, at the June term thereof, 1855. — Mann.

APPROVED, February 15, 1856.

[No. 293.]                    AN ACT

To divorce Martha C. Cowart from her husband
Wiley G. Cowart and other persons therein
named.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the bonds of matrimony
heretofore subsisting between Martha C. and her
husband Wiley G. Cowart be, and they are hereby
dissolved so far as the said Martha C. is concerned,
pursuant to a decree of the Chancery Court of the
Seventh Chancery District, Southern Division.

Cowart.

2d. That John C. Tillery be divorced from his
wife Frances L. Tillery, and that the bonds of mat-
rimony heretofore subsisting between said parties
be, and the same are hereby dissolved so far as the
said John C. is concerned, pursuant to a decree of
the Chancery Court of the 11th District, Middle
Division.

Tillery.

3d. That the bonds of matrimony heretofore sub-
sisting between Henry Yates and his wife Martha
J. Yates be, and the same are hereby dissolved so
far as the said Henry is concerned, pursuant to a
decree of the Chancery Court of the 12th District
of the Southern Chancery Division of the State of
Alabama.

Yates.

APPROVED, January 18, 1856.


[No. 294.]                    AN ACT

To divorce William B. Wilson from his wife Sarah
J. Wilson, and to divorce other persons therein
named.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That pursuant to the several
decrees of the Chancery Courts hereinafter men-
tioned, the bonds of matrimony heretofore subsist-
ing as hereinafter mentioned severally between the

following named persons be, and the  the same are hereby dissolved.

1. That William B. Wilson be, and is hereby **Wilson.** divorced from his  wife Sarah J. Wilson, pursuant to a decree of the Chancery Court of the Chancery District composed of the counties of Lowndes Southern Division made at November term thereof, 1855.

2. That Emanuel Pate be, and is hereby divorced **Pate.** from his wife Parmelia Pate, pursuant  to a decree of the Chancery Court of the Fifteenth District, Middle Division, made at the  November term thereof, 1855.

3. That Teresa Nicholson be, and  she is hereby **Nicholson.** divorced from her husband James N. Nicholson, pursuant to a decree of the Chancery Court of 25th District, Northern Division, made at the May term thereof, 1855.

4. That James B. Jett be, and  he is hereby divorced from his wife Nicey  Jett, pursuant  to a decree of the Chancery  Court of the  13th District, Middle Division, made at the October  term thereof 1854. **Jett.**

5. That Elven  Vainright be, and  he  is hereby **Vainright.** divorced from his wife Charlotte Vainright, pursuant to a decree of the  Chancery  Court of the 9th District, Southern Division, made at the November term thereof, 1855.

6. That David A. Hobbie be, and  he is hereby **Hobbie.** divorced from his wife Eliza Hobbie, pursuant to a decree of the Chancery  Court  of the Seventh District of the Southern Division, made at the November term thereof, 1855.

7. That Virginia West be, and she is hereby divorced from her husband Richard West,  pursuant to a decree of the Chancery Court of the Fifth District, Southern  Division, made  at the March term thereof, 1854. **West.**

8. That R. Ann A. Pruett be, and she is hereby **Pruett.** divorced from her husband  William R. Pruett, pursuant to a decree of the Chancery  Court of the 12th district of the Southern Division, made at the November term thereof, 1855.

9. That Isaiah A. Grant be, and he is hereby divorced  from his  wife Mary Grant, pursuant  to a **Grant.**

ase 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 76 of 130   Page ID #141

DEFENDANT'S EXHIBIT N

decree of the Chancery Court of the 14th District, Middle Division, made at the November term thereof, 1855.

Richardson.

10. That Esther J. Richardson be, and she is hereby divorced from her husband John S. Richardson, pursuant to a decree of the Chancery Court of the Ninth District, Southern Division, made at the November term thereof, 1855.

Flournoy.

11. That Sarah A. M. Flournoy be, and she is hereby divorced from her husband Archibald S. Flournoy, pursuant to a decree of the Chancery Court of the 12th District of the Southern Division, made at the November term thereof, 1855.

Murray,

12. That Barney Murray be, and he is hereby divorced from his wife Elizabeth Murray, pursuant to a decree of the Chancery Court of the 36th District, Northern Division, made at the February term thereof, 1855.

Williams.

13. That Willie Ann C. Williams be, and she is hereby divorced from her husband William Williams, pursuant to a decree of the Chancery Court of the 15th District of the Middle Division, made at the November term thereof, 1855.

Beck.

14. That Warren Beck be, and he is hereby divorced from his wife Lucinda Beck, pursuant to a decree of the Chancery Court of the 12th District, Southern Division, made at the November term thereof, 1855.

Chesnutt.

15. That Elizabeth Chesnutt be, and she is hereby divorced from her husband Alex. Chesnutt, pursuant to a decree of the Chancery Court of the 9th District, Southern Division, made at the November term thereof, 1855.

Carpenter.

16. That Mary Ann J. Carpenter be, and she is hereby divorced from her husband Jonathan Carpenter, pursuant to a decree of the Chancery Court of the 14th District, Middle Division, made at the May term thereof, 1855.

Byans.

17. That Elizabeth Byans be, and she is hereby divorced from her husband Robert Byans, pursuant to a decree of the Chancery Court of the 27th District, Northern Division, made at the April term thereof, 1855.

APPROVED, Feb. 17, 1856.

DEFENDANT'S EXHIBIT N

No. 265.]          AN ACT

To incorporate the Florence Wesleyan University.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Alexander J. P. Green, Samuel D. Weakley, John E. Moore, Richard W. Walker, James W. Stewart, Thomas Kirkman, Henry D. Smith, Edward A. O'Neal, Sidney C. Posey, Wiley T. Hawkins, James E. Saunders, William B. Wood, George W. Foster, Thomas J. Foster, John S. Kennedy, Daniel Coleman, Robert A. Baker, William Dickson, Robert W. Patton, Richard H. Reeves, Oscar F. Casey, Robert Paine, John B. M'Ferrin, John W. Hanner, Thomas H. Hobbs, John T. Baskerville, Thomas Boswell, E. R. Flewellen, Jefferson Hamilton, Thomas O. Summer, Benajmin W. Maclen, Edgan M. Sevoope, M. M. Henkle, David Clopton, Phineas T. Scruggs, John W. Rutland, H. C. Jones and Toliver Towles and their successors in office be, and the same are hereby constituted a body politic and corporate by the name and style of ''The President and Trustees of the Florence Wesleyan University,'' and by that name shall have perpetual succession, may sue and be sued, plead and be impleaded as natural persons, make, seal, deliver, and receive titles to property, both real and personal, may receive donations, bequests and devises of real and personal property, choses in action and money, may have and use a common seal with such device as they deem meet, and may do all other acts and things as are incident to such corporations and needful or proper for the establishment and prosperity of said University. Any seven of said trustees shall constitute a quorum for the transaction of business. *(Constituted a board.)*

SEC. 2. *Be it further enacted,* That said University shall be subject to the superintendance of the Alabama, Tennessee and Memphis Methodist Conference, whose resolutions and directions in reference to said Institution, if not in conflict with the provisions of this charter, shall be binding upon said trustees. *(Under whose superintendence.)*

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 78 of 130   Page ID #1421

DEFENDANT'S EXHIBIT N

**Officers to be elected.**

SEC. 3. *Be it further enacted,* That the Board of Trustees shall have power to elect from their own body a President, Vice-President, Secretary and Treasurer, and such other officers as they may deem necessary to a proper organization of said Institution ; and whenever any vacancies shall be occasioned in said board, by death, resignation or otherwise, such vacancies shall be filled by a majority of the remaining trustees present at any lawful meeting of the board.   The said board shall

**Powers of said board.**

have power to appoint and remove professors, tutors and other officers of said Institution as they may think proper, to fix their salaries, and define their duties, to grant diplomas, and confer all the degrees of literary distinctions usual in similar institutions in the United States, to establish in connection with said institution a law school, to procure an endowment for said University or for any professorship therein, to make by-laws and regulations for the government of the corporation, and to acquire, own and be professed in their corporate capacity, of property, real and personal, not to exceed in value the sum of one hundred and fifty thousand dollars.

SEC. 4. *Be it further enacted,* That no misnomer or misdescription of said corporation herein called in any will, deed, gift, grant, devise, or any other instrument of contract or conveyance shall in any wise defeat or violate the same ; but the same shall operate and take effect in like manner as if said corporation were therein named as hereby provided ; *Provided,* it sufficiently appear that such

**Proviso.**

conveyance or contract referred to the institution of learning, established at Florence, in this State, under the supervision and control of the Tennessee, Alabama and Memphis Conferences.

SEC. 5. *And be it further enacted,* That this act shall be deemed a public act, and be judicially taken notice of without being especially pleaded.

* This bill was vetoed by the Governor, and then passed by the constitutional majority, February 14, 1856.

DEFENDANT'S EXHIBIT N_____

[No. 267.]          AN ACT

To establish a Board of Physicians in the town of
Newton, Dale county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the
passage of this act, William B. Daster, Joshua S. **Board consti-**
Sappington, James J. Cox, William L. Milligan, **tuted.**
and Andrew J. Stephens be, and they are hereby
constituted a Board of Physicians for the town of
Newton, in the county of Dale, to be styled, "The
Medical Board of Physicians for the town of New-
ton.

SEC. 2. *And be it further enacted,* That a ma-
jority of said Board shall have power to fill all **Power to fill**
vacancies whenever they may occur, by death, res- **vacancies.**
ignation, removal or otherwise.

SEC. 3. *And be it further enacted,* That the said
Board shall be, and they are hereby constituted
the Medical Board of Newton, and it shall be their
duty to examine the applicants for permission to
practice medicine, to grant license, and to do all
other business requisite of said Board by law.

SEC. 4. *And be it further enacted,* That the said **Power to adopt**
Board shall have power to adopt a constitution and **constitution**
pass such by-laws under the provisions of said act **and laws.**
as they may deem necessary for their government;
*Provided,* that such by-laws do not conflict with
the Constitution of the United States, or the Con-
stitution of the State of Alabama.

SEC. 5. *And be it further enacted,* That the said **Procure seal.**
Board shall be, and they are hereby required to
procure and keep an official seal, with such device
as they may deem necessary; and they are hereby
declared able and capable in law or equity to re-
ceive and hold, have and enjoy donations of real
or personal property, not exceeding ten thousand
dollars to and for the use of said Board, and they
or their successors may receive and hold the same
by gift, grant, bequest, or purchase, either in fee,
simple or otherwise, to do and perform any other
acts incidental to corporate; *Provided,* that noth-

27

2.DEFENDANT'S EXHIBIT N

ing herein contained shall authorize said corporation to exercise banking privileges.

SEC. 6. *And be it further enacted,* That all laws contravening the provisions of this act, be, and the same are hereby repealed.

APPROVED, February 1, 1856.

———

[No. 268.]      AN ACT

To establish a Medical Board in the county of Pickens.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Joel E. Pearson, Thomas S. Owen, S. F. Hill, R. O. Beale, Thomas Boone, John J. W. Payne, Joseph E. May, and Thomas Wakefield and their associates and successors in office be, and they are hereby constituted a board of Physicians for the county of Pickens, to be known as the Pickens County Medical Board, and by that name may sue and be sued, plead and impleaded in every court of law and equity in this State, as a private person, and they or a majority of them are hereby authorized to elect a President and Secretary and such other officer or officers as they may deem necessary to a proper discharge of the duties of said corporation, and discharge all the duties incumbent on said board.

*Corporators.*

SEC. 2. *Be it further enacted,* That said board shall meet annually in the town of Carrolton, in said county, on the fourth Monday in April, and at such other times as they may desire, a majority of whom shall have full power to fill any vacancy or vacancies in said board.

