# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MEYER, EVA DAVIS, SECOND AMENDMENT FOUNDATION, ILLINOIS STATE RIFLE ASSOCIATION, AND FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KWAME RAOUL, in his official capacity as Attorney General of Illinois, BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police, JOSHUA C. MORRISON, in his official capacity as State's Attorney of Fayette County, Illinois  ERIC WEIS, in his official capacity as State's Attorney of Kendall County, Illinois, CHRISTOPHER PALMER, in his official capacity as Sheriff of Fayette County, Illinois, and DWIGHT A. BAIRD, in his official capacity as Sheriff of Kendall County, Illinois <br><br> Defendants. | 21-cv-518-SMY |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Laura K. Bautista, #6289023
Assistant Chief Deputy Attorney General
Office of the Illinois Attorney General
500 South Second Street
Springfield, Illinois 62706
Phone: (217) 782-5819
Fax: (217) 524-5091
Laura.Bautista@ilag.gov

*Attorney for Defendants Brendan Kelly and Kwame Raoul*

## INTRODUCTION

Plaintiffs' motion for summary judgment swerves wildly between atextual arguments and ahistorical ones. *First*, they claim that the plain text of the Second Amendment covers 18-to-20-year-olds (it does not). *Second*, they argue that compulsory militia service at the Founding created a right to bear arms (it did not). *Third*, they argue there are no historical analogues for the laws they challenge (there are). *Finally*, they close with the argument that—because the age of legal majority was lowered since the Founding—the longstanding history of States restricting minors' possession of firearms is *irrelevant* to interpreting the Second Amendment (it is not, and *Bruen* mandates the review of such history). At bottom, Plaintiffs are deeply confused about how to interpret the Second Amendment, and their wildly divergent legal theories reflect attempts to avoid properly applying the *Bruen* text-and-history standard to their claims. Simply put, individuals under 21 years of age do not have—and have never had—a constitutional right to carry concealed weapons in America. States have long regulated minors' access to firearms, and the Constitution creates no impediment to such restrictions. If Plaintiffs wish to legally carry concealed weapons in Illinois, they should focus on persuading the General Assembly to rewrite the law, rather than trying to persuade this Court to rewrite the Constitution.

## ARGUMENT

### I.   "The People" In The Text of The Second Amendment Does Not Include Individuals Younger Than 21

Plaintiffs first argue that the plain text of the Second Amendment—specifically, the phrase "the people"—establishes that it necessarily covers 18-to-20-year-olds. Pls.' Brief Supp. Mot. Summ. J. at 5 (hereinafter, "Pls.' MSJ"). Plaintiffs argue that "the people" must mean "*all* the people" and thus the Second Amendment includes individuals between 18 and 20 years of age. This is not so.

1

*First*, the phrase "the people" is not self-defining. As the Ninth Circuit has explained, "[t]he text of the Second Amendment plainly states that the right 'to keep and bear Arms' is reserved only to 'the people.' Far from plain, however, is the scope of those who fall within 'the people.'" *United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019). And the meaning of "the people" in the Constitution has been given different interpretations by courts over time. *Compare United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (defining "the people" as those with "sufficient connection" to the country) *with Dist. of Columbia. v. Heller*, 554 U.S. 570, 581, 635 (2008) (describing "the people" in the Second Amendment as "all Americans" but also as "law-abiding, responsible citizens"); *see also Torres*, 911 F.3d at 1258–61 (describing circuit courts' varying approaches to defining "the people" in the Second Amendment). Contrary to Plaintiffs' bald assertion, *Heller* did not define the scope of "the people" in the text of the Second Amendment, and no court has decided a Second Amendment question on the basis of that term alone. *See United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) (*Heller's* reference to "the people" in the Second Amendment "did not reflect an attempt to define the term."); *see also Torres*, 911 F.3d at 1259 ("[T]he *Heller* decision did not resolve *who* had the Second Amendment right"). Thus, by itself, the fact that the Second Amendment refers to "the people" does not resolve whether 18-to-20-year-olds are within that term or not.