*Meet annually.*

SEC. 3. *Be it further enacted,* That it shall be the duty of said board to examine applicants for permission to practice medicine, to grant permits therefor, to grant licenses to apothecaries to mix and vend medicines, and to do all other business authorized and required of medical boards in this State, and they may make all such by-laws, rules,

*Examine applicants.*

and regulations for the proper government of the body, not inconsistent with the constitution and laws of the State of Alabama.

Sec. 4. *Be it further enacted,* That said board are hereby required to have and to keep a record of their constitution and laws and licenses granted by them, and all other acts of said board, which record shall be subject to the inspection of any person interested, and they are hereby required to procure and keep an official seal with such device as they may deem suitable, and they and their associates and successors are hereby declared capable in law and equity to receive, hold or enjoy donations, of real or personal property, not exceeding ten thousand dollars in value ; to have and hold the same by gift, grant or purchase, in fee simple or otherwise, and shall have power to do and perform all other acts incident to or appertaining to medical boards in this State.

*Record to be kept.*

Sec. 5. *Be it further enacted,* That the jurisdiction of said medical board, in the exercise of its privileges and duties, shall extend over the county of Pickens, and licenses granted by said board shall be good and valid in all parts of the State ; no physician shall be allowed to practice medicine or surgery in said county unless he be licensed by said board, or unless such person is at this time a practicing physician, or a graduate of some medical college, or has a license from some medical board in this State ; nor shall any druggist vend any medicines or drugs in said county without first obtaining a license so to do from said medical board.

*Jurisdiction of board.*

Sec. 6. *Be it further enacted,* That nothing in this act shall be so construed as to effect the rights or privileges of those who may practice on the botanic system, as now regulated by law.

Approved, February 15, 1856.

DEFENDANT'S EXHIBIT N

1855–'56.                           212

[No. 269.]            *AN ACT

To incorporate the " East Alabama Male College,"
at Auburn, Macon county.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That a male college, be,
and the same is hereby established in the town of
Auburn, in the county of Macon, to be known as
" the East Alabama Male College."

**Names of Cor-**
**porators.**

SEC. 2. *Be it further enacted,* That Rev. John
B. Glenn, Col. N. J. Scott, A. Frazer, J. M.
Carlton, J. B. Ogletree, W. T. Davis, Isaac Hill,
C. Raiford, Maj. J. F. White, Col. F. W. Dillard,
Prof. John Darby, Dr. J. W. Jones, Maj. Wesley
Williams, Simeon Perry, Edwin Reese, Auburn;
Rev. W. A. McCarty, Rev. O. R. Blue, Rev. Mark
Andrews, Rev. Samuel Armstrong, Rev. C. D.
Oliver, Rev. W. B. Neal, Rev. F. G. Ferguson,
Rev. W. H. McDaniel, Rev. Lewis Dowdell, Rev.
E. J. Hamill, Alabama Conference; Daniel Pratt,
Autauga; Hon. John E. Groce, Talledega; Hon.
Wm. Garret, Coosa; Hon. E. R. Flewellen, Bar-
bour; Hon. James F. Dowdell, Rev. Sam. Harris,
Chambers; Rev. A. Lipscombe, D. D., David
Clopton, Esq., J. W. Willis, Hon. Robert Dough-
erty, Tuskegee; Hon. R. A. Baker, Duke W.
Goodman, Mobile; Dr. N. B. Powell, Dr. W. H.
Ellison, J. B. Banks, Esq., Hon. J. Cunningham,
Arnold Seals, Esq., Macon; John McTyeire, Rus-
sell; Frank. Gilmer; Montgomery county; John
B. Tate, Russell; John P. Nalls, Lowndes; Hon.
Thomas H. Watts, Montgomery; E. G. Richards,
Chambers; Rev. J. M. Jennings, Alabama Con-
ference, and their successors, be, and the same are
hereby constituted a body politic and corporate, to
be known by the name and style of the " Trustees
of the East Alabama Male College," and by that
name shall have perpetual succession; may sue
and be sued, plead and be impleaded, as natural
persons; make, seal, and deliver titles to pro-
perty, both real and personal; may receive dona-
tions, bequests and devises of real and personal

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 83 of 130   Page ID #14

DEFENDANT'S EXHIBIT N

property ; choses in action and money, and do such other acts as bodies corporate may do and perform, needful or necessary, to the establishment and perpetuity or prosperity of said college ; and they may have and use a seal, with such device or devices as they may deem meet, and the same at pleasure revoke ; *Proviso.* *Provided,* that in making titles to real property, under order of the Board of Trustees, the same shall be signed by the President and countersigned by the Secretary.

SEC. 3. *Be it further enacted,* That the Board of Trustees shall have power to elect from their **Power of trustees.** own body, a President, Vice President, Treasurer and Secretary, and such other officers as they may deem necessary, to a proper organization and management of the trust herein confided, and assign to each their respective duties ; they shall also have power to fill all vacancies which may occur in the Board, by death, resignation or otherwise.

SEC. 4. *Be it further enacted,* That said Board, shall further have power to elect Professors, Tutors and other officers of said college, as they may think proper, and fix their salaries with such powers and duties, severally and collectively, as the Board may prescribe or allow, and who shall constitute the faculty of said college, and who may instruct in all the arts and sciences ; grant diplomas and confer all the degrees of literary distinction, usual in similar male institutions of learning in the United States. The said Trustees, shall also have power to form or adopt a code of By-Laws, for the government of said college and for their own government, and to alter or amend the same at pleasure ; *Provided,* the same be not inconsistent with the constitution or laws of the State of Alabama ; and may also determine from time to time, the number less than a majority to constitute a quorum for the transaction of business ; but the number of such quorum, shall not be changed more than once in twelve months.

SEC. 5. *Be it further enacted,* That said Trustees, ma y procure an endowment for said college, or any professorship therein, the interest of which alone shall be expended ; *Provided,* said fund and **Proviso.**

**1855~'56.**

214

interest shall be under the control and direction of the Trustees.

SEC. . *Be it further enacted*, That no misnomer or misdescription of said corporation herein created, in any will, deed, gift, grant, devise or other instrument of contract or conveyance, shall in any wise defeat or vitiate the same : but the same shall take effect in like manner as if said corporation were rightfully named ; *Provided*, it be sufficiently described to ascertain the intentions of the party or parties to such instrument.

SEC. 7. *Be it further enacted*, That the said corporation may acquire, own and be possessed of property, real and personal, not to exceed in value the sum of two hundred and fifty thousand dollars, and the college grounds not to exceed twenty-five acres with the improvements thereon, together with all the money and personal property, of whatsoever kind the same may be, shall be forever exempt from taxation.

SEC. 8. *And be it further enacted*, That this act shall be deemed and considered in law, a public act, and shall be judicially taken notice of without being specially pleaded.

*Proviso.*

---

*This bill was vetoed by the Governor, and then passed by the constitutional majority, Feb. 1, 1856.*

---

[No. 270.]        AN ACT

To amend "an act," entitled an act to incorporate the Graefenberg Medical Institute.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That P. M. Shepard and his assistant professors, shall have power and are hereby authorized, prior to each annual examination, to appoint as many medical men as they may deem proper, who shall have similar power with the Trustees, as hereinafter set forth in act of incorporation.

APPROVED, February 14, 1854.

DEFENDANT'S EXHIBIT N

1855–'56.

[No. 271.]          AN ACT

To change the name of the Bascom Female Col-
lege, located at Huntsville, Alabama.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the name of the Bas- *Name changed*
com Female Institute, located at Huntsville, Ala-
bama, be, and the same is hereby changed to that
of the Huntsville Female College; by which name,
it shall be entitled to all the rights and privileges
conferred by the charter incorporating the said
Bascom Female Institute.

APPROVED, Dec. 21, 1855.

———

[No. 272.]          *AN ACT

To incorporate the Chunenuggee Female College,
of Macon county.

SECTION 1.. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gen-
eral Assembly convened,* That a female college, be, *College estab-*
and the same is hereby established at Chune- *lished.*
nuggee, in the county of Macon, to be known as
" the Chunenuggee Female College."

SEC. 2. *Be it further enacted,* That Richard H.
Powell, Homer Blackman, Arnold Seale, Nesburne *Corporators.*
B. Powell, William W. Battle, Sanders R. Vann,
John W. Eley, Robert H. Haynes, Joseph H.
Cunningham, Thomas Pullum, William W. Baker,
Wiley M. Bird, Edward H. Kennebrew, Henry H.
Randle and Jeff R. Herrin and their successors,
be, and the same are hereby constituted a body
politic and corporate, to be known by the name *Name and style*
and style of the " Trustees of the Chunenuggee
Female College," and by that name, shall have
perpetual succession ; may sue and be sued, plead
and be impleaded, as natural persons : make, seal,
deliver and receive titles to property, both real and
personal ; may receive donations, bequests and

DEFENDANT'S EXHIBIT N

devises of real and personal property ; choses in action and money, and do such other acts as bodies corporate may do and perform, needful or necessary to the establishment and perpetuity or prosperity of said college ; and they may have and use a seal with such device or devices as they may deem meet, and the same at pleasure revoke ; *Provided*, that in making titles to real property, under order of the Board of Trustees, the same shall be signed by the President and countersigned by the Secretary.

**Proviso.**

SEC. 3. *Be it further enacted*, That the Board of Trustees, shall have power to elect from their own body, a President, Vice President, Treasurer and Secretary, and such other officers as they may deem necessary, to a proper organization and management of the trust herein confided, and assign to each their respective duties ; they shall also have power to fill all vacancies, which may occur in the Board, by death, resignation or otherwise.

**Power of trustees.**

SEC. 4. *Be it further enacted*, That said Board, shall further have power to elect Professors, Tutors and other officers of said college, as they may think proper, and fix their salaries with such powers and duties, severally and collectively as the Board may prescribe or allow, and who shall constitute the faculty of said college, and who may instruct in all the arts and sciences ; grant diplomas, and confer all the degrees of literary distinction usual in similar female institutions of learning in the United States ; the said Trustees, shall have also, power to form or adopt a code of By-Laws for the government of said college and for their own government, and to alter or amend the same at pleasure ; *Provided*, the same be not inconsistent with the constitution or laws of the State of Alabama ; and five of said Board of Trustees shall be a quorum to do business, but they shall not at any meeting make any contract, incurring any pecuniary liability, unless notice of such meeting has been given to three-fourths of the members of said Board, at least three days previous thereto ; *Provided*, this Article shall not be construed so as to prevent a majority of the whole Board, at any meeting without such notice, to create any debt or

**Further power of trustees.**

**Proviso.**

DEFENDANT'S EXHIBIT N

1850.*

incur any pecuniary liability not exceeding the amounts of cash in hand and notes esteemed good then in their possession.

SEC. 5. *Be it further enacted*, That said Trustees may procure an endowment for said college or any professorship therein, the interest of which shall be alone expended; *Provided*, said fund and interest shall be under the control and direction of the Trustees.

**Endowment.**

SEC. 6. *Be it further enacted*, That no misnomer or misdescription, of said corporation herein created in any will, deed, gift, grant, devise, or other instrument of contract or conveyance, shall in any wise defeat or vitiate the same; but the same shall take effect in like manner as if said corporation were rightfully named; *Provided*, it be sufficiently described, to ascertain the intentions of the party or parties to such instrument.

SEC. 7. *Be it further enacted*, That the said corporation may acquire, own and be possessed of property, real and personal, not to exceed in value the sum of one hundred thousand dollars; and the college grounds, not to exceed ten acres, with the improvements thereon, together with all the money and personal property of whatever kind the same may be, shall be forever exempt from taxation.

**May own property.**

**Exempt from taxation.**

SEC. 8. *Be it further enacted*, That it shall not be lawful for any person to sell spirituous liquors or wines, at any point within three miles or less of said college, except for medical purposes; and if any person shall sell spirituous liquors or wines, in violation of the provisions of this Section, such person shall be subject to indictment, and on conviction may be fined in a sum of not less than one hundred nor more than five hundred dollars for each and every such offence.