Moreover, Plaintiffs' position, taken literally, would mean that undocumented immigrants, felons, the mentally ill, and even children enjoyed full Second Amendment rights. But *Heller* itself makes clear that this is not so, explaining that "nothing" in the Court's opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller*, 554 U.S. at 626. And courts have also concluded, following *Heller*, that "the people" does not include undocumented immigrants, *see United States v. Portillo-Munoz*, 643 F.3d 437,

442 (5th Cir. 2011); *United States v. Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012), nor children, *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009). Plaintiffs thus err in suggesting that the text alone resolves the question of the Second Amendment's reach.

*Second*, Plaintiffs continue their strained reading of the Second Amendment by arguing that the Constitution as a whole—by using specific age-related provisions in some clauses but the term "the people" in others—supports their theory that no age restriction can exist under the Second Amendment. Pls.' MSJ at 6–7. But such an intratextual reading actually points in the opposite direction, suggesting that States *may* regulate the possession and use of firearms by age. For example, Plaintiffs cite the Twenty-Sixth Amendment (which prohibits denying the right to vote based on age to those who are at least 18 years old) to argue that "the Founders considered age and knew how to set age requirements" yet expressed no such restrictions in the Second Amendment. Pls.' MSJ at 6. But the Twenty-Sixth Amendment was ratified in 1971, almost *two hundred years after the Founding*. *See* U.S. Const. amend XXVI. Indeed, the fact that later generations had to amend the Constitution to prohibit age-based restrictions on the right to vote makes clear that the Founders (and every generation of Americans until 1971) understood that the right to vote *could* be restricted by age before that time. And, in fact, "before ratification of the 26th Amendment in 1971, states rarely permitted individuals under 21 to vote." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 992 (W.D. Wash. 2020), *vacated and remanded*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022). The structure of the Constitution, in other words, defeats Plaintiffs' argument rather than supporting it.

Plaintiffs are also wrong to suggest that because the First and Fourth Amendments use the term "the people" and have been read to apply to minors, so, too, must the Second Amendment apply "as a textual matter" to minors. Pls.' MSJ at 5–6. To start, Plaintiffs' argument is a startling

one: To Defendants' knowledge, no court has ever held that the Second Amendment applies equally to children—those under the age of 18—as it does to adults, as Plaintiffs appear to suggest. *See id.* at 7 (the Second Amendment protects "*all* Americans *regardless of age*" (emphasis added)); *id.* at 5-6 (Amendment protects "*all* the people" (emphasis added)). That reading of the Amendment—under which our Nation's schoolchildren possess rights commensurate with those of "law-abiding, responsible citizens," *N.Y State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131 (2022), cannot be squared with precedent, history, or common sense.

In any event, Plaintiffs' analogy to the First and Fourth Amendments falls flat. Neither of those amendments has been interpreted to extend commensurate with "history and tradition," *id.* at 2128, as *Bruen* explains the Second Amendment must be. Indeed, the Supreme Court's decisions extending the First Amendment to minors have been criticized on exactly that ground. *See Morse v. Frederick*, 551 U.S. 393, 410–11 (2007) (Thomas, J., dissenting) ("In my view, the history of public education suggests that the First Amendment, as originally understood, does not protect student speech in public schools."); *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 821 (2011) (Thomas, J., dissenting) ("The practices and beliefs of the founding generation establish that 'the freedom of speech,' as originally understood, does not include a right to speak to minors (or a right of minors to access speech)…"). Similarly, the Fourth Amendment applies to children today only because the Supreme Court held so in the twentieth century, again without analyzing text or history. *See New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985) (rejecting *in loco parentis* authority as a basis for denying Fourth Amendment protections because it is "in tension with contemporary reality"); *see id.* at 350 (Powell, J., concurring) ("[I]t would be unreasonable and *at odds with history* to argue that the full panoply of constitutional rules applies with the same force and effect in the schoolhouse as it does in the enforcement of criminal laws." (emphasis added)). Plaintiffs cannot

rely on precedents from these areas, because in neither context has the relevant amendment been read to rise and fall with text and history, as the Second Amendment has.