**Spirituous liquors not to be sold within 3 miles.**

SEC. 9. *And be it further enacted*, That this act shall be deemed and considered in law, a public act, and shall be judicially taken notice of without being specially pleaded.

---

\* This bill was vetoed by the Governor, and then passed by the constitutional majority, Feb. 8, 1850.

28

DEFENDANT'S EXHIBIT N

1855-56

[No. 273.]  *AN ACT

To incorporate the "Calhoun Literary Society of Somerville," Morgan county.

Section 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That Dickson Graham, E. B. Rice, Josiah Patterson, John Collier, John Rayburn, James M. Orman, Robert W. Baker, Thomas C. Medders, James W. Morton, Daniel G. Johnson, W. D. Inman, and their associates and successors, be, and the same are hereby constituted a body corporate and politic forever, under the name and style of "the Calhoun Literary Society."

*Corporators.*

Sec. 2. *Be it further enacted*, That the said corporation is hereby declared and made capable of having, holding in fee simple or any less estate, by gift, grant, bequest, devise or otherwise, any property, real or personal, to the amount of ten thousand dollars, and may have a seal, and alter the same at pleasure; and said corporation shall be capable in law of sueing and being sued, pleading and being impleaded, and doing such other acts as bodies corporate may do and perform, needful and necessary for carrying into effect the objects and purposes of the corporation.

*Power to hold property.*

Sec. 3. *Be it further enacted*, That said corporation shall power to receive, collect and hold donations and subscriptions either of money, or of books, maps, charts or any other kind of property, and to sell or alien the same as they may think fit, for the promotion of the objects of said corporation.

Sec. 4. *Be it further enacted*, That said corporation shall have power to make all such rules, regulations and By-Laws, for the government of the corporation, and may elect such officers as they may deem necessary for its well being and success; they may also establish a library, and make such regulations for the support and maintainance of the same as may be necessary; *Provided*, nothing shall be done inconsistent with the rules and regulations of said male Academy, or the constitution

*Power to make rules and regulations.*

of the United States, or the constitution and laws of the State of Alabama.

SEC. 5. *Be it further enacted,* That all the property of said corporation of whatsoever kind, shall be exempted from taxation, so long as used for the purposes contemplated in this act.

* This bill was vetoed by the Governor, and then passed by the constitutional majority, Feb. 8, 1856.

———

[No. 271.]        AN ACT

To incorporate the Southern University at Greensborough, in the county of Greene, and for other purposes.

WHEREAS, The Alabama Conference of the Methodist Episcopal Church South have resolved to establish an institution of learning of high and general character for the promotion of literature, science, morality and religion within the limits of the said conference, and having, in fact, at a late meeting determined that the said institution should be located at the town of Greensborough, in the county of Greene. Now, in order to give full and complete legal effect thereto,

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the Rev. Robert Payne, Rev. James O. Andrew, Rev. Edward Wadsworth, Rev. Jefferson Hamilton, Rev. Thomas O. Summers, Rev. Augustus H. Mitchell, Rev. Thomas J. Koger, Rev. Christopher C. Calloway, Rev. Joseph J. Hutchinson, Rev. Joshua T. Heard, Rev. Philip P. Neely, Rev. Lucius Q. C. De Yampert, Rev. Henry W. Hillyard, Rev. Thomas Y. Ramsey, John Erwin, Gideon E. Nelson, Robert A. Baker, John W. Walton, Thomas M. Johnston, Gaston Drake, William T. Webb, Augustus A. Coleman, Duke W. Goodman and their associates and successors in office be, and they are hereby constituted a body corporate and public by the

*Preamble.*

*Corporators.*

DEFENDANT'S EXHIBIT N

name and style of the "Trustees of the Southern University," with the right and power of exercising all and singular the privileges, incidents and capacities of corporations aggregate ; to sue and be sued, implead and be impleaded, grant or receive, contract or be contracted with, and do and perform all other and proper and necessary acts and things **Right to hold property.** as natural persons, to purchase and hold lands or other real estate and personal property for the use and benefit of the said University, to have and use a common seal, and change the same at pleasure, to make by-laws and ordinances for the proper conduct and good government of the said University ; *Provided*, said ordinances or by-laws shall not be inconsistent with the statutes of the State. To **To appoint officers.** elect or appoint a President, and such Professors, who shall compose the faculty of the said University, as they may think proper, and any teachers or assistants that they may see fit ; to establish, change or abolish professorships as the exigencies or interest of the University may require, and to do and perform all other acts necessary or expedient for the proper conduct of the said University, so as to render it successful in accomplishing the great object of its establishment.

**To elect trustees annually.** SEC. 2. *Be it further enacted*, That the trustees to be hereafter appointed, shall be elected annually by the Alabama Conference of the Methodist Episcopal Church South, and shall continue in office until their successors are duly appointed, and be prepared to enter on their duties ; and the said Conference may, at their pleasure, change the number of trustees to be appointed, but there shall never be less than nine, and any nine trustees shall constitute a quorum for the transaction of business; and in the event of a vacancy in the board of trustees, by death or resignation, the same may at any time be filled by the remainder of the board at any meeting of the same. And the said Conference, which shall be the patron of the said University, shall, whenever they deem it proper, have the right to appoint a committee to visit the said University, and examine into everything appertaining to its

DEFENDANT'S EXHIBIT N

name and style of the "Trustees of the Southern University," with the right and power of exercising all and singular the privileges, incidents and capacities of corporations aggregate ; to sue and be sued, implead and be impleaded, grant or receive, contract or be contracted with, and do and perform all other and proper and necessary acts and things as natural persons, to purchase and hold lands or other real estate and personal property for the use and benefit of the said University, to have and use a common seal, and change the same at pleasure, to make by-laws and ordinances for the proper conduct and good government of the said University ; *Provided*, said ordinances or by-laws shall not be inconsistent with the statutes of the State. To elect or appoint a President, and such Professors, who shall compose the faculty of the said University, as they may think proper, and any teachers or assistants that they may see fit ; to establish, change or abolish professorships as the exigencies or interest of the University may require, and to do and perform all other acts necessary or expedient for the proper conduct of the said University, so as to render it successful in accomplishing the great object of its establishment.

SEC. 2. *Be it further enacted*, That the trustees to be hereafter appointed, shall be elected annually by the Alabama Conference of the Methodist Episcopal Church South, and shall continue in office until their successors are duly appointed, and be prepared to enter on their duties ; and the said Conference may, at their pleasure, change the number of trustees to be appointed, but there shall never be less than nine, and any nine trustees shall constitute a quorum for the transaction of business ; and in the event of a vacancy in the board of trustees, by death or resignation, the same may at any time be filled by the remainder of the board at any meeting of the same. And the said Conference, which shall be the patron of the said University, shall, whenever they deem it proper, have the right to appoint a committee to visit the said University, and examine into everything appertaining to its

DEFENDANT'S EXHIBIT N

wines, ale, beer, porter, or other intoxicating drinks or beverage, simple or compound, from and after the said first day of March, A. D., 1857 ; and if any person or persons shall procure any such license or permit, it shall, from and after the said day, be utterly void and of no force whatever ; and all acts conflicting with the provisions of this act be, and the same are hereby repealed.

Physicians to keep ardent spirits.

SEC. 5. *Be it further enacted,* That any person regularly engaged in keeping a drug store in the town of Greensborough, and all practising physicians in said town, or within five miles thereof, may, notwithstanding anything in the preceding section to the contrary, vend, sell or furnish wines or liquors in *good faith* for medicinal purposes only ; but they shall never sell, vend or give to any student of the said Southern University any wines or liquors whatever for any purpose, nor upon any pretext, but upon an order of a member of the faculty of the said University, specifying that the same is required by such student for medicinal purposes ; and if any druggist or physician shall offend herein, he shall be fined and punished as provided for in the last preceding section of this act, and in addition thereto, on conviction for any offence committed herein, be wholly deprived of all the benefit or privilege granted under this section.

Exempt from taxation.

SEC. 6. *And be it further enacted,* That the property and estate, real and personal, held and owned by the trustees of the said University under this act, shall be free and exempt from taxation, whether the same be for State, county or corporation purposes.

* This bill was vetoed by the Governor, and then passed by the constitutional majority, January 25, 1856.

DEFENDANT'S EXHIBIT N

[No. 275.]          AN ACT

To repeal in part an act entitled "an act" to
   incorporate the Pickens DeKalb minute men.

Section 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the fourth Section of Repealed.
an act entitled "an act" to incorporate the Pick-
ens DeKalb minute men, approved February 18,
1854, be, and the same is hereby repealed.
   Approved, February 1, 1856.

———

[No. 276.]          AN ACT

To repeal "an act," incorporating the town of
   Jacksonville, in Benton county.

Section 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That from and after the Repealed.
passage of this act, the act approved the 24 Dec.
1838, incorporating the town of Jacksonville, in
Benton county, together with all amendments
thereto, be, and the same are hereby repealed.
   Approved, Jan. 25, 1856.

———

[No. 277.]          AN ACT

To amend Section 8 of an act to incorporate the
   Alabama Dragoons and Montgomery Riflemen,
   approved Feb. 18, 1854, and to pay the Mont-
   gomery Riflemen for tents, accoutrements and
   camp equipage, as provided in said Section.

Section 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That the eighth Section
of an act entitled "an act," to incorporate the
Alabama Dragoons of Montgomery, and Mont-
gomery Riflemen, be, and the same is hereby so

Comptroller to draw warrant. amended, that the Comptroller shall draw his warrant on the State Treasurer, for the sum of two hundred and nine dollars, payable to the captain of the Montgomery Riflemen, for the use of said Company, whenever the officers of said company shall execute their bond with proper securities, as provided in said Section, to be approved by the Comptroller and deposited in his office.

APPROVED, February 1, 1856.

———

[No. 278.]        AN ACT

To alter and amend the charter of the town of Eufaula, in Barbour county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That hereafter at the usual time of holding the annual elections in the town

Time of holding election. of Eufaula, to wit : on the third Monday in February of each year, the Intendant and Councilmen, and the Marshall and Clerk, of said town, shall be elected by the qualified voters ; a majority of all the votes cast being necessary to a choice, at large, residing within the corporate limits of said town, to serve for one year from the time of their election.

Bond to be given. SEC. 2. *Be it further enacted*, That the Marshall and Clerk as aforesaid, shall give bond with good security, in sufficient amount, and to be approved as heretofore, for the faithful discharge of their official duty, the salary of the Marshall to be four hundred dollars, and the salary of the Clerk to be two hundred dollars per annum.

Vacancy. SEC. 3. *Be it further enacted*, That either the Marshall or the Clerk of said town, may be impeached at the discretion of the Intendant and Councilmen, and by them turned out of office for good cause, and in such event, the Intendant must order an election to fill the vacancy and unexpired term, giving five days public notice thereof ; said election to be held in the same manner as provided for in the first Section of this act.

APPROVED, Feb. 12, 1856.

DEFENDANT'S EXHIBIT N

1855 -'56.

[No. 279.]          AN ACT

To incorporate the Commercial Bank of Alabama.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That a Bank be established in the city of Selma, the capital stock of which shall not exceed one million dollars, divided into shares of one hundred dollars each; three-fifths of which capital may be subscribed for by individuals, and two-fifths of which shall be reserved for the State of Alabama. *Capital stock.*

SEC. 2. *Be it further enacted,* That subscriptions for stock in said Bank shall be opened in such places as the commissioners to be appointed for receiving subscription to stock may designate on the first Monday in April next, under the direction and management of nine commissioners, to be appointed by the Governor of the State of Alabama, and who shall have authority to receive individual subscriptions for shares of stock. The said commissioners, or a majority of them, shall keep their books of subscription open for the term of thirty days. The said commissioners shall give at least thirty days' previous notice of the opening of said books, by advertisement in at least five public newspapers published in this State, and elsewhere in their discretion; and they shall keep a correct record of their proceedings.