Viewed through the lens of history, as the State has explained, the Second Amendment was *not* originally read to include individuals younger than 21, because such individuals were minors who lacked full constitutional rights until they reached the age of legal majority. Defs.' Motion for Summary Judgment at 17–25, ECF 101 (herein after "Defs.' MSJ"). An overwhelming number of federal courts, both in circuit courts and in district courts, have agreed. *See id.* at 24 (collecting cases). Plaintiffs cite only two cases that have reached contrary conclusions: an out-of-state district court opinion and a now-vacated Fourth Circuit opinion. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F. 4th 407, 435, *vacated as moot*, 14 F. 4th 322 (4th Cir. 2021); *Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-cv-1245, 2022 WL 3656996, at *5 (N.D. Tex. Aug. 25, 2022). But both cases rely on unsupported assertions about the nature and scope of the First and Fourth Amendments to reach their conclusions. *Hirschfeld*, for instance, reasoned that "the First and Fourth Amendments applied to minors at the Founding as they do today," 5 F. 4th at 435, notwithstanding the historical evidence that, in fact, minors enjoyed few if any speech rights at the Founding, *see Brown*, 564 U.S. at 821 (Thomas, J., dissenting). And *McCraw* read *Verdugo-Urquidez*, among other cases, to stand for the proposition that "'the people' is defined consistently throughout the Constitution" as "all persons," *see* 2022 WL 3656996, at *4, notwithstanding the Supreme Court's explanation in that case that "'the people' seems to have been a term of art employed in select parts of the Constitution," and "contrasts with" other amendments' use of the term "person." 494 U.S. at 265-66. The Court should thus follow the wide range of cases to have rejected Plaintiffs' textual argument, not the outlier cases to have accepted it.

In short, Plaintiffs' argument that the Second Amendment's use of the phrase "the people" necessarily includes those under 21 (1) is not found in the text itself, (2) is refuted by an intratexual analysis of the Constitution, and (3) has no basis in history or Supreme Court precedent.

## II.   Compulsory Militia Service At The Founding Does Not Create A Right To Keep and Bear Arms For Those Younger Than 21

Plaintiffs also argue, more specifically, that the Second Amendment must extend to those at least 18 years old because, at the time of the Founding, the word "militia"—which is used in the Amendment's text—was understood to include all men who were at least 18 years old. In other words, Plaintiffs argue that compulsory militia service for 18-to-20-year-olds at the Founding means that these same individuals have a right to carry firearms in a concealed manner today. This argument fails as a matter of precedent, history, and logic.

*First*, Plaintiffs' argument cannot be squared with *Heller*, where the Supreme Court itself decoupled the right to bear arms from the duty to serve in the militia. *See Heller*, 554 U.S. at 589–94; *see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 n. 17 (5th Cir. 2012) (observing that *Heller* held that "the right to arms is not co-extensive with the duty to serve in the militia"); Defs.' MSJ at 20.

*Second*, regardless of *Heller*, Plaintiffs' argument proceeds from a faulty premise, namely that militia service was uniformly linked to the age of 18. In fact, in the Founding era, the age for compulsory militia service varied widely between states and over time, often either dipping below 18 or rising to 21. *See, e.g.*, Act of Apr. 3, 1778, ch. 33, 1778 N.Y. Laws 62 (assigning to militia "every able bodied male person [with exceptions] from sixteen years of age to fifty"); *compare* An Act for the Better Regulating [of] the Militia, ch. 20, §§ 1, 4, 1777 N.J. Acts 26 (setting minimum age at 16 in 1777), *with* An Act to embody, for a limited Time, One Thousand of the Militia of this State, for the Defence of the Frontiers thereof, ch. 24, §§ 3–4, 1779 N.J. Acts 58, 58–69 (setting

6

minimum age at 21, but reserving right to accept age 16–21, in 1779); *see also* David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U.L.J. 495 (2019).