SEC. 3. *Be it further enacted,* That the subscriptions to the stock of said Bank which may be obtained by the commissioners, shall be payable after the election of directors, and in such times and installments as the directors may appoint, giving thirty days' notice thereof by advertisement in the newspapers published in the county where the Bank may be located. Any stockholder may pay in advance the whole or any portion of his subscription and in such cases interest shall be equalized with the other stockholders on equitable principles. *Notice to be given.*

SEC. 4. *Be it further enacted,* That whenever the sum of one hundred thousand dollars shall have been subscribed to the capital stock of said

29

Case 3:21-cv-00518-SMY   Document 108-1   Filed 01/09/23   Page 96 of 130   Page ID #1439

Bank, whether by individuals alone, or individuals and the State of Alabama combined, or in any other sum not exceeding five hundred thousand dollars, and after the closing of the books of subscription and half of the capital stock subscribed shall have been actually paid in, in gold and silver coin, the said Bank may elect its officers on the following conditions, to wit: The President and directors of said Bank thus appointed shall, without loss of time, make the necessary arrangements to put the Bank in operation so soon as pursuant to the provisions of this act the Bank shall possess in gold and silver one-half of the capital stock subscribed; but the said Bank shall, under no pretext whatever, commence its banking operations by discounting bonds, bills, or notes, by loaning money, or putting into circulation its own notes, until it shall actually and in good faith have in possession of its own absolute property, in gold and silver, one half of the whole amount of capital stock subscribed, and shall have returned to the Governor of this State an account thereof, certified by the oath or affirmation of the president and cashier for the time being; nor shall the said Bank so commence its operations until the Governor is satisfied, by the return aforesaid, and by such other evidence as may be offered, shall issue a proclamation declaring that the return aforesaid had been duly made, and that it appeared to his satisfaction, that said company had of their own absolute property, the amount of gold and silver aforesaid, were authorized, under the provisions of this act, to commence their banking operations as aforesaid; and if said Bank, without actually and in good faith, having of its own property the amount of gold and silver as aforesaid, or without having made the return as aforesaid, or without the proclamation of the Governor as aforesaid, shall commence any such banking operations as aforesaid, the charter hereby granted shall be null and void, and the said Bank shall be considered, to all intents and purposes, as an unchartered Bank. After closing the books, if the subscriptions amount to more than five hundred thousand dollars, the commissioners, as aforesaid, shall scale

*Election of officers.*

the subscriptions to that amount in such mode as they shall deem just and equitable, giving, however, in all cases the preference to *bona fide* subscribers resident in this State ; and if the said commissioners have cause to suspect that any subscription, although made in the name of a resident citizen, is for the use of a non-resident, they are authorized to enquire into the fact in any manner they may think best, and if they believe that such is the case, said commissioners shall have the right to reject such subscription, and their action shall, in this respect, be final and conclusive: *Provided*, that no other Bank shall be allowed to take stock in said Bank.

SEC. 5. *Be it further enacted,* That if, in closing the books, a sufficient capital shall not have been subscribed to authorize the Bank to go into operation under the terms of this act, the commissioners may again open such books afterwards, at such times and places as they may direct, under the same regulations as above provided, until the subscription be sufficient. After the Bank officers shall have been elected, if the stock is not full, the board of directors shall have power to cause books to be opened from time to time until the stock and capital be full, and to appoint commissioners to receive such subscriptions under such rules as they may prescribe: *Provided*, thirty days' notice be given, by advertisement as above prescribed, of the time and place of receiving such subscriptions.

*Deficiency of capital.*

SEC. 6. *Be it further enacted,* That the State of Alabama may, when it shall elect so to do, take shares in the capital stock in said Bank equal to two-fifths of its amount, on paying a proportionable part of the capital, and on equal terms with the subscribers, equalizing interest on equitable terms with the stockholders as to time; and the said State shall, in case it takes stock, be entitled to a proportion of power in the direction of the Bank equal to its proportion of stock therein.

SEC. 7. *be it further enacted,* That the stockholders of the said Bank, and their successors, when a sufficient amount shall have been subscribed and paid in, be, and they are hereby created a corpora

1855-'56.

DEFENDANT'S EXHIBIT N

Name and style

Power of stock holders.

tion and body politic, by the name and style of the Commercial Bank of Alabama, and so shall continue until the first day of June, eighteen hundred and eighty-six, and by that name shall be, and they are hereby declared able and capable in law to have and own, purchase, receive, possess, and retain to them and their successors, lands, rents, tenants, hereditaments, goods, chattles and effects of whatsoever kind, nature and quality, moneys, obligations, stocks, bonds, bills, notes, securities, and choses in action, of whatsoever nature, and the same may sell, grant, demise, alien, convey or dispose of, and may sue and be sued, implead and be impleaded, answer and be answered, defend and be defended, in any suit, matter or thing depending in any Court of law or equity: and shall also have power to make, have and use a common seal, and the same to break, alter and renew at pleasure; also to ordain, establish and repeal by-laws, ordinances and regulations as they deem necessary and convenient, from time to time, for the government of said corporation, not being contrary to the constitution and laws of the United States, or to the State of Alabama: also to make loans, discounts, and deal in money and notes, bills of exchange, bonds, mortgages and securities of all kinds: to receive deposites, to make and issue bank notes payable on demand to the bearer, and to make all contracts and transact all such business as is usually transacted by banks, and as are within the scope of banking operations, and generally to do, execute and perform all and singular the acts, matters and things which to them it shall pertain to do as incident to bodies corporate, subject, however, to the

Proviso.

rules and limitations herein contained: *Provided*, the said Bank shall not, in any case, deal or purchase merchandise, produce or personal property of any kind, or real estate, except for its necessary banking houses, buildings and purposes, or by way of securing payment of debts due to it; nor shall it issue or cause to be made for circulation, as currency, any notes or bills that are not payable on demand.

SEC. 8. *Be it further enacted*, That the affairs

of said Bank shall be managed by ten directors, elected annually by the stockholders of said Bank, and appointed by the Governor of the State of Alabama on behalf of the State, if the State shall subscribe for stock, and if not, then by the stockholders alone. At all elections the stockholders shall elect the whole ten directs, or a number proportioned to the number of shares held by them collectively as the case may be, allowing the State to appoint a number proportionate to its stock, and the directors appointed by the stockholders, shall be those who shall have received a plurality of the votes given at elections by stockholders: and at all elections for directors by the stockholders, each of the stockholders shall be entitled to one vote for every five shares of stock owned by them. No stockholder can be a director who is at the same time a director in any other bank: the stockholders shall be entitled to vote either in person or by proxy: and all meetings of the stockholders a majority of the stock must be represented. The shares of infants may be voted for by their parents or guardians, if married women by their husbands or trustees, if corporations by their president, if copartners or joint-owners by either unless they dissent, in which case neither shall vote: and all powers to authorize persons to vote by proxy shall be in writing.

SEC. 9. *Be it further enacted.* That the first election for directors shall be held so soon as may be after the books of subscription shall be closed, and a sufficient number of shares subscribed, the said commissioners, appointed to receive subscriptions, shall hold said first election on such day as they may appoint, after giving thirty days' notice of the time and place of holding the same: they shall certify to the directors the names of the persons elected: shall hand over their records and the money subscribed and paid. The said board so elected, and appointed by the Governor, if the State at any time becomes a stockholder, shall proceed to elect a president from their own number, and the board shall continue in office until the second Monday in January following, and until their succes-

*Election to be held.*

*Time of elec.*

sors shall enter upon their duties. All subsequent elections for directors shall be held at the banking house on the second Monday in January in each year ; the new board elected shall be authorized to enter upon its duties on the day after and continue until the expiration of the second Monday in January next thereafter, and until their successors shall organize and enter upon their duties ; the polls shall be held by three stockholders other than directors appointed by the board to hold the same ; the votes shall be by ballot under such regulations as the bank shall prescribe ; but ten days' notice of such election shall be given in two public newspapers of the county in which said bank is located. No stockholder shall vote at any time while in default of the payment of his installment of stock, as required by law and the regulations of the bank.

*Notice to be given.*

SEC. 10. *Be it further enacted,* That no person shall be a director on the part of the stockholders, unless he shall own one thousand dollars' worth of stock in the said bank, *bona fide*, and as his own property, nor unless he shall be a resident citizen of the State.

SEC. 11. *Be it further enacted,* That in case no election shall be made of directors or president at the times provided by this act, the corporation shall not be for such cause deemed dissolved, but such election shall be held so soon as may be thereafter, on due notice ; the board shall have full power to fill all vacancies in the office of president and of directors elected by individual stockholders, and the Governor shall fill all vacancies on the part of the State, to serve until the next board shall organize. Six months' absence, removal from the State, transfer of stock down to a less sum than one thousand dollars, and any cause which shall prevent the attendance of such officers permanently to discharge the duties or render him incapable of so doing, shall vacate the seat of such president or director.

*Failure of election.*

SEC. 12. *Be it further enacted,* That the president and directors of said bank shall have power and authority to appoint a cashier, and all such officers, clerks, agents and servants as may be ne-

*Power of president and directors.*

cessary, from time to time, to carry on the business
of the bank, and to prescribe their compensation
and duties and to require proper bonds and securi-
ties of such officers, clerks, agents and servants for
the faithful discharge of their respective duties, as
in their discretion they may deem proper, and to
issue bank bills payable to bearer on demand at
their banking house.

SEC. 13. *Be it further enacted,* That the shares Shares of stock
of stock in said bank shall be assignable and trans-
ferable, according to such rules as shall be institu-
ted in that behalf by the by-laws and ordinances of
the bank, and transfer books shall be kept for that
purpose: *Provided,* that in case of the failure of Proviso.
the bank within six months after any such trans-
fer sale of stock, the party selling and the party
purchasing said stock, shall each be liable for the
payment of the debts of the bank in proportion to
the stock so transferred: *Provided further,* that no
transfer of stock shall be made so as to vest in any
one stockholder a greater number than one-fourth
amount of the whole number of shares subscribed
for in said corporation: *And provided further,* that
the bank shall have power to pass by-laws to pre-
vent the assignment of shares by parties owing
debts to said bank passed due, until such indebted-
ness be paid, and to withhold dividends due to per-
sons so being in default, if they deem it proper.

SEC. 14. *Be it further enacted,* That if any per- Persons in-
son or persons, copartnership or body corporate, debted to the
shall be indebted to said bank, as maker, endorser, bank.
or guarantee, or as drawer or acceptor of any note,
bill or bond, whether made negotiable and payable
at said bank or not, shall delay payment therof,
the said bank may move for judgment and award
of execution against such debtor in any court of
record in the State where such defaulter may re-
side, or corporation so indebted be located, and
such judgment may be rendered therein as may be
lawful and proper: *Provided,* that the defendant Proviso.
in such case shall have at least thirty days' notice
of such motion before the same is made, specifying
what the demand is; that at the time of making
such motion, the bank shall produce and file a cer-

tificate of the president or cashier, under the seal of the bank, that the debt claimed is really and *bona fide* the property of the bank : *Provided further*, that if any defendant shall appear and contest the claim, the court shall require the bank to file its declaration and the defendant his pleas, and to cause issue to be joined in law or fact, to be tried instanter or during the term as the court may direct, by jury or by the court, as the case may be, unless on sufficient cause thereon it be necessary to continue the cause, and the court shall give judgment as may be proper : *And provided further*, that the summary remedy thus given shall not preclude any other mode of redress which may be lawful to enforce the rights of the bank.

SEC. 15. *Be it further enacted*, That the said remedies given for the collections of debts due the bank, and in motions against the bank, no certificate shall be required to be filed as above set forth, and the court of record in the county in which said bank is located, having jurisdiction, shall hear motions for the recovery of all debts due by said bank, and in all suits against said corporation, service of process on the president or chashier shall be sufficient to bring the defendant into court.