For example, in 1705, Virginia mandated militia duty at the age of 16. An act for settling the Militia, ch. XXIV, 3 William Waller Hening, The Statutes At Large; Being A Collection Of All The Laws Of Virginia ("Hening") 335, 335-36 (1823). In 1723, it raised the age to 21. An Act for the settling and better Regulation of the Militia, ch. II, § II, 4 Hening 118, 118 (1820). In 1755, it lowered the age to 18. (An Act for the better regulating and training the Militia, ch. II, §§ II-III, 6 Hening 530, 530-31 (1819)). At the beginning of the Revolutionary War, Virginia lowered the minimum age to 16. An ordinance for raising and embodying a sufficient force, for the defence and protection of this colony, ch. I, 9 Hening 9, 16-17 (1821). It then to raised it back to 18 after the war. An act for amending the several laws for regulating and disciplining the militia, and guarding against invasions and insurrections, ch. XXVIII, § II, 11 Hening 476, 476-77 (1823). In addition, during the nineteenth century, several states mandated militia enrollment at age 21, rather than 18. *See, e.g.*, N.C. Const. of 1868, art. XII, § 1 (1873). As the Fifth Circuit observed, "[s]uch fluctuation undermines" the claim that a right under the Second Amendment "must fully vest precisely at age 18—not earlier or later. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 n.17 (5th Cir. 2012); *accord Nat'l Rifle Ass'n of Am., Inc. v. Swearingen*, 545 F. Supp. 3d 1247, 1256-59 (N.D. Fla. 2021) (canvassing historical evidence and finding that "there was no uniform age for militia service"; rather, "[i]n times of war, the age for service in the militia crept down towards sixteen" and "in times of peace, it crept up towards twenty-one"), *appeal docketed*, No. 21-12314 (11th Cir.).

*Third*, as Defendants have explained, even if some States "compelled some infants to keep and bear arms" at and before the Founding, that "did not establish a right that minors could claim

against government." Cornell Report at 18, ECF 104-2. Many States at the time of the Founding made minors' *parents or guardians*—not the minor himself—"liable for any penalty that accrued" because the minor failed to meet their militia obligations, including failing to acquire "suitable weapons." *Id.* Additionally, individuals "below the age of legal majority could not volunteer for military service without seeking permission from a parent or legal guardian . . . ." *Id.* at 20–21. Minors serving in the militia could even be whipped by the authorities for failing to comply with militia statutes, which is "hard to reconcile with the idea that these laws offer evidence of a *right* that might be asserted against government." *Id.* at 21. Even participation in the hue and cry—a practice referenced by Plaintiffs, *see* Pls.' MSJ at 14—"would have been supervised by adults." *Id.* at 21. And all of this took place, of course, against the background rule that individuals younger than 21 could not "do any legal act, nor make a deed, nor indeed any manner of contract." William Blackstone, *Commentaries* 448–54, 453 (1765)[1]; *see also* Williston on Contracts § 9:3 (4th ed.) ("For centuries, the age of 21 was fixed by the law as that age at which either a man or a woman was regarded by the law as acquiring full capacity."). Minors could not even sue or be sued except under his or her guardian. Blackstone, *supra*, at 452. Plaintiffs dispute none of these principles, but they are all but dispositive: It strains reason to believe that individuals younger than 21 at the time of the Founding had a right to carry concealed firearms when they could not sue or be sued, enter into contracts, or "do any legal act." Blackstone, *supra*, at 452–53.

Even setting all the above aside, Plaintiffs' militia argument fails for the independent reason that a government mandate to engage in certain conduct does not create an individual right to take that same conduct. For example, even though citizens have a duty to serve on a jury, "[a]n individual juror does not have a right to sit on any particular petit jury," *Powers v. Ohio*, 499 U.S.

---

[1] https://avalon.law.yale.edu/18th_century/blackstone_bk1ch17.asp.

400, 409 (1991); and even though there is a duty to serve in the military if drafted, "[i]t is well established that there is no right to enlist in this country's armed services," *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir. 1981). The Supreme Court made that clear in the militia context almost 150 years ago. *See Presser v. Illinois*, 116 U.S. 252, 263 (1886) (holding that participation in a non-government-organized militia "cannot be claimed as a right independent of law"). The same is true here: a government militia mandate does not magically create a corresponding constitutional right to bear arms.

### III.    The Historical Tradition of Regulating Minors' Possession of Firearms Supports the Constitutionality of Illinois' Concealed Carry Statutes

Finally, Plaintiffs cherrypick from the historical record to argue that (1) there is a tradition of 18-to-20-year-olds bearing arms at the Founding, (2) "there is no evidence of any laws restricting the carry rights to of 18-to-20-year-olds because of their age" at the time of the Founding, and (3) laws from the nineteenth century that restricted minors' access to firearms are irrelevant to this case, in part because those laws restricted minors and 18-to-20-year-olds are no longer minors in Illinois today. Pls.' MSJ at 13–19. All of these arguments are wrong.