*No certificate required.*

SEC. 16. *Be it further enacted*, That the said bank shall be subject to the following rules and regulations, and they are declared to be fundamental articles in the constitution of the said corporation, to wit :

*Subject to rules*

Article 1. The bank shall not commence operations until half the capital stock subscribed for be actually paid in gold and silver, which amount in no case shall be less than one hundred thousand dollars.

*To commence operations.*

Article 2. That the State and individual stockholders, or any copartnership or body politic having shares in said bank, shall be bound respectively for all the debts of the bank in proportion to their stock holden therein, and this provision shall in no wise affect or impair the provisions of the thirteenth section of this act.

*Stockholders bound for all debts.*

Article 3. The bank shall not be authorized to issue or have in circulation, at any one time, notes or

*Am't of circulation.*

bills of the bank to an amount exceeding three times the amount of its capital stock actually paid in, and in case of any issue greater than herein allowed, the president and directors under whose administration it may happen, shall be liable for the same in their natural and private capacities, and actions may be brought against them or either of them, in any court, by any creditor of said corporation, and may be prosecuted to judgment, any condition or agreement to the contrary notwithstanding, but the corporation shall not on account of this provision be less liable and chargeable with said excess: *Provided,* that the president and such of said directors, who may have been absent when excess was contracted or created, may respectively exonerate themselves from being so liable by forthwith giving notice of the facts, and of their absence or dissent to the stockholders at a general meeting which they shall have power to call for that purpose. *Proviso.*

Rule 1. The bank may, at its option, receive in payment or in deposite, the notes of the banks of other States, but shall not pay out the same in loans, checks, orders, drafts or discounts. *May receive notes of banks of other States*

Rule 2. The bank shall be required to procure and always keep on hand, gold and silver in a proportion of not less than one fourth of the amount of the bills it shall have in circulation, and if withdrawn, shall immediately proceed to replace the deficiency. *To keep on hand gold and silver.*

Rule 3. No bill or note of a smaller denomination than one dollar shall be issued, received or paid out by the bank. *Denomination of bills.*

Rule 4. The bank shall be required to receive money on deposite and pay out the same to order, free of charge, in such sums as the depositors may direct: *Provided,* the bank shall not be required to pay deposits in less sums than fifty dollars, nor to receive them in less sums than one hundred dollars. *Receive money on deposit.*

Rule 5. The bank shall not take, retain or receive interest on notes at greater rates than the following, to wit: Upon paper running six months or under, not to exceed the rate of six per cent. per annum; upon paper running more than six months *Rates of interest.*

30

"DEFENDANT'S EXHIBIT N

and not exceeding nine months, not to exceed the rate of seven per cent. per annum; upon paper running more than nine months, not to exceed the rate of eight per cent. per annum: *Provided*, that all paper held and owned by said bank shall after maturity bear interest at the rate of eight per cent. per annum: *Provided also*, that if the rate of interest shall be reduced in this State during the period of the charter of said Commercial Bank, said bank shall, in no case, charge a greater rate of interest than that fixed by law as the legal rate for the State of Alabama.

Proviso.

Rule 6. No director shall receive any emolument, but the president may receive such compensation as the stockholders shall at a general meeting assign him.

Compensation.

Rule 7. Not less than five directors shall constitute a quorum for the transaction of business, of whom the president shall always be one, except in case of sickness or necessary absence, in which case his place may be supplied by another director, whom under his hand he shall depute for that purpose; and the director so deputed may do and transact all the necessary business belonging to the office of president of said corporation, under the name of the president pro tem, during the continuance of the sickness or necessary absence of the president.

Constitute a quorum.

Rule 8. Two-thirds of the whole number of directors shall have power to authorize, at any time, any three or more of the directors to transact such business of the bank as may be specially confided to them, whose acts shall be as valid as if done by a full board of directors present at the doing therof; but the directors constituting said two-thirds or more giving such authority, shall be liable for all acts done by the said three or more directors, as if they were personally present and concurring.

Rule 9. All officers of the bank, the president and directors excepted, shall be required before they enter upon the duties of their office to give bond and security such as the board shall approve.

Bond to be given.

Rule 10. half yearly dividends shall be made of so much of the profits of the bank as shall appear to the directors proper; but no dividends shall be

Dividends.

paid as profits which shall trench upon the capital of the bank.

Rule 11. Once in every term of three years the directors shall lay befor the stockholders, at a general meeting, for their information, an exact, full and particular statement of the condition and affairs of said bank, showing the particulars of all suspended debts ; and shall give all information to them required for a proper understanding of its true condition. *Statement to be made.*

Rule 12. The directors shall have power to call a general meeting of the stockholders at any time they may deem necessary and expedient ; and a number of stockholders not less than thirty, representing together not less than five hundred shares as their own property, may at any time call a general meeting of the stockholders relative to the institution, giving at least six weeks' notice in the newspapers of the city in which such bank is located of such meeting, and specifying the purpose or purposes thereof. *Power of directors.*

Rule 13. That said bank shall make to the Comptroller of public accounts, a return once in every twelve months of its true situation, showing the amounts of its assets and liabilities, and of what they consist, also a list of the stockholders of said bank, and a list of shares owned by each. *Return to be made to the Comptroller.*

Rule 14. The Governor of the State shall appoint biennially three commissioners, whose duty it shall be to examine the moneys and books, otherwise examine into the condition, and make report thereon, within two months after their appointment. The bank shall furnish all information to the said commissioners necessary for an accurate examination, and shall pay the said commissioners four dollars per day each, not exceeding fifteen days each, and the commissioners shall each make affidavit before an acting Justice of the Peace that they have not, previous to the time of their visit, communicated to the officers of said bank the time when they would visit said bank for the purpose of examination as aforesaid, which affidavit shall be filed in the office of the Secretary of State. *Governor to appoint commissioners.*

Sec. 17. *Be it further enacted,* That by way of

DEFENDANT'S EXHIBIT N

bonus for granting this charter, the said bank shall pay annually into the Treasury of the State, on or before the first day of November in each year, and while the bank shall continue banking business, an amount equal to twice the taxation which may be assessed on every hundred dollars of the value of lands for the time being by the State on each share of the stock of the bank, which shall be in lieu and composition of all taxation whatever by the State, County, City or other authority on the capital stock or business of the bank: *Provided*, that all real estate owned by the bank shall be subject to any taxes, as if held by individuals.

*Amount to be paid into the Treasury of State.*

SEC. 18. *Be it further enacted*, That whenever any bill, or bills, notes, checks or other issues of said bank are presented at the counter of the same for redemption, and the bank shall refuse to redeem the same either in gold or in silver, the Cashier shall write across the back of such bill, or bills, checks or other issues the word "protested" with the day and date, and shall sign the same, and all such bills, notes, checks and other issues so protested, shall draw twelve per cent. interest from the date of the protest, until the same shall be redeemed, together with the interest that may have accrued thereon, and if any such note, bill, check or other issue be presented to said bank, and payment refused, and said officer fail to note the same protested as above provided, such officer so refusing and his securities shall be subject to pay double the amount of the demand offered and refused, to be recovered by the person aggrieved in any court of record in the county where said bank may be located.

*Bills protested*

SEC. 19. *Be it further enacted*, That no stockholder of said bank shall receive any loan from the bank, either directly or indirectly, until the whole of his stock shall be paid; and no stockholder, while any portion of his stock is unpaid, shall be otherwise a debter to said bank; nor shall said bank, under any pretext, hold any stock purchased by it of the stockholders for more than six months from the date of said purchase.

*Stock holder not to receive any loan from the bank.*

SEC. 20. *Be it further enacted*, That if any debt

1855-'56.

or demand due from said bank, for an amount ex-
ceeding one hundred dollars, shall remain unpaid   **Failure to pay**
for more than ten days after proper demand made    **debt.**
for payment, the holder of such debt may file a
bill in the Chancery Court of the county or district
in which said bank may be located, for the settle-
ment of all the debt of the bank if he elect so to
do, and may on proof by affidavit of such refusal
to pay on demand, and of the continuation of such
refusal, made to any Chancellor or Judge of any
Circuit Court of the State, pray an injunction to
restrain the said bank and its officers from paying
out, or in any way transferring or delivering to
any person, any money or assets of said bank, or
incurring any obligation or debt until such order
be vacated or modified, and if such Chancellor or
Judge shall be of opinion that the debt is justly
due, and that the bank has no just defence against
the demand, and if it shall appear expedient and
necessary upon the proof presented, in order to
prevent fraud and injustice, he shall grant an
order for such injunction: *Provided*, the bank shall   **Proviso.**
have had such reasonable notice of the application
as the Chancellor or Judge may prescribe, and
shall not be able to show sufficient cause against
the same, and the said Judge or Chancellor shall
then proceed to enquire on such further notice as
he may prescribe, whether the said bank be clearly
solvent or not, and may require the officers of the
bank to exhibit any and all of its books, papers,
accounts, assets, moneys, and effects, and to be ex-
amined on oath touching the sums before him or a
referee to be appointed by him, and if it shall ap-
pear that the said bank is not clearly solvent, then
he may make an order declaring the same to be in-
solvent, and requiring its affairs to be wound up
and settled, and further, if in his opinion the safety
of the creditors shall require it, such Judge or
Chancellor may appoint a receiver or receivers to   **Receiver to be**
take charge of all the assets of the bank and to close   **appointed.**
and settle its affairs, and may make all such orders
for the accomplishing of the same safely, properly
and economically as the case may seem to require;
but if it shall appear on such examination, that the

**Defficiency of assets.**

said bank is clearly solvent, or if there shall appear to be a deficiency of assets, and the bank shall procure and give good security for the payment of any deficiency which may exist, and that the assets shall prove sufficient to satisfy all the debts of the bank, to the satisfaction of the Judge or Chancellor, then no such receiver shall be appointed, and upon the payment of the debts complained of, the injunction and proceedings shall be dismissed, such order shall be made for the payment of the cost as the Judge or Chancellor shall deem just and proper, and the proceedings shall be returned and made of record in the Chancery Court of the county or district in which such bank may be located, and shall be subject to revision and correction by the Supreme Court as in other cases.

**If the bank be found insolvent.**

Sec. 21. *Be it further enacted,* That in case the said bank be found insolvent, and settlement of its affairs be ordered as herein provided, the same shall be done upon bill filed in said Chancery Court under the orders of the Court and rules of Chancery, and full distribution shall be made of the assets according to the rights of the parties, but the holders of bank notes and obligations issued by the bank for circulation as money, shall be first called in and paid, and shall have priority over debts due from the bank, and after the assets of the bank are exhausted, if they be not sufficient to pay all debts and liabilities, a further call shall be made on the shareholders in the bank for a further payment of capital over and above the sum of one hundred dollars of an amount equal to the defficiency, which shall be apportioned among all the shares of stock, as well of the individual stockholders as of the State, and an order shall be made, by the court, for the payment of each shareholder of the sum or proportion due on his shares of stock, and each shareholder shall pay the sum so assessed to him severally in proportion to his stock, which shall be collected by the receiver and applied, and in case the State hold stock in said bank, it shall provide for and pay its proportion of this additional capital in proportion to the stock so held in said bank, to be applied in like manner.

SEC. 22. *Be it further enacted,* That the summary remedy in this act, specially given for settling up and closing the affairs of said bank, shall apply to the case of insolvency, but shall not be allowed in case of a suspension only by the bank of specie payment, when so long as suspension shall be sanctioned by the General Assembly, or the Governor of the State during the recess of the General Assembly, but nothing in this act contained shall be construed so as to deprive a creditor of said bank from his right to suit, in any other appropriate mode of proceedings, or to prevent the General Assembly from hereafter regulating by a general law in relation to banking institutions, the mode of enforcing and satisfying the rights of creditors of said bank: *Provided,* any bill holder shall also have the right to move in any court having jurisdiction, or before any Justice of the Peace in the city or county in which said bank is located, as the case may require, for the collection of any bill the payment of which may be refused.