To be clear, because Plaintiffs cannot show that the plain text of the Second Amendment covers 18-to-20-year olds (as explained in Part I, *supra*), and because the State has shown that the historical public understanding of the Second Amendment at the time of the Founding excludes such individuals, this Court need not engage in any additional historical analysis. Even so, there is ample historical evidence supporting the constitutionality of Illinois' concealed carry laws under the *Bruen* standard, despite Plaintiffs' arguments to the contrary.

*First*, Plaintiffs are wrong twice over to suggest that an asserted tradition of 18-to-20-year-olds bearing arms at the Founding resolves this case. This argument stems from misunderstandings of both *Bruen* and history.

To start, plaintiffs err in asserting that the only relevant historical time period for analyzing the Second Amendment is 1791. *See, e.g.*, Pls.' MSJ at 11–13. In reality, *Bruen* expressly left open whether courts should primarily look to 1791 or 1868 (when the Fourteenth Amendment was ratified) to find the public understanding of the right to bear arms. *See Bruen*, 142 S. Ct. at 2138. At the same time, both *Bruen* and *Heller* extensively reviewed nineteenth century laws, treatises, and other sources in conducting their historical analyses. *See id.* at 2133; *Heller*, 554 U.S. at 577–78, 581, 593, 601, 602–603, 608, 610–619. The *Bruen* Court also pointed to "ongoing scholarly debate" about the appropriate period of historical analysis, citing multiple scholars who contend that 1868 is the proper period for defining the scope of the Second Amendment in a case involving a state law and none making the opposite claim. *Bruen*, 142 S. Ct. at 2138.

When courts assess the constitutionality of a state law, as a matter of original meaning the appropriate focus should be 1868, because that was when the right to bear arms expressed in the Second Amendment was first made applicable against the States. *See* 142 S. Ct. at 2137 (a State "is bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second."). Several circuits, including the Seventh Circuit, concluded that 1868 is the proper focus of historical analysis when applying the first step of the pre-*Bruen* framework. *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is [to] a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."), *overruled on other grounds by Bruen*, 142 S. Ct. at 2124, 2126–27; *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) ("*McDonald* confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified."); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (following *Ezell*); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 227 (3d Cir. 2021) ("[T]he question is

10

if the Second and *Fourteenth Amendments'* ratifiers approved [the challenged] regulations ….”
(emphasis added)); *Binderup v. Att'y Gen.*, 836 F.3d 336, 362 (3d Cir. 2016) (en banc) (Hardiman,
J., concurring in part and in the judgment) (quoting *Ezell*). Plaintiffs are thus wrong to contend
that only Founding-era evidence is relevant. Rather, evidence from the Founding period through
the nineteenth century (and particularly around the ratification of the Fourteenth Amendment) can
and does shed light on the public understanding of the right to bear arms at the time the Second
Amendment became applicable against Illinois.

Plaintiffs are also wrong on the history. Plaintiffs argue there is a “deep-rooted” tradition
of “young adults” bearing arms, but their claim rests entirely on the Ninth Circuit’s opinion in
*Jones v. Bonta*, which was subsequently vacated after *Bruen* issued. Pls.’ MSJ at 13 (citing *Jones
v. Bonta*, 34 F.4th 704, 717, *opinion vacated*, 47 F.4th 1124 (9th Cir. 2022)). On the merits, their
historical argument appears to rise and fall primarily with their claim about compulsory militia
service for 18-year-olds. *See* Pls.’ MSJ at 13. But compulsory militia service does not create a
corresponding right to bear arms, as the State has explained. *See* Part II, *supra*. Beyond that basic
point, Plaintiffs offer no evidence *at all* that 18-to-20-year-olds commonly bore arms privately in
the Founding Era. They assert—without citation to *any* historical evidence— that “18-year-olds at
the Founding” were not only entrusted “with bearing arms during their time participating in militia
service but also . . . were expected to keep and maintain their arms as private citizens.” Pls.’ MSJ
at 13. But, again, Plaintiffs identify no support for that proposition, and the State’s expert witness
has shown that the historical evidence establishes that parents and guardians—not 18-year-olds—
were responsible for ensuring that their minor children and wards had the required munitions for
militia service at the Founding, *see* Cornell Report at 18–20. Plaintiffs’ citation of other Founding-
era practices, like the so-called *posse comitatus* and hue and cry, Pls’ MSJ at 13-14, is of no more

help to them, given that, as the State's expert has explained, these practices, too, were supervised by parents and guardians, Cornell Report at 21. In any event, even if individuals younger than 21 sometimes carried arms at the Founding in public, it would not follow that the Second Amendment established a constitutional right for them to do so.