SEC. 23. *Be it further enacted,* That notwithstanding the expiration of which said corporation is created, it shall be lawful to use the corporate name, style and capacity for the purpose of suits, and for the final liquidation and settlement of the affairs and accounts of the corporation, for the sale and disposition of its estate, real and personal, and collection of its assets, but not for any other purpose, nor for a period exceeding two years after the expiration of said term of incorporation.

*Lawful to use the corporate name.*

---

\* This bill was vetoed by the Governor, and then passed by the constitutional majority, February 9th, 1856.

---

[No. 280.]            AN ACT

To incorporate the Spring Hill Male and Female Academy in Marengo county.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That Dr. C. C. Garrett, B.

DEFENDANT'S EXHIBIT N

**1855–'56.**                                   240

Corporators.

E. Smith, John G. Allen and E. E. Curtis, and their successors in office, be, and they are hereby constituted and declared a body corporate by the

Name and style.
name and style of "The Trustees of Spring Hill Male and Female Academy," and by that name may sue and be sued, plead and be impleaded, answer and be answered unto in all kinds of actions, both in law and equity, may receive donations, purchase property of any kind, whether real or personal or mixed, the same to hold, use or dispose of at pleasure, and to have and use a common seal. They shall further be empowered to make such rules, regulations and by-laws for the good government of said Academy as may be necessary, the same not being repugnant to the Constitution of the United States or the Constitution and laws of this State.

SEC. 2. *Be it further enacted,* That it shall not be

Unlawful for spirituous liquors to be sold within 1½ miles of said Academy
lawful for any person to sell spirituous liquors or wines at any point within one mile and a half or less of said Academy, except for medical purposes; and if any person shall sell spirituous liquors or wines in violation of the provisions of this section, such person shall be subject to indictment, and, on conviction, may be fined in a sum of not less than one hundred nor more than five hundred dollars for each and every such offence.

APPROVED, January 31, 1856.

---

[No. 281.]                AN ACT

To amend a certain act therein named.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That the fifth section of an act entitled "to aid the Tennessee and Coosa Rail Road," approved February 17th, 1854, be, and the same is hereby amended so as to strike out the words "fully completed" and insert in lieu thereof the words "completed as provided for in the first section of this act."

APPROVED, December 19, 1855.

24

DEFENDANT'S EXHIBIT N

[No. 282.]          AN ACT

To incorporate the Macon County Rail Road Co.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened*, That John Draford, Da-
vid Clopton, William Foster, Cullen Battle, John    **Corporators.**
C. H. Reed, Seaborn Williams, William Varner,
James W. Echols, James D. Porter, William Herd,
Joshua W. Willis, and George W. Campbell, or
such of them as shall accept this charter, with such
other persons as shall associate with them for the
purpose, and their successors be, and they are
hereby constituted a body politic and corporate by
the name of the "Macon County Railroad Com-    **Name.**
pany," and by that name may sue and be sued,
plead and be impleaded in all courts of this State,
with power to make, have and use a common seal,
and the same to break, renew, alter or amend at
pleasure : and are hereby vested with all the pow-    **Power of cor-**
ers, privileges, and immunities which are or may    **porators.**
be requisite and proper to carry into effect the loca-
tion, construction, proper management, direction
and maintenance of a single or double Railroad
from some point on the Montgomery and West
Point Railroad, to or in the vicinity of Tuskegee,
and then to intersect with the Mobile and Girard
Railroad, at some point on or in the vicinity of the
Chunnenugge Ridge, or at such point as may be
selected by the two Companies ; and to transport,
take, or carry on said road by steam or such power
as the company may deem most proper, and for the
purpose of constructing said road, the company are
hereby fully authorised to lay out the same not ex-
ceeding one hundred feet wide the whole length,
and for the purpose of depots, cuttings, bridges,
embankments, and necessary turn-outs, and for ob-
taining stone, granite and gravel, may take so
much more land as may be needed in the construc-
tion, security, and keeping up and running said
road with permission to purchase stock, materials
and right of way, and to make any lawful contract
with any other Railroad, individual or Company,
in relation to the business of said company, and

31

Proviso.

also to make joint-stock with any other corporation; *Provided*, That all damages that may be occasioned to any person or corporation by the taking of any land or materials as aforesaid, shall be assessed in the manner hereinafter specified.

Capital stock.

SEC. 2. *Be it further enacted*, That the capital stock of said company shall not exceed six hundred thousand dollars, and which shall be divided into shares of one hundred dollars each, and which shares shall be deemed personal property, and be subject to transfer in such manner as the by-laws of the company may direct ; said company may organise as soon as shares to the amount of thirty thousand dollars have been taken, and may then survey and locate the road ; but shall not commence the construction of the same until shares to the amount of fifty thousand dollars shall have been *bona fide* subscribed.

Open books for subscription.

Proviso.

SEC. 3. *Be it further enacted*, That the persons named in the first section of this act, or any four of them, shall open books for subscription to the capital stock of said company at such times and places as they may deem proper ; *Provided*, The Directors may authorise any person to receive subscriptions to the stock at any time or place, and they are further authorised and required, after the books of subscription have closed, or when the sum subscribed shall reach thirty thousand dollars, to call a meeting of the Stockholders of said company in such manner and at such time and place as they may appoint for the choice of directors of said company, and in all meetings of the stockholders each share shall entitle the holder thereof to one vote, which vote may be given by the holder in person, or by lawful proxy, and the annual meeting of the stockholders of said company for the choice of Directors, shall be holden at such times and places, and upon such notice as the company in their by-laws may direct.

Failure to elect directors on day fixed by the by-laws.

SEC. 4. *Be it further enacted*, That in case it shall so happen that an election for directors, shall not be made on any day fixed by the by-laws of said company, said company shall not for that cause be dissolved, but such election shall be held on any

DEFENDANT'S EXHIBIT No.

1853 L'06.

other day, which may be appointed by the directors of said company, and said directors shall have power to fill all vacancies which may occur by death, resignation, or otherwise.

SEC. 5. *Be it further enacted,* That the immediate government of the affairs of said company shall be vested in a Board of Directors not to exceed nine in number, who shall be chosen by the stockholders as herein provided; and shall hold office until others are duly elected and qualified to take their places as directors, and a majority of said directors (the President being one,) shall be a quorum for the transaction of business; they shall elect one of their number to be President of the company, and may also choose a Secretary and other officers as they may deem necessary.

*Power vested in a board of Directors.*

SEC. 6. *Be it further enacted,* That the said President and Directors, or a majority of them, may appoint all such officers, engineers, agents and servants, as they may deem necessary to carry on the business of said company, and may dismiss them at pleasure, and may determine the compensation of all officers, engineers, agents and servants of said company, and shall have power to pass all by-laws they may deem necessary and proper, for the efficient exercise of all the powers vested in said company; *Provided,* Such by-laws shall not conflict with the constitution or laws of this State, or of the United States.

SEC. 7. *Be it further enacted,* That the President and Directors of said company are hereby authorised to contract for and receive conveyances of land for the tracks of Railroad one hundred feet wide, also for the depots, stations, side tracks, cuttings, embankments, &c., and of stone, timber, gravel, wood, earth, and of all other property, estate or materials, which may be necessaay or required in the construction and keeping up of said Railroad, and when the owner and company cannot agree upon the price, or when the owner is an infant, *non compus mentis,* or non-resident, then it shall be the duty of the Clerk of the Circuit Court of the county in which the lands are situate, on the application of said company, or its agent or agents

*President and Directors authorised to contract.*

**1855—56.**

to issue a writ of *ad quod damnum* commanding the sheriff that without delay, he cause a jury of six good and lawful men to go upon said land on a day appointed by said sheriff ; and whereof he

Notice to be shall give notice to the owner, executor, adminis-
given. trator, trustee or guardian at least five days before such day, if they be within his county, or if not, or if the owner or owners, or residence of such owner or owners be unknown, then notice shall be given by advertisement, posted up by said sheriff, at some conspicuous place at least five days before such appointed day, and also by advertising the same in some newspaper published in the county at least three weeks, by weekly insertions, prior to said day, and then cause said jury after being sworn by himself or Justice of the Peace to make true inquest of the damage that will be sustained by such owner or estate by reason of making said road through such land, and in making said valuation, the jury shall take into consideration as well the benefit and advantage the owner may receive from the establishment of said road, as the loss or damage which may occur to the owner or owners in consequence of the lands being taken, and shall state particularly the nature and amount of each, and the excess of loss and damage above the benefit and advantage shall form the measure of the valuation of said land or right of way. If any juror shall fail to appear, or by reason of challenge or other cause, fail to serve, the sheriff shall com-

Failure to ren- plete the jury from the bystanders. If they fail to
der a verdict render a verdict, the sheriff shall, on the same or subsequent day, empannel a new jury until a verdict be had. Such inquest and verdict certified by the sheriff, shall be returned to the office of the Clerk of the Circuit Court and filed, and shall vest in said company the right to occupy and use such lands, &c., for the purposes of said road upon the payment of the damages, assessed or on deposit of the same with the Judge of Probate of the proper county, which judge shall be liable on his official bond for said sum so deposited, to the proper party.

SEC. 8. *Be it further enacted,* That it shall be the duty of the sheriff to hold said inquest within

DEFENDANT'S EXHIBIT N

ten days after the receipt of said writ, except in case of absence as aforesaid, in which case he shall be allowed thirty days, and an additional five days for every additional jury he may have under said writ, and for every default he shall be subject to a fine, by the Circuit Court, upon five days notice, at the instance of either party, of not less than ten nor more than fifty dollars, each juror and witness shall be subject to a fine of ten dollars for non-attendance, of all such fines and costs the Circuit Court of the county shall have jurisdiction, said court may excuse either upon proper showing. For each writ of *ad quon damnum* the Clerk shall be entitled to seventy-five cents, and the like sum of seventy-five cents for receiving and filing the same. The sheriff shall be allowed seventy-five cents for each notice, besides printers' fees not to exceed two dollars in each case. For holding said inquest and returning the same five dollars, besides twenty-five cents for each witness summoned; jurors shall be allowed seventy-five cents per diem each, which fees are not allowed until a verdict be returned and filed, and shall be taxed in the bill of costs and paid by the company; *Provided*, that the said costs shall be taxed against the owner or owners of said lands in all cases in which said company may have tendered to the owner or owners, before the issuance of a writ as provided for, a sum as great as the damages assessed; *Provided*, That the work or labor of said company shall not be delayed on account of the proceedings had as aforesaid.

Sec. 9. *Be it further enacted*, That the President and Directors shall have power to require the stockholders to pay such instalments as their respective shares of stock in said company, and at such times as they may deem for the interest of said company, and upon the failure, or refusal of any stockholder to pay the required instalment, they may, upon giving thirty days notice to said defaulting stockholder of the intended motion, move the Circuit Court of the said county in which said stockholder may reside for judgment against said stockholder for the amount called for by the President and directors of said company, or may upon such default upon giv-

*Duty of Sheriff.*

*Compensation.*

*Proviso.*

*Power of President and Directors.*

DEFENDANT'S EXHIBIT N

1855–56.

Notice to be given.

ing twenty days notice by advertisement, and to said defaulting stockholder, proceed to sell at public outery to the highest bidder the share or shares owned by such defaulting stockholder, or such part as they may think proper, and if upon such sale the stock offered shall sell for less than the sum so required or called in, the said defaulting stockholder shall be subject to judgment for such deficiency, as hereinbefore specified without a sale, and such Circuit Court is hereby authorized and empowered and required to render judgment against the defaulting stockholder at the same term of the court at which such motion is made, and execution shall issue as upon judgments in other cases for the amount of said judgment and costs; and all notices required to be given to any defaulting stockholder shall by and in the name of the Secretary to the Board of Directors, and served by the sheriff of the county of the residence of such defaulter, and returned to the office of the Clerk of the Circuit Court as in cases of common summons, and the sheriff shall be entitled to one dollar for serving such notice, which, with all costs that may accrue, shall be paid by such defaulting stockholder, and for which execution may issue.