*Second*, Plaintiffs argue there "is no evidence of any laws restricting the carry rights of 18-to-20-year-olds because of their age" at the time of the Founding. Yet, the State has explained that, in fact, Founding-era colleges and universities, including prominent public institutions like the University of Georgia and the University of North Carolina, prohibited firearm possession by minors. *See* Defs.' MSJ at 20. And, in general, at the Founding, "access to, and the ability to keep or bear, weapons occurred in supervised situations where minors were under the direction of those who enjoyed legal authority over them: fathers, guardians, constables, justices of the peace, or militia officers." Cornell Report at 23.

*Third*, Plaintiffs also argue that dozens of nineteenth century laws passed between 1856 and 1897 cannot serve as adequate analogues for Illinois' concealed carry laws under *Bruen*. Pls.' MSJ at 15–17. But Plaintiffs ignore that laws addressing minors' use, purchase, and possession of firearms existed from the earliest part of the nineteenth century through its conclusion. *See, e.g.*, Defs.' MSJ at 22 (describing an 1803 New York City law and a 1817 Columbia, South Carolina law); *see also People v. Aguilar*, 2013 IL 112116, ¶ 27, *holding modified by People v. Burns*, 2015 IL 117387, ¶ 27 ("[L]aws banning the juvenile possession of firearms have been commonplace for almost 150 years and both reflect and comport with a longstanding practice of prohibiting certain classes of individuals from possessing firearms—those whose possession poses a particular danger to the public.") (quotation marks omitted). And, in any event, as the State has already explained, these laws are clear analogues for Illinois' challenged statutes because they impose comparable

burdens to the restrictions on carrying firearms for comparable reasons: to ensure that individuals who carry firearms in public are sufficiently mature to do so. Defs.' MSJ at 23–24; *see also Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, No. 6:20-CV-01438, 2022 WL 17859138, at *10 (W.D. La. Dec. 21, 2022) (The "why" of these historical restrictions [on access to firearms by those under the age of 21] was that governing authorities deemed these categories of persons as dangerous to public safety; the "how" was by prohibiting their access to dangerous weapons."). As such, the laws presented by the State in its Motion for Summary Judgment satisfy the *Bruen* test to identify historical analogues that justify the constitutionality of Illinois' modern laws regulating concealed carry by individuals younger than 21.

Finally, Plaintiffs also argue that all the laws from the nineteenth century that restricted minors' access to firearms—and, in particular, laws described in the now-vacated *Jones* decision— are inadequate historical analogues (and thus irrelevant) because those laws applied to minors and 18-to-20-year-olds are not understood as minors today. Pls.' MSJ at 17–18. This argument, too, fails: As the State has explained, *see* Part I, *supra*; Defs.' MSJ at 17–19, at the time of the Founding, individuals younger than 21 *were* legal minors without full constitutional rights. And, because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," *Heller*, 554 U.S. at 634–635, these laws restricting access to firearms for minors— defined as individuals younger than 21 years of age—help establish that the Second Amendment excludes such individuals today. To hold otherwise would mean that the scope of the Second Amendment changed in the 1970s, when States began to lower the age of majority to 18 years of age.

## CONCLUSION

For the foregoing reasons, there is no genuine dispute as to any material fact, and the Court should enter summary judgment in favor of Defendants and against Plaintiffs on all claims.

Dated: February 6, 2023

Respectfully submitted,

KWAME RAOUL and BRENDAN F. KELLY,

By: /s/ Laura K. Bautista
Laura K. Bautista
Assistant Chief Deputy Attorney General
Office of the Illinois Attorney General
500 South Second Street
Springfield, Illinois 62706
Phone: (217) 782-5819
Fax: (217) 524-5091
Laura.Bautista@ilag.gov

## CERTIFICATE OF SERVICE

I certify that on February 6, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Laura K. Bautista*
Laura K. Bautista
Assistant Chief Deputy Attorney General