Obstructing road.

SEC. 10. *Be it further enacted*, That in case any person shall wilfully injure or obstruct the said road in any degree, he shall forfeit and pay to said President and Directors of said company three times the amount of all damages sustained in consequence thereof, to be sued for and recovered in the same manner as provided by law for individuals in like cases, and on complaint made to any court within whose jurisdiction such offence shall be committed, it shall be the duty of such court to bind the person or persons so offending with sufficient security for his or their good behaviour for a period not less than one year, and such offender shall also be subject to indictment, and shall upon conviction, be sentenced at the discretion of the court, to be imprisoned not less than three nor more than six months.

Rights of company.

SEC. 11. *Be it further enacted*, That the said Company shall have the right to construct bridges for

DEFENDANT'S EXHIBIT N

their road, and to cross or intersect any established roads provided the passage of such established road is not impeded, and said company may cause any road or way to be changed or altered in such manner that said Railroad may be made on the best site of ground ; *Provided*, The Company shall put such road or way in as good condition as at the time of changing the same.

SEC. 12. *Be it further enacted*, That said company shall have power to borrow money on the faith and credit of the company to carry into effect the purposes of this act, and to issue and sell the bond or bonds of the company therefor in such form and at such rate of interest as the Board of Directors may prescribe, on all the property, means, and effects or any portion thereof.

SEC. 13. *Be it further enacted*, That after the construction of said Railroad or any part thereof, the company may collect toll from any person who may ride thereon, or transport merchandise or any commodity, thing, or property thereon.

<em>May collect toll.</em>

SEC. 14. *Be it further enacted*, That said Railroad shall be commenced within five years, and be completed as far as Tuskegee, within seven years from the passage of this act.

APPROVED, Feb. 15, 1856.

---

[No. 283.]      AN ACT

To incorporate the Mobile Steam Ship Company.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That William Jones, junior, James Battle, Chas. W. Dovrance, Charles Walsh, John W. Murrell, Newton St. John, Henry A. Schroeder, Charles D. Dickey, Johnathan Emanuel, and Jones M. Withers, and their associates who have subscribed for the purchase of the Steamship

<em>Corporators.</em>

DEFENDANT'S EXHIBIT N

**1855-'56.**

248

called the "Quaker City," and all other persons who may hereafter subscribe to the stock hereinafter named be, and they are hereby constituted a body **Name and style** politic and corporate by the name and style of the Mobile Steam Ship Company, and by that name shall be, and are hereby declared capable in law, to have own, and enjoy to them and their successors, real estate, not exceeding in value, one hundred thousand dollars, and personal property, goods, chattels, and effects of whatever kind, and the same to grant, sell, and dispose of, at their pleasure, to sue and be sued, plead and be impleaded in any court whatsoever; to have a common seal, and the same to break, alter and renew, at their pleasure, and by their directors as hereinafter provided; to ordain and establish by-laws, and repeal and alter the same at pleasure; *Provided,* said **Proviso.** by-laws shall not be inconsistent with this charter, nor with the laws of this State and the United States, and provided nothing herein contained shall vest in the said corporation banking privileges.

SEC. 2. *Be it further enacted,* That the capital **Amount of cap-** stock of the said corporation shall be five hundred **ital stock.** thousand dollars, with liberty to increase the same to one million of dollars; said stock shall be divided into shares of one hundred dollars each, and shall be deemed personal property, and transferable in such manner as the said company by its by-laws may direct; the said corporation may commence operations when one hundred Thousand dollars of its stock shall have been subscribed; if at any time it is desired to increase the said stock to any amount beyond the said sum of five hundred thousand dollars, the directors for the time being shall appoint five commissioners to open books of subscription at such places as said directors may appoint; of which ten days notice shall be given by advertisement in some newspaper published at the appointed place of subscription; and such new subscriptions shall be under such rules and regulations as the directors may prescribe.

SEC. 3. *Be it further enacted,* That said com- **Power of com-** pany shall have power to build, purchase, or char- **pany.** ter, and to possess and own such ship or ships,

vessel, as they may see fit, to be propelled in whole
or in part by steam, or any other expansive fluid
or gas, or other motive power, and to run and nav-
igate the same, or to cause the same to be run and
navigated between the port of Mobile and the port
of New York, or any port or ports on the Atlantic
Ocean or Gulf of Mexico, and to touch at, and
trade to, and with any intermediate port or ports
as the said company may deem expedient, and also
to build, purchase, own, or charter, any and all
auxiliary vessels that may be deemed needful to
provide fuel or other necessaries or to aid in the
transportation of freight and passengers to and
from any sea-going vessel that may be in the em-
ployment of said company ; *Proviso*. *Provided*, That such
auxiliary vessels shall transport freight and passen-
gers to and from such sea-going vessels as may be
in the employment of said company only to and
from the limit of tide water ; the said company
may also purchase or own, and hold to themselves
and their successors, all wharves and warehouses
in the county of Mobile that may be necessary or
expedient for the prosecution of the business afore-
said, not exceeding one hundred thousand dolars in
value, and may invest their earnings in any species
of personal property not inconsistent with the pro-
visions of this charter.

SEC. 4. *Be it further enacted*, That the affairs
of said corporation shall be managed by a Board **Board of direc-**
of Directors to be chosen by the stockholders **tors.**
from among themselves by ballot, at their annual
meeting in each and every year four of whom shall
constitute a quorum, said directors shall choose
from their number one to act as President of the
company ; he shall hold his office for one year ;
the said company shall have such other officers and
agents as it may deem necessary for the transaction
of its business, who shall be elected in the mode
and whose duties shall be such as may be declared
by the by-laws of the company passed in pursuance
of the provisions of this act.

SEC. 5. *Be it further enacted*, That it shall be
the duty of the persons named in the first section
of this act, as soon as practical after the passage

32

DEFENDANT'S EXHIBIT N
250

1855–'56.

*Call a meeting of stockholders.*

thereof, to call a meeting of the stockholders of the company; at such meeting or at an adjourned meeting to be called for the purpose ; the said stockholders shall elect seven directors of the company who shall be stockholders and shall hold their office till the annual meeting of the company in the year 1857 ; the said board of directors shall have power to make such by-laws and regulations for the management of the business of the corporation as they see fit, not inconsistent herewith, or the laws of the land; each stockholder shall be entitled at all meetings of the stockholders to one vote in person or by proxy, for every share of stock held by him or her, and no stockholder shall in any way be liable for any debt contracted by the corporation beyond the amount of his interest in the stock of the said company.

*Instalments to be paid.*

SEC. 6. *Be it further enacted,* That it shall be lawful for the directors of the said company to call in and demand from the stockholders respectively, all sums of money by them subscribed, at such times and in such sums or instalments as may have been agreed upon at the time of subscription, or as may have been prescribed as the conditions of subscription, and if the amount so due and called for remain unpaid for the space of thirty days, the said board of directors may declare the stock with all payments thereon previously made forfeited to the company, or at their option, the amount so due and unpaid may be recovered by suit in the name of the corporation.

*Wind up its affairs, &c.*

SEC. 7. *Be it further enacted,* That in case from any cause it becomes necessary to wind up the affairs of said corporation, and an amicable arrangement of its affairs cannot be made among the parties interested, it shall be the duty of the Chancellor of the Southern Chancery Division, upon the application by bill of stockholders holding a majority of the stock, to take jurisdiction of the case, and if necessary, for the interest of parties concerned, to appoint three suitable persons commissioners, (who, if required, shall give bond for the faithful performance of the trust,) who shall take possession of the property and assets of the corpo-

ration, collect in its debts and demands, and as speedily as possible under the direction of the Chancellor, wind up and settle the affairs of the company, and make equitable distribution among the parties interested. <span style="float:right">Under direction of Chancellor.</span>

SEC. 8. *Be it further enacted,* That the directors of said corporation shall have power to call a general meeting of the stockholders at any time they may deem expedient and any number of stockholders holding or representing one third of the capital stock paid in, may at any time call a general meeting of the stockholders relative to the affairs of the corporation, giving at least thirty days notice of the time and place of such meeting in some one or more of the newspapers published in the city of Mobile, and specifying the purpose or purposes thereof. <span style="float:right">General meeting of stockholders.</span>

APPROVED, January 19, 1856.

---

[No. 284.]                AN ACT

To establish a Medical Board in the County of Greene.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That in addition to the Medical Board now established by law, there shall be, and is hereby established one in the county of Greene ; said Board shall be governed by the same rules laws and regulations in every respect as those now prescribed for the government of other Medical Boards in this State; *Provided,* That nothing in this act shall be so construed as to effect the rights or privileges of those who may practice or desire to practice the Botanic or Eclectic System in this State. <span style="float:right">Proviso.</span>

SEC. 2. *And be it further enacted,* That doctors W. T. Webb, T. C. Orsborne, John H. Parrish, T. M. Peterson, are hereby constituted said Board to be styled the Medical Board of Physicians for the county of Greene. <span style="float:right">Names of Corporators.</span>

APPROVED, Feb. 14, 1856.

**1855–'56.**

252

[No. 285.]        *AN ACT

To incorporate the Medical College at Mobile.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That there be erected, authorized, constituted, and established, in the city of Mobile a body politic and corporate, to be called the Alabama Medical College at Mobile, as hereafter in this act provided.

*Name and style*

SEC. 2. *And be it further enacted,* That the corporate powers of said Medical College shall be, and are hereby vested in a board of trustees to consist of a number not less than twelve nor more than twenty-four, which Board shall have perpetual succession, with power from time to time to fill all vacancies in their body, and shall have power to increase their number as hereinbefore specified, and that John J. Walker, Newton St. John, James Battle, Bishop M. Portier, Robert A. Baker Gen. T. L. Toulmin, A. R. Manning, T. B. Bethea, Burwell Boykin, Arthur F. Hopkins, Cyrus Sibley shall be the first members of said board.

*Corporators.*

SEC. 3. *And be it further enacted,* That the said Board of Trustees and their successors forever, shall have full power and authority to elect and appoint a Faculty to teach such sciences and arts as are usually taught in Medical Colleges, and when a vacancy occurs in said faculty, to fill said vacancy upon the recommendation of two-thirds of the remaining members of the Faculty, to displace the same, to declare the tenure and duties of their respective offices, to enact such by-laws as they shall deem proper, so that the same be not repugnant to the laws of the land, to elect such officers as may be necessary for their proper organization, to have a common seal, to grant and confer such honors and degrees as are usually granted and conferred by Medical Colleges, to revoke the same, to contract and be contracted with, to sue and be sued in and by their corporate name aforesaid, and to acquire, receive and hold, by purchase, gift, devise, or otherwise, and to sell all such real or personal estate of

*Power and authority of board of trustees.*

every name and kind as they may deem necessary
for the purposes of said college, but for no other
purpose whatever; and all property, real or perso-
nal of said College shall be, and the same is hereby
made free and exempt from taxation ; *Provided,*
The existing Faculty shall vote in elections to <span>Proviso.</span>
fill any vacancy in the Faculty.

Sec. 4. *And be it further enactd,* That seven <span>Constitute a quorum.</span>
members of the Board of Trustees shall constitute
a quorum for the transaction of business ; the
President shall appoint the time and place of hold-
ing the meeing of the board, of which due notice
shall be given in writing to each member.

Sec. 5 *And be it further enacted.* That this act
may be altered, repealed or modified upon applica-
tion of not less than two-thirds of the members of
the Board of Trustees, or upon application of the
Faculty.

Sec. 6. *And be it further enacted,* That all laws
and parts of laws conflicting with the provisions of
this act be, and the same are hereby repealed.

* This bill was vetoed by the Governor, and then passed by the con
stitutional majority, January 24th, 1856.

[No. 286.]          AN ACT

To establish a Medical Board in the County of
Chambers.

Section 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened,* That doctors J. W. Her-
rell, L. C. Ferrell, Geo. F. Taylor, Thos R. Rus-  <span>Corporators.</span>
sel, David A. Thomas, James M. Greene, and W.
E. Allen they, and their associates, and successors
in office, are hereby constituted a Board of Physi-
cians for the county of Chambers, to be known as
the " Chambers County Medical Board," and by  <span>Name and style</span>
that name may sue and be sued, plead and be im-
pleaded in the courts of law and equity of this
State, as a private person, and they or a majority
of them are hereby authorized to elect a President

and Secretary, and such other officer or officers as they may deem necessary to a proper discharge of the duties of said corporation, and discharge all duties incumbent on said Board.

**Board to meet annually.** SEC. 2. *And be it further enacted,* That said board shall meet annually in the town of LaFayette in said county, on the first Monday in May in each and every year, and at such others times as they may desire, a majority of whom shall have full power to fill any vacancy or vacancies in said board whether by death, resignation, or otherwise.

**Duty of Board** SEC. 3. *Be it further enacted,* That it shall be the duty of said board to examine applicants for permission to practice medicine, to grant license in their discretion, and to do all other business, authorized or required of Medical Boards in this State, and they may make all such by-laws, rules and regulations for the proper government of said body, not inconsistent with the constitution and laws of the State of Alabama.

**Required to keep a record.** SEC. 4. *And be it further enacted,* That said board are hereby required to keep a record of their constitution and laws, and to whom they grant license to practice, and all other acts of said board, which record shall be subject to inspection of any and all persons interested, and they are hereby required to procure and keep an official seal, with such device or devices as they may deem suitable, and their associates and successors are hereby declared capable in law and equity to receive, hold and enjoy the privileges and property of said board.

**Jurisdiction of Board.** SEC. 5. *Be it further enacted,* That the jurisdiction of said Medical Board in the exercise of its privileges and duties shall extend over the county of Chambers, and licences granted shall be good and valid over all parts of the State.

**License required.** SEC. 6. *Be it further enacted,* That no physician shall be allowed to practice medicine or surgery in said county unless he be licensed by said board, or unless such person is at this time a practicing physician or a graduate of some reputable Medical College, or has a license from some Medical Board in this State.

SEC. 7. *Be it further enacted*, That nothing in this act shall be so construed as to effect the rights or privileges of those who practice the botanic system of medicine in said county.

APPROVED, Feb. 1, 1856.

———

[No. 287.]      AN ACT

To establish a Medical Board in the County of Henry.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened*, That doctors John P. Crawford, O. B. Bowen, James Golespie, John E. Price, F. B. Wakefield, Dr. Martin and Dr. Thomason, they and their associates and successors in office, are hereby constituted a board of physicians for the county of Henry, to be known as the Henry County Medical Board, and by that name may sue and be sued, plead and be impleaded, in every Court of law or equity in this State as a private person, and they or a majority of them are hereby authorized to elect a President and Secretary, and such other officer or officers as they may deem necessary to a proper discharge of the duties of said corporation, and discharge all duties incumbent upon said board. *Corporators.* *Name and style*

SEC. 2. *Be it further enacted*, That said board shall meet annually in the town of Abbeville in the county of Henry on the first Monday in February in each and every year, and at such other times as they may desire, a majority of them shall have full power to fill any vacancy or vacancies in said board, whether by death, resignation, or otherwise. *Board to meet annually.*

SEC. 3. *Be it further enacted*, That it shall be the duty of said board to examine applicants for permission to practice medicine, to grant license in their discretion and to do all other business authorized or required of Medical Boards in this State, and they may make all such by-laws, rules and regulations for the proper government of the body, *Duty of Board*

1855– 56.

not inconsistent with the constitution and laws of the State of Alabama.

**Requirements of Board.**
SEC. 4. *Be it further enacted*, That said board are hereby required to have and keep a record of their constitution and laws, and to whom they grant license to practice, and all other acts of said board, which record shall be subject to the inspection of any and all persons interested and they are hereby required to procure and keep an official seal, with such device or devices as they may deem suitable, and they and their associates and successors are hereby declared capable in law and equity to receive, hold and enjoy donations of real or personal property, not exceeding ten thousand dollars in value, to have and to hold the same by gift, grant or purchase in fee simple or otherwise, and shall have power to do and perform all other acts incident to or appertaining to any Medical Board in this State.

**Jurisdiction of Board.**
SEC. 5. *Be it further enacted*, That the jurisdiction of said Medical Board in the exercise of its privileges and duties shall extend over the county of Henry, and licenses granted shall be good and valid in all parts of the State; no physician shall be allowed to practice medicine or surgery in said county unless he be licensed by the board, or unless such person is at this time a practicing physician or a graduate of some respectable college, or has a license from some Medical Board in this State.

SEC. 6. *Be it further enacted*, That nothing in this act shall be so construed as to effect the rights or privileges of those who may practice the botanic system as now regulated by law.

APPROVED, February 14, 1856.

No. 288.]                AN ACT

To incorporate the Tuskegee Insurance Company.

SECTION 1. *Be it enacted by the Senate and House
of Representatives of the State of Alabama in Gene-
ral Assembly convened.* That David Clopton, Sea- Corporators.
born Williams, James W. Echols, Sidney B. Pain,
James D. Porter and Robert F. Legin and such
others, as may hereafter become associated with
them for that purpose, and their successors are
hereby declared, and created a body politic and
corporate by the name of the Tuskegee Insurance Name and style
Company, and by that name shall be capable in
law of suing and being sued, in any of the Courts
of Law and Equity, in this State as a natural per-
son.   They shall have power to purchase, hold and
enjoy real and personal estate, of any description
whatever, and may dispose of the same at plea-
sure.   And shall have power generally, to do and
perform any and every act necessary to be done, to
carry into effect the objects of this charter, not
inconsistent with the constitution and laws of this
State and of the United States.  They have and
use a common seal and may alter the same.
SEC. 2. *Be it further enacted.* That the Capital
of said corporation, shall be fifty thousand dollars, Capital stock
and shall be divided into shares of one hundred
dollars each ; the same to be paid in the manner
following : ten dollars on each share at the time
of subscribing, and the balance in such sums and
at such times as the President and Directors may
determine upon and require.   Which Capital Stock
may hereafter be increased to any sum not to exceed
one hundred and fifty thousand dollars, the same
to be determined by a resolution of the President
and Directors.   The said Stock shall be deemed
personal property, and if any Stockholder shall
fail and refuse to make the payments as required
of him by the President and Directors, such Stock-
holder shall be liable for his or her unpaid Stock,
and may be sued for the same in the Courts of
Macon county, whether such defaulting Stockholder
resides in said county or not : and the said Stock

33

may by resolution of the President and Directors, belonging to such delinquent Stockholder be sold, in which event the portion previously paid in shall be forfeited to the corporation.

**Books of subscription to be opened.** SEC. 3. *Be it further enacted,* That the books of subscription shall be opened at any time prior to the first day of July next, at such place in the town of Tuskegee, as a majority of the persons named in the first Section of this charter may determine, and shall be kept open until the sum of fifty thousand dollars shall be subscribed, and the said persons or a majority of them shall, as soon as the said sum of fifty thousand dollars is subscribed, call a meeting of the Stockholders, who shall proceed to the election of not less than three and not more than seven Directors, as may be determined upon by them; and the said Board of Directors shall proceed to elect one of their own body President. And the said President and Directors shall have full power and authority to appoint and remove at pleasure all officers and agents of said corporation; to fix their compensation, prescribe their duties and provide for taking of bonds of officers for the protection and security of said corporation. They shall have the power to fill all vacancies which may occur in their own body of an unexpired term; shall appoint a President *pro tem*, when the President is absent, and such appointments become necessary; and should the President be from the meeting of the Board for two months, without leave, at any time, the Board of Directors shall have power to declare his office vacant and may make a new election, under such rules as they may see fit to adopt.

**Elections.** SEC. 4. *Be it further enacted,* That the Directors shall be elected by the Stockholders, and the President by the Directors, from among their own number, and when elected shall hold their office one year from the date of such election, and until their **Duty of President and Directors.** successors are elected; and it shall be the duty of the President and Directors to call an annual meeting of the Stockholders to make such election; and in all meetings of the Stockholders, those holding a majority of the Stock shall constitute a quo-

DEFENDANT'S EXHIBIT N

rum, and each Stockholder shall be allowed one vote for each share of Stock he holds, and the Stock may be represented either by the Stockholder himself or by proxy, and the power to vote for an absent Stockholder may be conferred by any written expression of such desire; *Provided*, that no one shall act as proxy, who is not himself a Stockholder.

SEC. 5. *Be it further enacted*, That the said corporation shall have power to make insurance upon ships and all other sea vessels, upon steam boats, and all other river boats, on all goods, wares and merchandize, slaves, bullion, money, and other property, against all marine or river risks, and upon houses, stores and other buildings, goods wares and merchandize of every description, against fire, and to fix a premium thereon; and may make insurance upon the lives of persons, fixing a rate of insurance thereon; to receive from any free person or persons, or from any corporation deposits on trust, and to accept all such trusts or agencies within the scope of its business, as may be confided to it. It shall have power to borrow money and issue its bonds therefor; to invest its money and property in any thing and in any manner which would be lawful for a citizen to invest money or property in, and the said property and securities to sell and transfer at pleasure; it may loan its money or property to any person or persons, or corporation, on any security which it may think proper. The said corporation shall have power to purchase, discount and sell bills of exchange and promissory notes, to receive and deposit and for collection, promissory notes and bills of exchange, and may charge for such collections, such per cent. as is usual in similar chartered Insurance Offices or private Banking Houses; *Provided*, that the said corporation, shall not make or issue any bills, bonds, notes or other securities, to circulate in the community as money; *and provided further*, that said corporation shall be subject to the laws of this State against usury.

*Power of corporation.*

SEC. 6. *Be it further enacted*, That the President and Directors of said corporation shall have power

*Power of president and directors.*

DEFENDANT'S EXHIBIT N

to fix the mode of the transfer of the certificates of Stock, as well as the time, mode and places of the payment of interest and dividends : and a majority of the Board of Directors, shall constitute a quorum. The said corporation shall also have power to pass all such By-Laws, rules and regulations, as may be necessary and proper to carry into effect the provisions of this charter, and to carry on the business of said corporation ; *Provided*, the same are consistent with the provisions of this charter and with the laws and constitution of this State and the United States. And the said corporation shall have power to make all such contracts and bargains, by the President and Directors, or by such agent as they may appoint, as may seem to them most for the interest of said corporation.

SEC. 7. *Be it further enacted.* That the President and Directors may by resolution or By-Law, create all officers and agents of said corporation, not herein specially provided for, and may prescribe their duties : they shall have power to prescribe an oath, which each officer shall take and subscribe before he enters upon the duties of his office, and they shall fix and prescribe the amount and conditions of each bond to be given by the officers.

**Liable to creditors.** SEC. 8. *Be it further enacted.* That the said corporation shall be liable to its credits, to the full extent of its property and assets, and the several Stockholders shall be liable to the creditors of the corporation to the extent of their Stock subscribed and not paid in.

**Charter to remain in force for 25 years.** SEC. 9. *Be it further enacted.* That this charter and all the powers and privileges herein contained and granted, shall remain in full force for the period of twenty-five years from the date of its approval.

SEC. 10. *Be it further enacted.* That all bills, bonds, notes or other securities made payable in, or at the office of said corporation, shall be subject to the same rules of law and to the same legal remedies, as if payable in or at one of the chartered Banks of this State.

APPROVED, Jan. 19, 1856.